IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

|  |  |
|---|---|
| In re:<br><br>Tessemae's LLC,<br><br>     Debtor. | (Chapter 11)<br><br>Case No. 23-10675(NVA) |

**OMNIBUS OBJECTION OF DEMOCRACY CAPITAL CORPORATION TO FIRST DAY MOTIONS OF THE DEBTOR: (i) EMERGENCY MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING AND APPROVING POSTPETITION SECURED FINANCING, (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING INTERIM AND FINAL HEARINGS (ECF NO. 9); (ii) EMERGENCY MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING AND APPROVING POSTPETITION SECURED FINANCING, (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING INTERIM AND FINAL HEARINGS (ECF NO. 10); (iii) MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER APPROVING CASH MANAGEMENT SYSTEM AND AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS AND BUSINESS FORMS (ECF NO. 11); AND (iv) MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION SHIPPING CHARGES, NUNC PRO TUNC TO THE PETITION DATE, AND (II) GRANTING <u>CERTAIN RELATED RELIEF (ECF NO. 12)</u>**

Democracy Capital Corporation ("Democracy"), by it attorneys Joyce A. Kuhns and Offit Kurman, P.A., respectfully submits this Omnibus Objection to First Day Motions of Debtor ("Omnibus Objection"), and in support states:

            **I.**  <u>**Background**</u>

  1.  In early 2018, Tessemae's LLC ("Tessemae's") needed financial rescue. At that time, there were nearly 20 discrete matters of pending and threatened litigation against

Tessemae's with a combined total of over $2,000,000 in dispute. Tessemae's also had over $4,100,000 due and owing to vendors and suppliers, of which over $2,900,000 was more than 90 days overdue. It was on the verge of being sued by several of its Members and had admitted committing various breaches of the terms of its senior secured financing from Howard Bank. In desperate need of a lifeline, Tessemae's requested a multimillion-dollar loan from Democracy.

2. Democracy and Tessemae's agreed to a modification of certain Howard Bank loans to Tessemae's that consolidated and increased the combined principal amounts of those loans to $3,000,000 (as consolidated, the "Loan"), and the modified terms of the Loan were evidenced by the Second Amended and Restated Loan and Security Agreement dated April 10, 2018 (the "Loan Agreement"), and the Consolidated, Amended and Restated Promissory Note (the "Note") dated April 10, 2018 from Tessemae's to the order of Democracy in the principal amount of $3,000,000.

3. A true and correct copy of the Loan Agreement is attached to Democracy's Omnibus Objection as **Exhibit ("Ex.") 1**.

4. Democracy duly perfected its first priority security interest under the Loan in substantially all of Tessemae's assets with the filing of a UCC Financing Statement on April 11, 2018. A true and correct copy of the UCC-1 is attached to Democracy's Omnibus Objection as **Ex. 2**.

5. A true and correct copy of the Note is attached to Democracy's Omnibus Objection as **Ex. 3**.

6. The Note provides that upon maturity, Tessemae's must pay an exit fee equal to $7,500,000 (the "Exit Fee"); or, if certain conditions were satisfied and no default existed, Tessemae's could issue a warrant, providing, among other things, the holder the right to receive a

5.00% ownership interest in Tessemae's, with a minimum value of $7,500,000, senior in all respects to other equity. *See* **Ex. 3**, §1.

7. In connection with the Loan, on or about April 9, 2018, certain investors holding options to buy securities in Tessemae's provided subordinated loans to Tessemae's, the proceeds of which were to be used by Tessemae's to buy back or rescind the sale options and the net proceeds of which could be used by Tessemae's for working capital as evidenced by a Loan and Security Agreement of the same date (the "Recission Loan and Security Agreement"). The Recission Loan and Security Agreement was entered into by Tessemae's and the following subordinated lenders: MCDJR-Tesse, LLC; PMCDTesse, LLC; LEC, LLC; and CE CID, LLC (each a "Subordinated Creditor"). A true and correct copy of the Subordinated Loan and Security Agreement is attached to the Omnibus Objection as **Ex. 4**.

