## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

In re

**TESSEMAE'S LLC,**

              Debtor

Case No. 23-10675-NVA

## THE UNITED STATES TRUSTEE'S OBJECTION TO THE
## MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION
## FOR AN ORDER (I) APPROVING BIDDING PROCEDURES,
## (II) SCHEDULING AN AUCTION FOR THE SALE OF SUBSTANTIALLY
## ALL OF THE DEBTOR'S ASSETS AS A GOING CONCERN, AND
## (III) GRANTING RELATED RELIEF

The Acting United States Trustee for Region Four, which includes the District of
Maryland, files this Objection to the Motion Of The Debtor And Debtor-In-Possession For
An Order (I) Approving Bidding Procedures, (II) Scheduling An Auction For The Sale Of
Substantially All Of The Debtor's Assets As A Going Concern, And (III) Granting Related
Relief, and as grounds therefor states as follows:

### STANDING

Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the
administration of Chapter 11 cases filed in this judicial district. This duty is part of the
U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by
Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco*

*D.S., Inc.),* 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on "any issue in any case or proceeding."   (*See* 11 U.S.C. § 307; *United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).)

Although the filing of this Objection (the "UST Objection") was made more than 14 days after the filing of the motion at issue, the Acting United States Trustee has the right under § 307, and the obligation under 28 U.S.C. § 586, to appear at the hearing scheduled by the Court to consider the Debtor's motion and the objection thereto (timely filed by creditor Democracy Capital Corporation ("Democracy")) and raise its objections at that time.   (*See* Docs. 152 (objection by Democracy), 156 (setting hearing on this matter).)

As a courtesy to the Court and parties in interest, the Acting United States Trustee files this objection on the docket to facilitate the preparation by the various parties to present the Court with an organized discussion of the issues raised herein at the scheduled hearing.

As another party in interest has filed a timely objection, and the Court has set a hearing on the matter, no party is prejudiced by the Acting United States Trustee filing

this objection in advance of the hearing, rather than waiting to raise such objections at the hearing itself.

## FACTUAL BACKGROUND

1.     Tessemae's, Inc. (the "Debtor") filed case 23-10675 on February 1, 2023 (the "Petition Date"), under Chapter 11 of the Bankruptcy Code.   (*See* Doc. 1.)

2.     The Debtor filed its Motion Of The Debtor And Debtor-In-Possession For An Order (I) Approving Bidding Procedures, (II) Scheduling An Auction For The Sale Of Substantially All Of The Debtor's Assets As A Going Concern, And (III) Granting Related Relief (the "Motion"), on May 31, 2023.   (*See* Doc. 146.)

3.     Included as Exhibit A to the Motion is a proposed order (the "Proposed Order") which would, if granted by the Court as filed, authorize the Debtor to enter into some type of agreement with one or more Stalking Horse Bidders,[1] and establish dates and procedures for the submission and selection of bids and, if necessary, a subsequent auction. (*See* Doc. 146-1.)

4.     The Proposed Order includes its own Exhibit 1, which contains in more detail the manner and deadlines for various actions to be undertaken by the Debtor and parties interested in bidding on assets of the Debtor (the "Bidding Procedures").   (*See* Doc. 146-

---

1 The Proposed Order specifically authorizes a "Break-Up Fee" not to exceed 2% of the Stalking Horse Bidder's bid for each agreement, but is silent on the maximum number of Stalking Horse Bidders with which the Debtor may enter into a stalking horse agreement.   (*See* Doc. 146-1 (the "Proposed Order").)

1, pp. 9-12.)   The Bidding Procedures are incorporated by reference in both the Proposed Order (*see* Doc. 146-1, ¶ A) and in the Motion (*see* Doc. 146, introductory paragraph and ¶¶ 26-27).

5.      Creditor Democracy Capital Corporation ("Democracy") timely filed an objection to the Motion on June 14, 2023 (the "Democracy Objection"), which included a number of attached exhibits.   (*See* Doc. 152.)

## ARGUMENT

### A.      The Motion to Approve Bidding Procedures is Not Yet Ripe For Consideration.

The Debtor states that it is customary to file a single motion seeking authorization by the Court to both approve bidding procedures and a sale of assets, but states that the Debtor's current revenue is sufficiently favorable to bifurcate the process, with a motion to approve a sale of assets to follow at an unspecified point in the future.   (*See* Motion, ¶ 1.)