8. Pursuant to individual Subordination Agreements each dated April 10, 2018, in favor a Democracy, each Subordinated Creditor agreed, among other things, to fully subordinate all payments from and liens against assets of Tessemae's to all present or future indebtedness and obligations of any nature by Tessemae's to Democracy (the "Senior Debt"). A true and correct copy of the Subordination Agreement in favor of Democracy by MCDJR-Tesse, LLC is attached to the Omnibus Objection as **Ex. 5**. A true and correct copy of the Subordination Agreement in favor of Democracy by PMCDTesse, LLC is attached to the Omnibus Objection as **Ex. 6**. A true and correct copy of the Subordination Agreement in favor of Democracy by LEC, LLC, LLC is attached to the Omnibus Objection as **Ex. 7**. A true and correct copy of the Subordination Agreement in favor of Democracy by CE CID, LLC is attached to the Omnibus Objection as **Ex. 8**.

9. Following numerous defaults and despite Democracy's fruitless efforts to work with Tessemae's to resolve these breaches Democracy sent a formal notice of default to Tessemae's on February 21, 2020.

10. The Loan matured on April 10, 2020. Tessemae's has never delivered to Democracy either the Exit Fee or a warrant that was duly authorized or that satisfied the terms of the Note.

11. Accordingly, on April 10, 2020, the Exit Fee set forth in Section 1.5 of the Note became due and owing.

12. To date, Tessemae's has not made any payments towards the Exit Fee which remains due and owing, plus interest, default interest, attorneys fees and costs. *See* **Ex. 3**, §1.2.

13. To date, Tessemae's has made no meaningful attempt to negotiate but instead has spent the last two and a half years contriving arguments to stall Democracy's collection efforts and unnecessarily delay the progress of the suit Democracy filed against Tessemae's, *et al*. in the Circuit Court for Baltimore County Maryland, Case No. C-03-cv-20-004048 (the "State Court Action"). The docket for the State Court Action can be found at:

https://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseID=C03CV20004048&loc=55&detailLoc=ODYCIVIL.

14. Debtor's stalling actions notwithstanding, Democracy filed a Second Amended Complaint in the State Court Action and recently a Second Motion for Summary Judgment. A true and correct copy of the Second Amended Complaint (without exhibits) is attached to this Omnibus Objection as **Ex. 9**. The Second Motion for Summary Judgment was argued and fully briefed by mid-January 2023, and seeks in excess of $13,000,000.00 as a money judgment against Tessemae's. The Second Motion for Summary Judgment is predicated on, among other

things, Tessemae's failure to obtain the prior written consent of Democracy to approximately $20,000,000.00 of additional loan debt[1] in contravention of the express requirement in Section 6.6 of the Loan Agreement and to obtain a written subordination agreement with respect to such prohibited additional indebtedness in form and substance acceptable to Democracy in its sole discretion as mandated by Section 5.4 of the Loan Agreement. The State Court has taken the matter under advisement. True and correct copies of the Second Motion for Summary Judgment, Opposition, Supplemental Opposition, Motion to Strike Supplemental Opposition, and Opposition to Motion to Strike (without exhibits) are attached as **Consolidated Ex. 10**.

## II. Objections

### A. DIP Credit Facility and Cash Collateral (ECF No. 9)

15. Pursuant to the Loan Agreement, Democracy is a secured creditor with a duly perfected, first priority lien in substantially all of the assets of Tessemae's, including its cash proceeds. Only the amount of the secured debt owed to Democracy has yet to be determined. And yet, Democracy was never consulted on use of its cash collateral as required by Section 363(c)(2) of the Bankruptcy Code nor offered adequate protection for such use as mandated by Section 364(d) of the Bankruptcy Code. Not surprisingly, therefore, the proposed DIP Credit Facility violates terms of the Subordination Agreements in favor of Democracy by MCDJR-Tesse, LLC ("MCDJR") and PMCDTesse, LLC ("PMCD") (collectively, the "proposed Lender Group"). In fact, authorizing the DIP Credit Facility, as proposed, would be to impermissibly