Although the Debtor is to be commended for its attempts to move ahead with a potential asset sale, splitting the instant Motion from the sale motion deprives the Court and interested parties of essential context.

The primary context at issue is the justification for pursuing a sale procedure at all. The Debtor correctly identifies the Court's authority to approve a sale under 11 U.S.C. § 363 (*See* Motion, ¶ 30).   The Debtor further delineates the factors set forth in *In re Siskind*

4

regarding the factors for consideration, including "(i) a sound business reason justifying the sale."  (*See* Motion, ¶ 31; *In re Siskind*, 2008 WL 2705528 at *6 (Bankr. D. Md. July 3, 2008).)

Debtor then defers identifying the necessary sound business reason until some unspecified time in the future, whereupon a motion to authorize sale will be filed.  (*See* Motion, ¶¶ 31-33.)

As the debtor commences the sale process, seeking authorization for powers over sale procedures, which are both vaguely defined and subject to amendment at the Debtor's sole discretion without further authorization of this Court or prior notice to parties in interest, providing the necessary groundwork of why any sale is in the best interests of the creditors and the estate would provide much needed context to interested parties, particularly when the proposed sale precedes the in-depth review afforded by the Disclosure Statement and Plan Confirmation processes.

> B.    <u>The Omission of Purchase Contracts Precludes Meaningful Review of the Scope and Terms of The Proposed Sale.</u>
>
> 1.    <u>The Omission of A Proposed Stalking Horse Bidder Agreement Denies This Court and Interested Parties The Opportunity To Review The Terms By Which The Stalking Horse Bidder Is Selected and Compensated.</u>

The Motion and Proposed Order seek authorization for the Debtor to enter into an agreement with a Stalking Horse Bidder in order to provide "certain bidder protections" to incentivize an initial bid, a bidding floor from which subsequent Qualified Bids and auction

bids can rise, providing the maximum proceeds for the estate.   (*See* Motion, ¶ 24; Proposed Order ¶ A, ¶¶ 12-13.)

As filed, the Motion provides only a single concrete provision of the asset purchase agreement for a Stalking Horse Bidder (the "Stalking Horse Agreement", as differentiated from the asset purchase agreements to be submitted as part of the non-protected bids to be submitted by non-Stalking Horse Bidders – the "Bidder Asset Purchase Agreements"), namely a "Break-Up Fee" consisting of up to 2% of the Stalking Horse bid.   The Debtor spends four pages describing and justifying the Break-Up Fee (*see* Motion, "Basis for Relief Requested" Section III, ¶¶ 36-43), yet is silent on every other provision of the Stalking Horse Agreement.

The Motion and Proposed Order are silent on a wide range of other bidder protection provisions which may be part of a Stalking Horse Agreement, including, but not limited to, expense reimbursements, indemnification, and counsel fees.

Without the inclusion of a Stalking Horse Agreement (or, in the event a Stalking Horse has not yet been identified, a proposed Stalking Horse Agreement), this Court and interested parties are unable to meaningfully review – and if necessary, object to – bidder protection provisions which are currently undefined and uncapped.

As filed, the Motion and Proposed Order require only notice that a Stalking Horse Bidder has been selected.   (*See* Bidding Procedures, ¶ C.)   There is no requirement for the Stalking Horse Bidder to file or otherwise provide interested parties a copy of the actual

Stalking Horse Agreement, nor disclose connections between the selected Stalking Horse Bidder and the Debtor, insiders, or creditors (if any such connections exist).

Thus, there does not appear to be any opportunity for the Court to review the Stalking Horse Agreement, unless the Debtor elects to include it as an exhibit in its allegedly forthcoming motion to authorize sale, which may be some time after the auction has already been conducted.

### 2.     The Omission of A Proposed Asset Purchase Agreement Renders The Scope of The Proposed Sale Vague.

Even more so than in consideration of the Stalking Horse Agreement, the Motion and Proposed Order are completely silent on the scope and terms of the Bidder Asset Purchase Agreements which the Proposed Order requires to be submitted as part of any non-Stalking Horse bid.   (*See* Bidding Procedures, ¶ E(5).)

No terms of a proposed Bidder Asset Purchase Agreement have been identified in either the Motion or Proposed Order.

No proposed Bidder Asset Purchase Agreement has been attached as an exhibit to either the Motion or Proposed Order.

It is unclear from the Motion and Proposed Order what assets of the Debtor are for sale, or conversely, held in reserve from the contemplated sale.   There is considerable room for interpretation in the phrase "all or substantially all of [Debtor's] assets."   (*See* Motion, ¶ 29.)