---

[1] Democracy learned of the incurrence of the additional indebtedness and the additional Loan violations when multiple lawsuits were filed against the Debtor in the Fall of 2022. Some, but not all, of that debt is reflected on the Debtor's List of Creditors Who Have the Twenty Largest Unsecured Claims. *See* ECF. No. 1, pages 6-8. Democracy discovered additional Loan defaults when Debtor disclosed at footnote 5 of its Emergency DIP Financing Motion that MCDJR increased its subordinated loan to the Debtor by $100,000.00 in violation of MCDJR's Subordination Agreement with Democracy and the terms of the Loan Agreement and that the maximum aggregate principal under the Senior Secured Term Loan Facility was also increased, without Democracy's consent, in the Fall of 2022 in violation of the applicable Subordination Agreements and the Loan Agreement.

sanction multiple breaches of these Subordination Agreements. *See* 11 U.S.C. Section 510(a) (providing if one creditor agrees to subordinate to another, that subordination agreement controls).

    16.    Each Subordination Agreement provides in relevant part:

"Recitals"- "**Senior Debt**" means all present and future indebtedness, liabilities, and obligations of any nature whatsoever of Borrower or any affiliate of, or direct or indirect owner of any interest in, Borrower (collectively with Borrower, "Debtors") to Lender or any affiliate of Lender, whether direct or indirect, liquidated or contingent, primary or secondary, alone or jointly with others, due or to become due, secured or unsecured, now exiting or hereafter created... "Subordinated Debt"

    1.    <u>Payment Subordination</u>.    Subordinating Creditor hereby subordinates the payment of the Subordinated Debt to the payment of the Senior Debt. So long as all or any part of the Senior Dent remains unpaid, Subordinating Creditor shall not, without the prior written consent of Lender, ask, demand, sue for, set off, accept, or receive any payment of all or any part of the Subordinated Debt.

    2.    <u>Lien Subordination</u>.   Subordinating Creditor hereby subordinates the priority of all liens, pledges, assignments, and security interests of any kind securing the Subordinated Debt in favor of all liens, pledges, assignments and security interests of any kind securing the Senior Debt, regardless of the time or order of attachment, perfection, or recording.

...

    5.    <u>Distributions, Etc.</u>   In the event of any distribution... of all or any part of the assets of any Debtor or the proceeds thereof to the Creditor of any Debtor... or any proceeding by or against any Debtor for any relief under the United States Bankruptcy Code... or with respect to all or any part of the Subordinated Debt shall be paid or delivered directly to Lender for application to the Senior Debt... Subordinating Creditor hereby irrevocably authorizes and empowers Lender to demand, sue for, collect and receive any such payment or distribution and to give acquittance therefore and to file claims, vote, and take such other proceedings in Lender's own name or in the name of Subordinating Creditor, or otherwise and Lender may deem necessary or advisable to carry out the provisions of this Agreement.

...

    7.    <u>No Modification of the Subordinated Debt</u>.  Accordingly, Subordinating Creditor agrees that it shall obtain the prior consent of Lender to any change, amendment or modification of the Subordinated Documents which... (c) increases the principal amount of the Subordinated Loan; (d) releases any party liable for repayment of the Subordinated Loan... Subordinating Creditor represents and warrants that as of the date hereof the Subordinated Debt consists of a loan in the

principal amount of $300,000.00 (the "Subordinated Loan"). ==The principal balance owed on the Subordinated Debt shall never exceed $300,000 without the express written consent of Lender==.

(highlights added).

17. The long and the short is that the proposed Lender Group is bound, but failed, to seek Democracy's approval prior to pursuing the DIP Credit Facility which will impermissibly increase Tessemae's debt to MCDJR and PMCD, and must fully subordinate all of its payments, liens and priorities to Democracy until the Senior Debt is fully satisfied, which the DIP Credit Facility fails to do.