In light of the objection filed by creditor Democracy Capital Corporation, particularly with regard to concerns raised therein that non-Debtor entities affiliated with insiders of the Debtor may be using intellectual property of the Debtor, possibly without license, it is unclear if the sale contemplates reservations of certain intellectual property or licensing rights. (*See* Doc. 152, ¶¶ 1(f), 18, 22; Docs. 152-3, 152-4.) The Debtor's Statement of Financial Affairs does not include transfer of any intellectual property rights to the entities at issue. (*See* Doc. 76, p. 25.) The Debtor's Schedule G does not include any licensing agreements for intellectual property with any individual or entity. (*See* Doc. 75, pp. 56-57.)

It is also unclear whether the proposed sale includes sale of causes of action under Chapter 5 of the Bankruptcy Code.

As with the Stalking Horse Agreement, there does not appear to be any opportunity for the Court and interested parties to review the proposed Bidder Asset Purchase Agreement unless the Debtor elects to include it as an exhibit in its allegedly forthcoming motion to authorize sale, which may be some time after the auction has already been conducted.

C.    **The Proposed Order Improperly Grants The Debtor Broad Discretion to Manipulate The Sale Without Oversight.**

1.    **The Proposed Order Improperly Grants The Debtor Broad Authority to Amend Bidding Procedures Without Further Approval of This Court.**

8

The Proposed Order purports to grant the Debtor almost total power to amend the entirety of the Bidding Procedures (other than increasing the 2% cap on the Break-Up Fee) without further approval of this Court.    Paragraph 14 of the Proposed Order states:

> The Debtor may modify the Bidding Procedures (except the Break-Up Fee), **in its sole discretion** and in consultation with the DIP Lender, **without the need for any further order of this Court**, including, without limitation, (i) extending the deadlines set forth in the Bidding Procedures; provided any such extension complies with the terms of the DIP Credit Agreement, (ii) adjourning the Auction, and (iii) withdrawing any assets from the sale process at any time prior to or during the Auction. The Debtor must file notice of any such modifications with this Court, and serve such notice on all Qualified Bidders, any Stalking Horse Bidder and its counsel, if applicable, DIP Lender's counsel, and the Office of the United States Trustee…

(*See* Proposed Order, ¶ 14 (emphasis added).)[2]

Because the Proposed Order grants the Debtor such wide discretion to modify the terms of the Bidding Procedures without further review or approval by any other party, any term which is currently set forth in the Bidding Procedures is in fact illusory.

In fact, the only provisions of the Bidding Procedures which are set beyond the ability of the Debtor to unilaterally change at any time (including, notably, *during* the auction itself) are the 2% cap on the Break-Up Fee, and the requirement that the Debtor file notice of modifications with the Court and certain specified parties.    There is not any

---

2 Substantially identical language is found in ¶ J of the Bidding Procedures, as well as a more limited reference in ¶ 26 of the Motion.

required timeline for such filing or service of notice in the Motion or Proposed Order as filed.

If the Court elects to grant the broad power to amend the Bidding Procedures contained within the Proposed Order as filed, it would be possible to reduce the length of the Proposed Order to the following two lines, without any material change in its provisions or limitations:

> "(1) The Debtor is authorized to select one or more Stalking Horse Bidders with respect to some or all of the Debtors' assets, enter into a Stalking Horse Agreement, and provide a Break-Up fee in an amount not to exceed two percent (2%) of the guaranteed value offered by such Stalking Horse Bidder in its Bid, and
> (2) The Debtor is authorized to decide what other procedures the Debtor will, in the Debtor's sole discretion, utilize to sell some or all of its assets, and may modify such procedures at any time, either before, during, or after the implementation of such procedures, provided that it files notice at some unspecified time after it decides or modifies." [3]

Since every other provision of the Bidding Procedures is subject to modification by the Debtor, without prior notice or approval by the Court, their inclusion in the Proposed Order provides nothing but the illusion of review and authorization by the Court.

    **2.    Even Without The Ability to Modify The Bidding Procedures At Debtor's Sole Discretion, The Proposed Order Allows the Debtor To Improperly Influence Who May Participate In The Proposed Sale.**

---

[3] For purposes of clarity, this is not a quote from either the Debtor's Motion or Proposed Order, merely a concise representation of the only two concrete provisions in the entire Proposed Order as filed.