18. Specific Objections to Rule 4001(c)(1)(b) Credit Terms are highlighted below.

| Borrower: | Tessemae's LLC |
|---|---|
| Lender: | MCDJR-TESSE, LLC and PMCDTESSE, LLC |
| Credit Facility:<br><br>Violates Loan Agreement and Subordination Agreement | ==$1,250,000.00 DIP Credit Agreement for the following purposes: (i) to fund a portion of the Debtor's overhead expenses during the term== of the loan and until the Maturity Date, provided that such overhead expenses are set forth in a budget that has been pre-approved by the Lender Group in all respects; (ii) to pay the Court approved costs and fees of the Debtor's professionals; ==and (iii) to pay to the Lender Group certain fees owed to them under the DIP Credit Agreement as set forth therein==. |
| Availability:<br><br>Violates Subordination Agreement | Subject to a Budget that is acceptable to the Lender Group in all respects (the "Budget") and Bankruptcy Court approval of the DIP Credit Facility pursuant to the Interim Order and a Final Order acceptable to the Lender Group (collectively, the "DIP Orders"), the Lender Group will make advances to the Debtor under the DIP Credit Agreement for the purposes outlined above. ==All advances under the DIP Credit Facility shall be subject to such terms, covenants, conditions and submissions to the Lender Group as the DIP Credit Agreement may require.== |
| Interest Rate: | 15% per annum |
| Fee: | None |
| Payments/Amortization DIP Credit Facility:<br><br>Violates Subordination Agreement | ==Lender Group shall apply any payments or proceeds first to the Debtor's obligations until such obligations are paid and satisfied in full==. |
| Maturity Date: | The DIP Credit Agreement shall continue in full force and effect for a term ending May 31, 2023 unless extended by agreement by |

7

| | |
|---|---|
| | the parties in writing, (ii) the confirmation of a plan of in the Chapter 11 Case, or (iii) the last termination date set forth in the Interim Order, unless the Final Order has been entered prior to such date, and in such event, then the last termination date set forth in the Final Order. |
| Collateral:<br><br>Violates Loan Agreement and Subordination Agreement | All advances made under the DIP Credit Agreement and all obligations and duties of the Debtor under the agreement shall be ==secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority, priming senior security interests in, and liens upon, all Prepetition Collateral and Postpetition Collateral== which shall include, collectively, all personal property of Debtor's estate, wherever located, of any kind, nature or description, excluding Avoidance Actions; provided, however, in the event the Bankruptcy Court were to determine by final order that Democracy Capital Corporation has a valid and enforceable secured claim against the Debtor, the lien held by Democracy, in that event, shall have priority over the lien granted to the Lender Group. |
| Super-priority:<br><br>Violates Loan Agreement and Subordination Agreement | ==Super-priority administrative claims pursuant to Section 364(c) of== the Bankruptcy Code, having priority in ==right of payment over any and all other obligations==, and over any and all administrative expenses or priority claims, provided, however, the Super-priority Claim shall be subject only to the extent expressly set forth in the Interim Order. |
| Events of Default: | Among others: (a) failure to comply with obligations; (b) conversion of case to Chapter 7; (c) dismissal of case. |
| Automatic Stay: | Vacated without further order of the Bankruptcy Court to the extent necessary to permit Lender Group to record liens and to exercise its rights and remedies as provided for in the Interim Order. |

Specific Objections to Interim Order

19.     Democracy objects to: (i) authorizing the Debtor to obtain postpetition loans, advances, and other financial accommodations, even on an interim basis, secured by priming security interests in and liens upon all of the Collateral as defined in the proposed Interim Order pursuant to Section 364(c)(2) and 364(c)(3) of the Bankruptcy Code; (ii) acknowledging the Pre-Petition Obligations as allowed, legal, valid, binding, enforceable, and nonavoidable and not subject to offset, defense, counterclaim, or subordination under the Bankruptcy Code or any other law; (iii) finding the Pre-Petition Obligations fully secured by valid, perfected, enforceable

8

and nonavoidable first priority interests and liens, upon the Pre-Petition Collateral *pari-passu* with the lien of Democracy; (iv) deeming the Pre-Petition Obligations and liens, rights and priorities granted the Lender Group as timely filed Proofs of Claims on behalf of the Lender Group in lieu of filing such claims under oath; (v) finding that the items listed in the Interim DIP Budget are necessary to avoid irreparable harm; (vi) finding that the DIP Credit Agreement is fair and reasonable and that the prudent business standard is applicable here; (vii) finding that the terms and conditions of the DIP Credit Agreement have been negotiated in good faith and at arms-length and that the Lender Group is entitled to the "good faith" protections under Section 363(e) of the Bankruptcy Code; (vii) all findings and holdings that Lender Group liens are *pari-passu* or senior to the liens of Democracy and are duly perfected; and (viii) any and all releases by the Debtor or its estate of the Releasees, as defined in the proposed Interim Order, as premature and unwarranted under the circumstances in this case.