Even if the Court declines to grant the Debtor the ability to modify the Bidding Procedures at whim, the Proposed Order, as filed, grants the Debtor broad powers to control who may participate in the bidding and sale process. At every step in the Bidding Procedures, the Debtor has the sole discretion to prevent participation by interested parties.

At the outset, the initial Indication of Interest, to be submitted not later than the end of this month, must include an executed confidentiality agreement containing certain provisions which must be satisfactory to Debtor's counsel. As no proposed confidentiality agreement has been provided (either as part of a proposed Bidder Asset Purchase Agreement or otherwise), it is unclear what language would satisfy Debtor's counsel on this matter.

Absent advance provision of pre-approved language, it appears that Debtor's Counsel could simply refuse to accept the confidentiality agreement language as he may choose, and thus forestall any further participation in the bidding or sale process by such potentially interested party. (*See* Bidding Procedures, ¶ A.)

In the next stage, Due Diligence, the Proposed Order grants the Debtor the right to limit access to due diligence materials to those parties it decides, in its sole judgement, as being "in good faith" and capable of meeting all the requirements of submitting a Qualified Bid. (*See* Bidding Procedures, ¶ B, ¶ E(6-7).)

This provision allows the Debtor to deny due diligence to anyone on the basis of undefined and subjective "good faith" criteria, as well as the Debtor's unsupported

assessment of the Potential Bidder's ability to outbid the Stalking Horse Bidder, even though the Due Diligence period occurs before the Stalking Horse Bidder or Stalking Horse Bid has even been selected.

In the third stage, Stalking Horse Submissions, the Proposed Order grants the Debtor the ability to select (or not select) one or more interested parties to act as Stalking Horse Bidder, and sign an agreement granting that party material bidder protections going forward. (*See* Proposed Order, ¶ 12.) The Motion and Proposed Order are silent as to what criteria the Debtor should use to select the Stalking Horse Bidder, other than their own "sole discretion" and "business judgment." *Id.*

The subsequent bidding stage is also subject to improper control by the Debtor, specifically as relates to the requirements to submit a credit bid. Rather than rely solely upon § 363(k), the Proposed Order limits such bids to only those lienholders who hold an "undisputed bona fide claim, in the Debtor's discretion, may submit a credit bid." (*See* Bidding Procedures, ¶ G.) As of this filing, the Debtor has disputed only one claim, that of creditor Democracy Capital Corporation.

At the auction stage, the Proposed Order gives the Debtor the power to determine which bid to select as the "Starting Auction Bid," without stating the criteria which it should use to make that determination, and the sole discretion to impose or lift the requirement that subsequent bids must exceed prior bids by an "Overbid Increment" of at least $250,000. (*See* Bidding Procedures, ¶ H.)

12

This would allow the Debtor to, at its sole discretion, select the bid of a favored bidder as the Starting Auction Bid and require all subsequent bidders to exceed that bid by $250,000.   If a subsequent bid is made by a non-favored bidder, Debtor could then lift the Overbid Increment requirement, allowing the favored bidder to exceed the prior bid by $1, then reinstate the Overbid Increment requirement, requiring the non-favored bidder to contribute at least another $250,000 to continue bidding.   It is facially apparent how this provision of the Proposed Order, as filed, invites abuse of the Debtor's duties as a fiduciary of the estate.

And finally, despite all the procedures otherwise enumerated in the Bidding Procedures, the Proposed Order grants the Debtor unlimited discretion to determine the successful Bidder or Bidders.   (*See* Bidding Procedures, ¶ I.)   This allows the Debtor to conduct all the prior discussed steps, then select any bid it wishes as the winner, in its sole judgment.

While it may seem that the broad discretion granted to the Debtor in the filed Bidding Procedures render such procedures vulnerable to abuse by insiders at every step of the process, some of the procedures may be salvageable.   The Debtor has already employed a qualified and experienced professional with an incentive structure which is both transparent and designed to provide a maximum return to the estate: the Debtor's investment banker, B. Riley Securities, Inc. ("B. Riley").   If the sole discretion of the Debtor to determine:

13

1. Who may participate in the bidding process (Bidding Procedures, ¶ A)

2. Who may be provided access to due diligence materials (Bidding Procedures, ¶ B);

3. Which is the best offer to be used as the Stalking Horse Bidder (Bidding Procedures, ¶ C);

4. Which bids meet the requirements of Qualified Bid, so as to be considered further (Bidding Procedures, ¶¶ E, H); and

5. Which bid is the winning bid following the submission of a single Qualified Bid, or following an auction in the event of multiple Qualified Bids (Bidding Procedures, ¶ I);

were to rest with B. Riley rather than the Debtor itself, the specter of non-arm's length dealings and the appearance of undue insider influence would be greatly diminished.    B. Riley's retention contract, as incorporated and modified by this Court's Order (*See* Doc. 133) reads:

> Sale Fee: in the event the Company completes a Sale, a fee (the "Sale Fee") to be paid upon the closing of any Sale equal to the sum of (i) 2.0% of Transaction Value up to and including $60 million, plus (ii) 3.25% of Transaction Value in excess of $60 million, provided; however, that the Sale Fee shall never be less than $850,000.

(*See* Doc. 85, pp. 5-6.) [4]

---

[4] The Court reduced the minimum sale fee due to B. Riley to $550,000 in the event that the sale proceeds do not exceed $20,000,000.   (*See* Doc. 133, p. 2.)

14

B. Riley is incentivized to realize the maximum Transaction Value, and therefore, maximum recovery to the estate for the benefit of all creditors.   Despite Debtor's fiduciary duties to the estate, the Debtor's insiders have competing business interests in a subset of the Debtor's creditors as well as a number of other entities that do business with the Debtor and may be potential bidders in the contemplated sale.   The discretion to limit participation would be more properly vested in B. Riley, which is disinterested and incentivized to maximize return to the estate and creditors, than with the insiders of the Debtor, who hold conflicting interests.

D.      **The Motion Grants The DIP Lender Material Benefits Outside The Scope of The DIP Financing Agreement Approved by The Court Without Apparent Consideration.**

The filed Proposed Order grants TESSE DIP FUND I, LLC (the "DIP Lender") substantial benefits and advantages at several stages of the proposed Bidding Procedures.

Chief among those advantages is the requirement that all Potential Bidders must submit their Qualified Bids directly to the DIP Lender, as well as to the Debtor and the Debtor's investment banker, ***before*** the submission deadline.   (*See* Proposed Order, ¶ 3; Bidding Procedures, ¶ D.)   This allows the DIP Lender prior knowledge of the terms and offering price of every other bid before the deadline for submitting its own bid or credit bid.

When coupled with the requirement that all other Stalking Horse Bidders or Qualified Bidders confirm that they "have not engaged in any collusion with respect to the

15

bidding or sale of any of the assets described herein," the DIP Lender has a substantial advantage over all other bidders, who must operate without knowledge of their competitors' offers.   (*See* Proposed Order, ¶ 8.)

The Proposed Order also requires that the DIP Lender be served notice of any auction to be held, regardless of whether it submitted a Qualified Bid in its own right.   (*See* Proposed Order, ¶ 6; Bidding Procedures, ¶ G.)

The Proposed Order further grants the DIP Lender the right to be present at any auction to be held, regardless of whether it submitted a Qualified Bid in its own right.   (*See* Proposed Order, ¶ 7.)   Given the Debtor's broad discretionary power to modify the Bidding Procedures without prior notice or approval (as discussed *supra*), the Debtor could, at its sole discretion, modify the auction procedures during the auction itself to allow the DIP Lender to make a bid despite never having submitted a bid, "qualified" or otherwise, prior to that moment.

None of the rights and privileges granted to the DIP Lender by the Proposed Order, as filed, were granted by this Court's Final Order (I) Authorizing and Approving Postpetition Secured Financing, (II) Granting Security Interest and Superpriority Administrative Expense Status, And (III) Authorizing the Use of Cash Collateral.  (*See* Doc. 48 (the "DIP Financing Order").)   As such, these rights and privileges must represent a new agreement between the Debtor and the DIP Lender, for which the consideration offered by the DIP Lender remains unclear, particularly given the fact that the Debtor's

post-petition financial situation was so robust that the Motion states that the Debtor did not even need to draw from the second tranche of the loan authorized by the DIP Financing Order.   (*See* Motion, ¶ 1.)

## **CONCLUSION**

For the reasons stated above, the Court should deny the Debtor's Motion in its entirety.   If the Court does elect to grant the Motion, either at this time or in response to a future amended motion, the Court should (i) deny the Debtor the ability to modify the Bidding Procedures without prior Court approval, (ii) vest discretion for determining who may participate in each stage of the Bidding Procedures and for selecting the winning bid or bids[5] with B. Riley rather than the Debtor, and (iii) deny the DIP Lender notice of the existence or content of bids made by parties other than itself unless and until such information is made known to all other bidders or prospective bidders, but in no case until after the Bidding Deadline has passed.