<u>Business Judgment Rule Inapplicable</u>

20. The Debtor argue that it has satisfied the "fair and reasonable test" under Section 364 in the exercise of its business judgment; however, the business judgment standard is inapplicable here.

21. When a proposed transaction with a debtor involves "insiders," courts apply "heightened" or "rigorous" scrutiny in assessing the *bona fides* of the transaction. *LATAM*, 2020 WL 5506407, at *27 (citing *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holdings Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 823 (W.D. Pa. 1997), *aff'd*, 160 F.3d 982 (3rd Cir. 1998); *In re MSR Hotels & Resorts, Inc.*, 2013 WL 5716897, at *1 (Bankr. S.D.N.Y. Oct. 1, 2013)). Although the term "insider" is defined in Section 101(31) of the Bankruptcy Code, the court noted, the statutory definition is not exclusive and has been

interpreted broadly to include anyone "who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Id.* at *28 (citations and internal quotation marks omitted). Upon information and belief, the Lender Group consists of insiders of the Debtor. In any event, Debtor has failed to adequately identify its relationship to MCDJR's and PMCD's members and affiliates. Democracy demands that the Debtor meet its heightened burden that the terms and conditions of the DIP Credit Facility as proposed are fair and reasonable and that its proposed use of cash collateral is necessary to avoid irreparable harm.

      B.  <u>Authorization to Pay Pre-Petition Payroll and Employee Benefits, Etc. (ECF No. 10)</u>

22.    Democracy notes that Debtor failed to disclose the identity and specific positions of those employees benefiting from the request to pay pre-petition payroll and employee benefit obligations. On such disclosure by the Debtor, Democracy does not object to the payment of such obligations to non-insider employees capped at the priority amount set out at Section 507(a)(4)(A) per such employee.

      C.  <u>Approval of Cash Management Systems, Etc. (ECF No. 11)</u>

23.    Democracy has no objection to the relief requested. It notes that the Debtor and Sandy Spring Bank are subject to a Control Agreement in favor of Democracy with respect to the existing bank accounts. Democracy requests clarification that the credit cards issued by the bank are not and will not be used to pay pre-petition debt.

      D.  <u>Authorization to Pay Pre-Petition Shipping Charges *Nunc Pro Tunc* to the Petition Date (ECF No. 12)</u>

24.    The requested relief for authority to pay Shipper's pre-petition claim is predicated on the "necessity doctrine." The courts routinely hold that the doctrine must be narrowly

construed and sparingly applied as it may undermine the bankruptcy principal of fair treatment of all creditors. *In re United American, Inc.*, 327 B.R. 766, 782 (Bankr. E.D.Va. 2005). The debtor has not satisfied all three prongs of the necessity test to warrant pre-confirmation payment to Shipper: (i) the vender must be necessary for the successful reorganization of the debtor; (ii) the transaction must be in the sound business judgment of the debtor; and (iii) the favorable treatment of the critical vender must not prejudice other unsecured creditors. *Id.* As Debtor has not demonstrated it can satisfy the first and third prongs of the necessity test, Democracy objects to the proposed relief.

### III.     Reservation of Rights

25.     Democracy fully reserves its rights to pursue all of its claims and defenses and the failure to pursue any such claim or defense at this time shall not be deemed a waiver. In particular but without limitation, Democracy reserves the right to assert that the filing of the Petition was unauthorized under applicable Maryland law and this case is therefore not properly before the Court.

WHEREFORE, Democracy Capital Corporation requests that the Court sustain its Omnibus Objections, and grant such other relief as it deems just.