---

5 As discussed *supra*, this discretion specifically refers to (i) determining who may participate in the bidding process (Bidding Procedures, ¶ A); (ii) who is provided access to due diligence materials (Bidding Procedures, ¶ B); (iii) selection of the Stalking Horse Bidder (Bidding Procedures, ¶ C); (iv) determining which bids qualify as Qualified Bids (Bidding Procedures, ¶¶ E, H); and (v) selecting the winning bid (Bidding Procedures, ¶ I).

## Local Rule 9013-2 and 9013-6 Statements

Pursuant to Local Bankruptcy Rule 9013-2, the U.S. Trustee states that he is not filing a separate memorandum of law in support of this motion and relies solely on the grounds and authorities set forth herein.

Pursuant to Local Rule 9013-6, the United States Trustee consents to entry of a final order or judgment in this matter by a bankruptcy judge.

Respectfully submitted,

John P. Fitzgerald, III
Acting United States Trustee, Region 4

Date: June 22, 2023                    By: _/s/   J. Dan Ford_
                                       J. Dan Ford, Fed. Bar No. 21290
                                       United States Department of Justice
                                       101 W. Lombard Street, Suite 2625
                                       Baltimore, MD 21201
                                       (410) 962-4300
                                       Fax: (410) 962-3537
                                       E-mail: j.dan.ford@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 22, 2023, a copy of the foregoing document was mailed, first class, postage prepaid, to:

Ally Bank, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

Aurora Management Partners Inc.
112 South Tyron St.
Ste 1770
Charlotte, NC 28284

B. Riley Securities, Inc.
11100 Santa Monica Blvd., Suite 800
Los Angeles, CA 90025

Alison D. Bauer
Foley Hoag LLP
1301 Avenue of the Americas, 25th Floor
New York, NY 10019

Jiun-Wen Bob Teoh
Foley Hoag LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019

I HEREBY FURTHER CERTIFY, that according to the Court CM/ECF system, a copy of the foregoing document was also served electronically upon:

- **Monique Desiree Almy**     malmy@crowell.com, cbest@crowell.com, malmy@ecf.axosfs.com, monique-almy-7127@ecf.pacerpro.com
- **Alison D. Bauer**     abauer@foleyhoag.com, hallis@foleyhoag.com
- **Hugh M. (UST) Bernstein**     hugh.m.bernstein@usdoj.gov
- **Richard L. Costella**     rcostella@tydings.com, jmurphy@tydings.com
- **Sudipta Das**     sdas@gfrlaw.com
- **Mark Dimenna**     mark.dimenna@offitkurman.com

- **James Daniel (UST) Ford**    j.dan.ford@usdoj.gov
- **Robert A. Gaumont**    rgaumont@gfrlaw.com, sdikes@gfrlaw.com
- **Catherine Keller Hopkin**    chopkin@yvslaw.com, pgomez@yvslaw.com, kreese@yvslaw.com, yvslawcmecf@gmail.com, hopkincr39990@notify.bestcase.com, schroppjr39990@notify.bestcase.com
- **Harry Conrad Jones**    HJones@coleschotz.com, bankruptcy@coleschotz.com, pratkowiak@coleschotz.com
- **Lawrence A. Katz**    lkatz@hirschlerlaw.com, llewis@hirschlerlaw.com, aklena@hirschlerlaw.com
- **C. Kevin Kobbe**    kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
- **Joyce A. Kuhns**    jkuhns@offitkurman.com
- **Craig B. Leavers**    craig@leaverslaw.com, leavers45@gmail.com
- **Gary H. Leibowitz**    gleibowitz@coleschotz.com, pratkowiak@coleschotz.com, bankruptcy@coleschotz.com, lmorton@coleschotz.com
- **Kimberly A. Manuelides**    kmanuelides@mcneeslaw.com
- **Bryan Mull**    bmull@gfrlaw.com
- **Jiun Wen Teoh**    jteoh@foleyhoag.com
- **US Trustee - Baltimore**    USTPRegion04.BA.ECF@USDOJ.GOV
- **Irving Edward Walker**    iwalker@coleschotz.com, jdonaghy@coleschotz.com, pratkowiak@coleschotz.com

*/s/ J. Dan Ford*
J. Dan Ford