Date:   February 2, 2023

/s/ Joyce A. Kuhns
Joyce A. Kuhns, Esq. (03979)
OFFIT KURMAN, P.A.
300 E. Lombard Street, Suite 2010
Baltimore, Maryland 21202
Telephone: 410-209-6463
Facsimile:  410-209-6435
Jkuhns@offitkurman.com

*Counsel for Democracy Capital Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 2, 2023, I reviewed the Court's CM/ECF system and it reports that an electronic copy of this Omnibus Objection and Declaration of J.R. Schuble in Support will be served electronically by the Court's CM/ECF system on the following:

J. Dan Ford, Assistant United States Trustee
Office of the United States Trustee
101 West Lombard Street, Suite 2625
Baltimore, MD 21201
j.dan.ford@usdoj.gov

Hugh M. Bernstein, Assistant United States Trustee
Office of the United States Trustee
101 West Lombard Street, Suite 2625
Baltimore, MD 21201
hugh.m.bernstein@usdoj.gov

I FURTHER CERTIFY that on February 2, 2023, copies of the Omnibus Objection and Declaration of J.R. Schuble in Support were served via First-Class mail, postage prepaid, on the parties listed on the attached service list.

I CERTIFY the foregoing statements are made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

## SERVICE LIST

| | |
|---|---|
| PMCDTESSE, LLC and MCDJR-TESSE, LLC<br>c/o Richard L. Costella, Esq.<br>Tydings & Rosenberg LLP<br>One East Pratt Street, Suite 901<br>Baltimore, MD 21202 | CE CID LLC<br>2410 Evergreen Road<br>Gambrills, MD 21054 |
| LEC LLC<br>845 E. Heartstrong St.<br>Superior, CO 80027 | Vetter Brothers Manufacturing, LLC<br>Attn: Brian Vetter<br>595 Owensville Road<br>West River, MD 20775 |
| Peter R. McDermott<br>1 Pond Dr.<br>Englewood, CO 80113 | Robert F. McDermott<br>4455 South Holly Street<br>Cherry Hills Village, CO 80111 |
| Clearview Group<br>Attn: Brian Davis<br>11155 Red Run Blvd., Suite 410<br>Owings Mills, MD 21117 | Jupiter Fund LLC<br>102 W. Pennsylvania, Suite 100<br>Towson, MD 21204 |
| K2 Trust, LLC<br>5244 N. 37th Place<br>Paradise Valley, AZ 85253 | Fleet Street Club III L.P.<br>11770 US Highway 1, Suite 503<br>Palm Beach Gardens, FL 33408 |
| Benjamin H. Griswold IV<br>901 S. Bond St., Suite 400<br>Baltimore, MD 21231 | David Charles Moran<br>375 W. Royal Flamingo Dr.<br>Sarasota, FL 34236 |

| | |
|---|---|
| GP Stamas Family Trust<br>8 Waterbury Court<br>Baltimore, MD 21212 | Tenacious Adventures<br>Attn: Kipp Lasseter<br>5244 N. 37th Place<br>Paradise Valley, AZ 85253 |
| M&C Irrevocable Trust<br>5973 West Cielo Grande<br>Glendale, AZ 85301 | C&J Irrevocable Trust<br>5973 West Cielo Grande<br>Glendale, AZ 85301 |
| John Ege<br>100 St. Paul St., Suite 800<br>Denver, CO 80206 | Scott Carmel<br>110 Venetian Way<br>Dildo Island<br>Miami Beach, FL 33139 |
| Christina Pagano<br>14 Lost Run Trail<br>Zionsville, IN 46077 | Brown, Goldstein & Levy, LLP<br>120 E. Baltimore Street, Suite 2500<br>Baltimore, MD 21202 |
| Altus Receivables Management, Trust Account<br>2400 Veterans Memorial Blvd.<br>Kenner, LA 70062 | Falling Green Capital LLC<br>3718 Falling Green Way<br>Mount Airy, MD 21771 |
| Donald McDonald<br>2180 Royal Oaks Dr.<br>Rockledge, FL 32955 | Deborah Grove Living Trust<br>Attn: Deborah M. Grove<br>5936 Elmer Derr Rd.<br>Frederick, MD 21703 |
| Lawrence A. Katz, Esquire<br>Hirschler Fleischer<br>1676 International Drive, Suite 1350<br>Tysons, Virginia 22102 | |

Date:   February 2, 2023        /s/ Joyce A. Kuhns
                                Joyce A. Kuhns, Esq. (03979)