**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

|  |  |
|---|---|
| In re: | (Chapter 11) |
| Tessemae's LLC,[1] | Case No. 23-10675 (NVA) |
| Debtor. |  |

**PLAN OF LIQUIDATION UNDER CHAPTER 11**
**OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR**

**COLE SCHOTZ P.C.**
Gary H. Leibowitz (Bar No. 24717)
HC Jones, III (Bar No. 20064)
300 East Lombard Street, Suite 1111
Baltimore, MD 21202
Telephone: (410) 528-2971
Fax: (410) 230-0667
gleibowitz@coleschotz.com
hjones@coleschotz.com

Counsel for the Debtor and Debtor-in-Possession Official

Dated:  June 22, 2023

---

[1]   The Debtor in this chapter 11 case and the last four digits of its federal tax identification are Tessemae's LLC (2871). The Debtor's principal address is 714 South Wolfe Street, P.O. Box No. 38438, Baltimore, Maryland 21231.

## TABLE OF CONTENTS

**Page**

INTRODUCTION................................................................................................1

ARTICLE I DEFINITIONS AND INTERPRETATION ...........................................1

    1.1     **Administrative Expense Claim** ....................................................1

    1.2     **Administrative Expense Claim Objection Deadline** ...................1

    1.3     **Allowed** ....................................................................................1

    1.4     **Asset Purchase Agreement** .......................................................2

    1.5     **Auction** ....................................................................................2

    1.6     **Bankruptcy Code** .....................................................................2

    1.7     **Bankruptcy Court** ....................................................................2

    1.8     **Bankruptcy Rules** ....................................................................2

    1.9     **Bar Date** ..................................................................................2

    1.10    **Business Day** ...........................................................................2

    1.11    **Cases** .......................................................................................2

    1.12    **Cash** ........................................................................................2

    1.13    **Causes of Action** .....................................................................2

    1.14    **CEC** .........................................................................................3

    1.15    **Claim** ......................................................................................3

    1.16    **Claims Register** .......................................................................3

    1.17    **Class** .......................................................................................3

    1.18    **Collateral** ................................................................................3

    1.19    **Confirmation Date** ...................................................................3

    1.20    **Confirmation Hearing** .............................................................3

    1.21    **Confirmation Order** .................................................................3

    1.22    **Debtor** .....................................................................................3

    1.23    **Democracy** ..............................................................................3

    1.24    **DIP Credit Facility** ..................................................................3

    1.25    **DIP Lender** ..............................................................................3

    1.26    **Disallowed** ..............................................................................3

    1.27    **Disbursing Agent** ....................................................................3

    1.28    **Disclosure Statement** ...............................................................3

65577/0001-45560221v4

1.29    **Disputed** ................................................................................... 4

1.30    **Effective Date** ........................................................................... 4

1.31    **Entity** ........................................................................................ 4

1.32    **Equity Interest** .......................................................................... 4

1.33    **Estates** ...................................................................................... 4

1.34    **Final Order** ............................................................................... 4

1.35    **General Unsecured Claim** ........................................................ 5

1.36    **Impaired** ................................................................................... 5

1.37    **Insurance Policy** ....................................................................... 5

1.38    **Plan** .......................................................................................... 5

1.39    **LEC** .......................................................................................... 5

1.40    **Lien** .......................................................................................... 5

1.41    **MCDJR** ..................................................................................... 5

1.42    **Person** ....................................................................................... 5

1.43    **Petition Date** ............................................................................. 5

1.44    **Plan Administrator** ................................................................... 5

1.45    **Plan Payment Date** ................................................................... 5

1.46    **Plan Proponent** ......................................................................... 5

1.47    **PMCD** ....................................................................................... 5

1.48    **Priority Non-Tax Claim** ........................................................... 5

1.49    **Priority Tax Claim** .................................................................... 6

1.50    **Pro Rata Share** .......................................................................... 6

1.51    **Professional** .............................................................................. 6

1.52    **Professional Fee Claim** ............................................................. 6

1.53    **Purchaser** .................................................................................. 6

1.54    **Sale** ........................................................................................... 6

1.55    **Sale and Bid Procedures** .......................................................... 6

1.56    **Sale Documents** ........................................................................ 6

1.57    **Schedule of Assumed Contracts** .............................................. 6

1.58    **Schedules** .................................................................................. 6

1.59    **Secured Claim** ........................................................................... 6

1.60    **Successor Plan Administrator** .................................................. 7

1.61    **VBM** .......................................................................................... 7

ii

**ARTICLE II UNCLASSIFIED CLAIMS** ........................................................................... 7

    **2.1**    **Administrative Expense Claims** ............................................................... 7

    **2.2**    **Professional Fee Claims** .......................................................................... 7

    **2.3**    **Fees Under 28 U.S.C. §1930** ................................................................... 7

    **2.4**    **Priority Tax Claims** ................................................................................. 8

**ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ................. 8

    **3.1**    **Classification** ........................................................................................... 8

**ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS** ........................ 9

    **4.1**    **Class 1 – Secured Claims of MCDJR, PMCD, CEC, and LEC.** ............. 9

    **4.2**    **Class 2 - Secured Claims of VBM** ....................................................... 10

    **4.3**    **Class 3 – Secured Claim of Democracy** ............................................... 10

    **4.4**    **Class 4 - Secured Claim of Clearview.** ................................................. 10

    **4.5**    **Class 5 - Priority Non-Tax Claims** ....................................................... 11

    **4.6**    **Class 6 - General Unsecured Claims** .................................................... 11

    **4.7**    **Class 7 - Equity Interests** ..................................................................... 11

**ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS** .................................... 12

    **5.1**    **Distribution Record Date** ...................................................................... 12

    **5.2**    **Method of Distributions Under the Plan** ............................................... 12

    **5.3**    **Withholding and Reporting Requirements** ........................................... 13

    **5.4**    **Time Bar to Cash Payments** ................................................................. 13

    **5.5**    **Minimum Distributions** ......................................................................... 13

    **5.6**    **Setoffs** ................................................................................................... 13

    **5.7**    **Transactions on Business Days** ............................................................. 13

    **5.8**    **Allocation of Plan Distribution Between Principal and Interest** .................. 14

**ARTICLE VI MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN** ...................................................................................................................... 14

    **6.1**    **The Sale** ................................................................................................ 14

    **6.2**    **Application of Sale Proceeds** ................................................................ 14

    **6.3**    **Cancellation of Existing Securities and Agreements** ........................... 14

    **6.4**    **Release of Liens** ................................................................................... 14

    **6.5**    **Plan Administrator's Post-Effective Date Role** .................................... 15

    **6.6**    **Books and Records** ............................................................................... 15

    **6.7**    **Corporate Action** ................................................................................. 15

|      | 6.8   | Effectuating Documents and Further Transactions | 16 |

**ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS** ........................................... 16

|      | 7.1   | Objections to Claims | 16 |
|      | 7.2   | No Distribution Pending Allowance | 16 |
|      | 7.3   | Disputed Claims | 16 |
|      | 7.4   | Estimation | 16 |

**ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .................. 17

|      | 8.1   | Executory Contracts; Unexpired Leases; Insurance Policies | 17 |
|      | 8.2   | Approval of Rejection of Executory Contracts and Unexpired Leases | 17 |
|      | 8.3   | Rejection Claims | 17 |

**ARTICLE IX EFFECTIVENESS OF THE PLAN** ....................................................... 18

|      | 9.1   | Condition Precedent to Effective Date of Plan | 18 |
|      | 9.2   | Effect of Nonoccurrence of Conditions to Effective Date | 18 |

**ARTICLE X EFFECT OF CONFIRMATION** .............................................................. 18

|      | 10.1  | Release of Liens | 18 |
|      | 10.2  | Binding Effect | 18 |
|      | 10.3  | Term of Injunctions or Stays | 18 |
|      | 10.4  | Causes of Action | 18 |
|      | 10.5  | Injunction | 19 |

**ARTICLE XI RETENTION OF JURISDICTION** ....................................................... 19

|      | 11.1  | Jurisdiction of Bankruptcy Court | 19 |

**ARTICLE XII CRAMDOWN RESERVATION** ............................................................ 21

|      | 12.1  | Nonconsensual Confirmation | 21 |

**ARTICLE XIII MISCELLANEOUS PROVISIONS** .................................................... 21

|      | 13.1  | Substantial Consummation | 21 |
|      | 13.2  | Releases by the Debtor | Error! Bookmark not defined. |
|      | 13.3  | Exculpation | 21 |
|      | 13.4  | Post-Effective Date Fees and Expenses of Professionals | 21 |
|      | 13.5  | Payment of Statutory Fees | 22 |
|      | 13.6  | Modification of Plan | 22 |
|      | 13.7  | Revocation or Withdrawal of Plan | 22 |
|      | 13.8  | Management of the Debtor After the Effective Date. | 22 |
|      | 13.9  | Dissolution of the Debtor | 24 |

iv

**13.10  Courts of Competent Jurisdiction** ....................................................... 24

**13.11  Severability** .......................................................................................... 24

**13.12  Governing Law** ..................................................................................... 24

**13.13  Exhibits** ................................................................................................. 24

**13.14  Successors and Assigns** ....................................................................... 25

**13.15  Section 1125 of the Bankruptcy Code** ................................................. 25

**13.16  Section 1146 Exemption** ....................................................................... 25

**13.17  Section 1145 Exemption** ................................... **Error! Bookmark not defined.**

**13.18  Time**  25

**13.19  Notices** .................................................................................................. 25

65577/0001-45560221v4

## INTRODUCTION

Tessemae's LLC., the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby proposes this Chapter 11 Plan of Liquidation (the "Plan") pursuant to section 1121(a) of the Bankruptcy Code. Reference is made to the Disclosure Statement (the "Disclosure Statement") for a discussion of (i) the Debtor's history, business, and assets, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to consummation of this Plan.

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in this Plan should be construed as constituting a solicitation of acceptances of this Plan unless and until the Disclosure Statement has been approved and distributed to all holders of Claims and Interests to the extent required by section 1125 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**DEFINITIONS**. The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

**1.1     Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of the Case allowed under sections 503(b), 507(a)(2), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate; any actual and necessary costs and expenses of operating the Debtor's business; any indebtedness or obligations incurred or assumed by the Debtor, as debtor-in-possession, during the Case, including, without limitation, for the acquisition or lease of property or an interest in property; or the rendition of services; any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 328(a), 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate under section 1930 of chapter 123 of title 28 of the United States Code.

**1.2     Administrative Expense Claim Objection Deadline** means the last day for filing an objection to any Administrative Expense Claim (other than Professional Fee Claims) which shall be sixty (60) days after the Effective Date.

**1.3     Allowed** means, with reference to any Claim, (i) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed and for which no objection or request for estimation has been filed, (ii) any timely filed proof of Claim as to which no objection to allowance or request for estimation has been interposed in accordance with Article VII hereof or such other applicable period of limitation fixed by the Bankruptcy Code,

the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

**1.4** **Asset Purchase Agreement** means an Asset Purchase Agreement to be signed which provides for the Sale of substantially all of the Debtor's assets.

**1.5** **Auction** means the auction for the Sale of the Debtor's assets to be conducted in accordance with the Sale and Bid Procedures.

**1.6** **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to this Case.

**1.7** **Bankruptcy Court** means the United States Bankruptcy Court for the District of Maryland (Baltimore Division), in which the Case is pending.

**1.8** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court, as amended from time to time, applicable to these Case.

**1.9** **Bar Date** means the date set by the Bankruptcy Court for non-governmental agencies and governmental agencies to file proofs of claim and Administrative Expense Claims in these Cases.

**1.10** **Business Day** means any day other than a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

**1.11** **Case** means the above captioned chapter 11 bankruptcy case filed on the Petition Date.

**1.12** **Cash** means legal tender of the United States of America.

**1.13** **Causes of Action** means any and all actions, causes of action, liabilities, debts, obligations, rights, suits, damages, judgments, claims, defenses, rights of offset or recoupment, and demands whatsoever of the Debtor and its Estate, including but not limited to actions commenced or actions that may be commenced before or after the Effective Date pursuant to sections 105, 506(b), 506(c), 510, 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, applicable non-bankruptcy law (including, but not limited to claims against officers and directors), or in equity, whether known or unknown, existing or hereafter arising, directly, indirectly or derivatively, in contract or in tort, at law or in equity, or under any other theory of law, including, but not limited to, (a) those actions set forth in the Debtor's Schedules or discussed in the Disclosure Statement or Plan, including but not limited to Chapter 5 causes of action against non-insiders, potential Chapter 5 causes of action against insiders; (b) all claims, actions, avoiding powers, rights of recovery, subordination rights or other actions against insiders and/or any other persons or entities under the Bankruptcy Code, including avoidance actions, (c) on contracts or for breaches of duties imposed by law, and (d) commercial tort claims as defined in Article 9 of the Uniform Commercial Code, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of this Case,

2

arising out of, relating to or in connection with the pre-bankruptcy and/or post-bankruptcy Debtor.

**1.14** **CEC** means CE CID, LLC, a prepetition secured creditor.

**1.15** **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.16** **Claims Register** means the list maintained by the Clerk of the Bankruptcy Court listing all proofs of claim filed in the Case, as may be amended from time to time.

**1.17** **Class** means any group of Claims or Equity Interests classified by the Plan in accordance with section 1122(a)(1) of the Bankruptcy Code.

**1.18** **Collateral** means any property or interest in property of the Estate subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.19** **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.20** **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.21** **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.22** **Debtor** means Tessemae's LLC.

**1.23** **Democracy** means Democracy Capital Corporation.

**1.24** **DIP Credit Facility** means that credit facility dated February 21, 2023 with the DIP Lender in the principal amount of $1,250,000.

**1.25** **DIP Lender** means Tesse DIP Fund I, LLC, pursuant to that DIP Credit Facility.

**1.26** **Disallowed** means a Claim or portion thereof that (i) has been disallowed by a Final Order, (ii) is identified in the Schedules in the amount of zero dollars, or as contingent, unliquidated or disputed and as to which a proof of claim was not filed by the Bar Date or other applicable time for doing so, (iii) is not identified by the Schedules and as to which no proof of claim has been filed or deemed filed by the Bar Date or other applicable time for doing so, or (iv) was not filed in a timely manner as provided by a relevant Order of the Bankruptcy Court.

**1.27** **Disbursing Agent** has the meaning set forth in Article 5.2(b) of the Plan.

**1.28** **Disclosure Statement** means the disclosure statement relating to the Plan, including, without limitation, all exhibits, schedules and attachments thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.29** **Disputed** means, with respect to any Claim which has not been Allowed or Disallowed pursuant to the Plan or a Final Order:

(a)       if no proof of claim has been filed by the applicable deadline:  a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(b)       if a proof of claim or request for payment of an Administrative Expense Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtor or other party in interest, or which is subject to dispute in an adversary proceeding which has not been withdrawn or determined by a Final Order.

**1.30** **Effective Date** means a Business Day on or after the Confirmation Date specified by the Debtor on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Article IX hereof have been satisfied or waived.

**1.31** **Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.32** **Equity Interest** means the interest of any holder of an equity security of the Debtor, preferred or common, represented by any issued and outstanding common or preferred membership interests or other instrument evidencing a present ownership interest in the Debtor, whether or not transferable, or any option, warrant or right, contractual or otherwise, to acquire any such interest whether or not the holder of said Equity Interest filed a proof of interest or proof of claim in these cases. Equity Interest shall include any Claim against a Debtor described in section 510(b) of the Bankruptcy Code.

**1.33** **Estates** means the bankruptcy estate of the Debtor in this Case created pursuant to section 541 of the Bankruptcy Code.

**1.34** **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted

**1.35** **General Unsecured Claim** means any Claim against the Debtor that is (i) not a Secured Claim, Administrative Expense Claim, Priority Tax Claim or Priority Non-Tax Claim, or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.36** **Impaired** shall have the meaning ascribed to it in section 1124 of the Bankruptcy Code.

**1.37** **Insurance Policy** means any policy of insurance and Agreements relating thereto covering: (i) the Debtor or its assets or that may be available to provide coverage for Claims against the Debtor; and (ii) the actions of the Debtor's officers, directors and other agents, including but not limited to the Directors' and Officers' and Corporate Liability Insurance, as well as all accompanying documents, agreements, attachments, declarations, amendments, endorsements, renewals, and tails relating thereto.

**1.38** **Plan** means this chapter 11 plan of liquidation, including exhibits, schedules and/or attachments annexed hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the terms hereof.

**1.39** **LEC** means LEC, LLC, a prepetition secured creditor.

**1.40** **Lien** means a judicial lien as defined in section 101(36) of the Bankruptcy Code; a lien as defined in section 101(37) of the Bankruptcy Code; a security interest as defined in section 101(51) of the Bankruptcy Code; a statutory lien as defined in section 101(53) of the Bankruptcy Code; and any other lien, interest, charge or encumbrance.

**1.41** **MCDJR** means MCDJR-TESSE, LLC, a prepetition secured creditor.

**1.42** **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code and also includes governmental units.

**1.43** **Petition Date** means February 1, 2023.

**1.44** **Plan Administrator** means the Person or Entity designated by the Debtor in its sole discretion but with consultation with the DIP Lender to act as the Plan Administrator in accordance with the terms of the Plan, and any Successor Plan Administrator.

**1.45** **Plan Payment Date** means the first business day that is the later to occur of 120 days following the closing of the Sale or 10 Business Days after the Effective Date.

**1.46** **Plan Proponent** means the Debtor.

**1.47** **PMCD** means PMCDTESSE, LLC, a prepetition secured creditor

**1.48** **Priority Non-Tax Claim** means an unsecured Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not a Priority Tax Claim.

**1.49**    **Priority Tax Claim** means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.50**    **Pro Rata Share** means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

**1.51**    **Professional** means any Bankruptcy Court approved professional person employed by the applicable entity in this Case at any time before the Confirmation Date.

**1.52**    **Professional Fee Claim** means a Claim against the Debtor under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Bankruptcy Case prior to the Effective Date.

**1.53**    **Purchaser** means buyer of substantially all of the Debtor's assets pursuant to an order of the Bankruptcy Court.

**1.54**    **Sale** means the sale of substantially all of the Debtor's assets to Purchaser under the Asset Purchase Agreement.

**1.55**    **Sale and Bid Procedures** means the bid and auction procedures set forth in the "Bid Procedures Motion" filed in the Bankruptcy Court seeking approval of, among other things, sale and auction procedures in connection with the Sale, and the sale of substantially all of the Debtor's assets under a "Sale Motion" to be filed by the Debtor, as such motions may be amended by the Debtor or by Order of the Bankruptcy Court.

**1.56**    **Sale Documents** means the Asset Purchase Agreement, the Schedule of Assumed Contracts, list of inventory, equipment and intellectual property and any schedules, exhibits or other documents attached thereto in connection with the sale substantially all of the Debtor's assets to Purchaser, as finally approved by the Bankruptcy Court.

**1.57**    **Schedule of Assumed Contracts** means the schedule listing certain executory contracts and unexpired leases assumed by the Debtor and assigned to Purchaser in connection with the Asset Purchase Agreement.

**1.58**    **Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

**1.59**    **Secured Claim** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.60**    **Successor Plan Administrator** has the meaning set forth in Article 13.8(e) of the Plan.

**1.61**    **VBM** means Vetter Brothers Manufacturing, LLC.

**INTERPRETATION; APPLICATION OF DEFINITIONS
AND RULES OF CONSTRUCTION**

The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  The words "including" and "include" and other words of similar import shall be deemed to be followed by the phrase "without limitation."  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.  Wherever from the context it appears appropriate, each term stated shall include both singular and plural, and pronouns shall include the masculine, feminine and neuter regardless of how stated.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

**ARTICLE II**

**UNCLASSIFIED CLAIMS**

**2.1**    **Administrative Expense Claims**.  The bar date for all Administrative Expense Claims (other than Professional Fee Claims and fees and expenses of the Plan Administrator and professional persons employed by the Plan Administrator after the Effective Date as set forth in Article 13.7) shall be **thirty (30) days after the Effective Date.**  Any objection that the Debtor or Plan Administrator may wish to file with respect to any Administrative Expense Claim (other than Professional Fee Claims) shall be filed on or before the Administrative Expense Claim Objection Deadline (**sixty (60) days after the Effective Date**).  On or as soon as reasonably practicable after the later of (i) **forty-five (45) days after** the Effective Date or (ii) the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, the holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Allowed amount of such Administrative Claim or (b) such other less favorable treatment as to which the Debtor and such holder shall have agreed upon in writing.

**2.2**    **Professional Fee Claims**.  All final requests for payment of Professional Fee Claims (for fees and expenses through the Effective Date) must be made by application filed with the Bankruptcy Court **no later than sixty (60) days after the Effective Date**.  Any party in interest shall have the right to object to a Professional Fee Claim.  Objections to Professional Fee Claims shall be filed within twenty-one (21) days from the filing and service of the Professional Fee Claim.

**2.3**    **Fees Under 28 U.S.C. §1930**.  All fees payable in the Cases under 28 U.S.C. §1930, as agreed by the Debtor or as determined by the Bankruptcy Court, will, if not previously

7

paid in full, be paid in Cash on the Effective Date and will continue to be paid by the Debtor as required under 28 U.S.C. §1930 until such time as an order is entered by the Bankruptcy Court closing the Cases.

**2.4** **Priority Tax Claims**. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, the Debtor shall pay to each holder of an Allowed Priority Tax Claim, an amount in Cash equal to the Allowed amount of such Claim on the later to occur of the Plan Payment Date or as soon as is reasonably practicable after the Effective Date or the date on which such Priority Tax Claim is Allowed.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**3.1** **Classification.** The Claims against and Equity Interests in the Debtor shall be classified as specified below (other than Administrative Expense Claims and Priority Tax Claims, which shall be treated in accordance with Article II above). Consistent with section 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified by the Plan in a particular Class only to the extent the Claim or Equity Interest is within the description of the Class, and a Claim or Equity Interest is classified in a different Class to the extent it is within the description of that different Class.

### Claims Asserted as Secured Claims

(a) **Class 1.** Class 1 consists of the Secured Claims of MCDJR, PMCD, CEC, and LEC pursuant to that April 9, 2018 Loan and Security Agreement and related promissory notes in the amount of $1,300,000, as amended by the September 8, 2022 Amended and Restated Loan and Security Agreement and promissory notes in the amount of $3,890,000.

(b) **Class 2.** Class 2 consists of the Secured Claims of VBM under that September 8, 2022 Loan and Security Agreement and promissory note in the amount of $1,731,576.26, as amended by that September 12, 2022 Amendment to Loan and Security Agreement and Amended and Restated Promissory Note in the amount of $1,981,576.26. VBM's Class 2 Claim is subordinate to the claims in Class 1.

(c) **Class 3.** Class 3 consists of the Secured Claims of Democracy under a Consolidated, Amended and Restated Promissory Note dated April 10, 2018 in the principal amount of $3,000,000 and Amended and Restated Loan and Security Agreement dated April 10, 2018.

(d) **Class 4**. Class 4 consists of the Secured Claims of Clearview Consulting, Inc. under a Confessed Judgment Convertible Promissory Note dated January 5, 2018 in the principal amount of $671,520.00, and the financing statement filed on March 28, 2023 to perfect a security interest in assets of the Debtor as security for such Claims.

### Unsecured Claims and Interests

(e) **Class 5**. Class 5 consists of Priority Non-Tax Claims, if any.

(f)    **Class 6**.  Class 6 consists of General Unsecured Claims.

(g)    **Class 7**.  Class 7 consists of Equity Interests.

The following table designates the Classes of Claims against and Equity Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (iii) deemed to reject the Plan:

| Class | Designation | Impairment | Entitled to Vote (subject to F.R.Bankr.P. 3018) |
|-------|-------------|------------|-------------------------------------------------|
| 1 | Secured Claims of MCDJR, PMCD, CES, and LEC | Impaired | Yes |
| 2 | Secured Claim of VBM | Impaired | Yes |
| 3 | Democracy Claim | Impaired | Yes |
| 4 | Clearview Claim | Impaired | Yes |
| 5 | Non-priority Tax Claims | Unimpaired | No (deemed to accept) |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Equity Interests | Impaired | Yes |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**    **Class 1 – Secured Claims of MCDJR, PMCD, CEC, and LEC.**

**Classification**.  Class 1 consists of the Secured Claims of MCDJR, PMCD, CEC, and LEC.

**Impairment and Voting**.  Class 1 Claims are impaired under the Plan.  Each holder of a Class 1 claim shall be entitled to vote to accept or reject the Plan.

**Treatment**.  Each Class 1 Allowed Claim shall receive full payment of its Class 1 Allowed Claim, to the extent determined to be an Allowed Secured Claim, on the later to occur of (i) the Plan Payment Date (ii) the date on which the Class 1 Claim is determined to be an Allowed Secured Claim by a Final Order of the Bankruptcy Court; and (iii) ten (10) days after the Class 3 Claim of Democracy has been Allowed or Disallowed.  To the extent that a Class 1 Claim is determined not to be an Allowed Secured Claim, the remaining balance of the Claim

9

shall be treated as a Class 6 Claim. Notwithstanding the foregoing, the holders of the Class 1 Claims have agreed to waive the portion of their Claims based on "exit fees" due under the respective loan documents for the holders of Class 1 Claims.

### 4.2    Class 2 - Secured Claims of VBM.

**Classification**. Class 2 consists of the subordinated Secured Claim of VBM.

**Impairment and Voting**. The Class 2 Claim is impaired under the Plan. Each holder of a Class 2 claim shall be entitled to vote to accept or reject the Plan.

**Treatment**. The Class 2 Allowed Claim shall receive full payment of its Class 2 Allowed Claim only in the event that Class 1 Claims receive payment in full or are otherwise provided for by agreement under the Plan. Subject to the foregoing, the Allowed Class 2 Claim shall receive full payment of its Class 2 Claim on the later to occur of (i) the Plan Payment Date (ii) the date on which the Class 2 Claim is determined to be an Allowed Secured Claim by a Final Order of the Bankruptcy Court; (iii) Class 1 Claims receive payment in full; and (iv) ten (10) days after the Class 3 Claim of Democracy has been Allowed or Disallowed. To the extent that the Class 2 Claim is determined not to be an Allowed Secured Claim, the remaining balance of the Allowed Class 2 Claim shall be treated as a Class 6 Claim. Notwithstanding the foregoing, the Class 2 Creditor has agreed to waive the portion of its Claims based on exit fees due under the Class 2 loan documents.

### 4.3    Class 3 – Secured Claim of Democracy.

**Classification**. Class 3 consists of the Secured Claims of Democracy.

**Impairment and Voting**. The Class 3 Claims are impaired under the Plan and shall be entitled to vote to accept or reject the Plan.

**Treatment**. The Class 3 Claim, to the extent it is determined to be an Allowed Secured Claim, shall be paid in full under the Plan on the later to occur of (i) the Plan Payment Date, (ii) ten (10) business days after the Effective Date, and (iii) ten (10) days after the date on which the Class 3 Claim is determined to be an Allowed Secured Claim by a Final Order of the Bankruptcy Court.

### 4.4    Class 4 - Secured Claim of Clearview.

**Classification**. Class 4 consists of the Secured Claim of Clearview.

**Impairment and Voting**. The Class 4 Claim is impaired under the Plan. The holder of the Class 4 claim shall be entitled to vote to accept or reject the Plan.

**Treatment**. The Class 4 Allowed Claim, if any, shall receive full payment of its Class 4 Allowed Claim on the later to occur of (i) the Plan Payment Date; (ii) the date on which the Class 4 Claim is determined to be an Allowed Secured Claim by a Final Order of the Bankruptcy Court; and (iii) ten (10) days after the Class 3 Claim of Democracy has been

65577/0001-45560221v4

Allowed or Disallowed. To the extent that the Class 4 Claim is determined not to be an Allowed Secured Claim, the Class 4 Claim shall be treated as a Class 6 Claim.

      **4.5**     **Class 5 - Priority Non-Tax Claims**.

      **Classification**. Class 5 consists of all non-tax Claims entitled to priority under Section 507 of the Bankruptcy Code.

      **Impairment and Voting**. Class 5 Claims are unimpaired under the Plan and shall not be entitled to vote to accept or reject the Plan, and they are deemed to accept.

      **Treatment**. Except to the extent that a holder of an Allowed Class 5 Claim agrees to a different treatment of such Claim, the holder shall receive full payment on the later of (i) the Plan Payment Date, or (ii) as soon as is reasonably practicable after the Effective Date and such Class 5 Claim is determined to be an Allowed Class 5 Claim.

      **4.6**     **Class 6 - General Unsecured Claims**.

      **Classification**. Class 6 consists of all General Unsecured Claims.

      **Impairment and Voting**. The Class 6 Claims are impaired under the Plan. The holders of the Class 6 claims shall be entitled to vote to accept or reject the Plan.

      **Treatment**. The holders of Allowed General Unsecured Claims shall receive their Pro Rata Share of all remaining distributions under the Plan after all Allowed Claims in Classes 1 through 5 are paid in full or otherwise treated as provided for under the Plan. Distributions to Class 6 Claims shall be made from time to time by the Plan Administrator in his/her sole discretion, in accordance with the terms of the Plan.

      **4.7**     **Class 7 - Equity Interests**.

      **Classification**. Class 7 consists of the holders of membership interests in the Debtor.

      **Impairment and Voting**. The Class 7 Claims are impaired under the Plan. The holders of the Class 7 claims shall be entitled to vote to accept or reject the Plan.

      **Treatment**. To the extent Allowed, the holders of Class 7 Interests shall receive a distribution on account of their Class 7 Interests pursuant to Article V of the Plan, only in the event that, and only after, all Class 1 through Class 6 Allowed Claims are paid in full under the terms of the Plan. The Class 7 interests shall be deemed canceled and extinguished as of the Effective Date, without any further act or action under any applicable law, regulation, order or rule.

65577/0001-45560221v4

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

**5.1** **Distribution Record Date**.  As of the close of business on the Bar Date, or on such other date as may be set by the Bankruptcy Court, the Claims Register, the equity register and other registers as maintained by the Debtor and/or their respective agents, as applicable, shall be deemed closed, and there shall be no further changes in the record holders of any Claim or Equity Interests unless otherwise specifically provided under the Plan.

**5.2** **Method of Distributions Under the Plan**.

(a) **Effective Date Payments and Transfers by the Debtors**.  Except as otherwise set forth in this Plan, on or as soon as practicable after the Effective Date, the Debtor shall pay to holders of Allowed Claims, an amount in Cash equal to the Allowed amount of such Claims or in such other amounts as set forth in or otherwise permitted by the Plan.

(b) **Disbursing Agent**.  The Plan Administrator shall act as Disbursing Agent for any and all funds to be paid to creditors pursuant hereto, unless the Plan Administrator designates a separate person or entity to act as the Disbursing Agent.

(c) **Distributions of Cash**.  At the option of the Plan Administrator, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

(d) **Delivery of Distributions**.  Subject to Bankruptcy Rule 9010, unless otherwise provided in the Plan, all distributions and other written communications to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules of the Debtor or, if a proof of claim or interest is filed, as listed in such proof of claim or interest, unless the Debtor has been notified in writing of a change of address.  In the event that any distribution to any holder or any request by the Plan Administrator for a tax identification number is returned as undeliverable, no distribution to such holder will be made unless and until the Plan Administrator has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such holder without interest; provided, however, that, such undeliverable distributions (or request for tax identification number) will be deemed unclaimed property under section 347(b) of the Bankruptcy Code and/or undeliverable at the expiration of ninety (90) days after the date of distribution or request by the Plan Administrator for a tax identification number, and the amount of any undeliverable distribution shall irrevocably revert back to the Debtor's Estate and any Claim in respect of such undeliverable distribution or request for tax identification number shall be discharged and forever barred from assertion against the Debtor, its property or Estate, as the case may be, and the holder of such Claim shall not be entitled to receive any future distributions.  The Plan Administrator will have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules, the Debtor's books and records (to the extent available) or the Claims Register (including any proofs of claim filed against the Debtor).

(e)    **Interim and Final Distributions.** On the Effective Date or as soon as practicable after the Effective Date, the Plan Administrator shall be authorized (but not required) to direct the Disbursing Agent (if they are different) to make interim distributions. The Plan Administrator shall direct the Disbursing Agent to make a final distribution of all net distributable proceeds to creditors entitled to distributions under this Plan only after (i) all property and assets of the Debtor and the Estate has been converted to Cash or abandoned; (ii) all Disputed Claims have been finally resolved; and (iii) the fees and expenses of the Plan Administrator and his/her professionals, and the Disbursing Agent have been paid in full (including any fees and expenses reasonably anticipated to be incurred after the final distribution to close or wind up the Debtor, the Estate or the chapter 11 case as applicable) in accordance with this Plan.

**5.3**    **Withholding and Reporting Requirements**. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

**5.4**    **Time Bar to Cash Payments**. Checks issued in accordance with the Plan in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check was originally issued. Any request for reissuance of a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtor's Estate and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor and its property or its Estate, as the case may be, and the holder of such unclaimed distribution shall not be entitled to receive any future distributions.

**5.5**    **Minimum Distributions**. No payment of Cash less than $25 shall be made by the Plan Administrator. Any Assets that are undistributable, undeliverable or unclaimed in accordance with this Article V shall revert to the Debtor's Estate. If the net distributable proceeds, after the Debtor's assets have been liquidated to Cash, is less than $10,000.00, the Plan Administrator shall not be required to make a distribution and shall be authorized but not required to donate such amount to a reputable charity.

**5.6**    **Setoffs**. The Debtor and/or Plan Administrator may, but shall not be required, to set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim the Debtor may have against the holder of such Claim.

**5.7**    **Transactions on Business Days**. If the Effective Date or any other date on which a transaction may occur under the Plan occurs on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next Business Day but shall be deemed to have been completed as of the required date.

13

**5.8     Allocation of Plan Distribution Between Principal and Interest**.    All distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim) other than to the extent allowed by the Bankruptcy Court in accordance with section 506(b) or as otherwise provided in the Plan, interest shall not accrue on any Claims after the Petition Date or after the Effective Date.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**6.1     The Sale**.  On May 31, 2023, the Debtor filed the Bid Procedures Motion.  The Debtor intends to file a Sale Motion seeking entry of an Order (A) Approving Asset Purchase Agreement and Authorizing the Sales of Assets of the Debtor Outside the Ordinary Course of Business; (B) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, and Encumbrances, and Interest; (C) Approving Assumption and Assignment of Designated Executory Contracts and Granting Related Relief (the "Sale Order").  Among other things, the Sale Order will (i) authorize the sale of substantially all of the Debtor's assets under sections 363 and 365 of the Bankruptcy Code under the terms and conditions of the Asset Purchase Agreement, (ii) find that the Purchaser is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code; (iii) that the Sale was conducted in accordance with applicable orders of the Court, including, without limitation, interim or other orders approving the Sale and Bid Procedures Motion (prior to entry of the Confirmation Order).

**6.2     Application of Sale Proceeds**.  Net proceeds of the Sale, as well as available Cash on hand and collection of accounts receivable shall be distributed to holders of Allowed Claims pursuant to the terms of this Plan.

**6.3     Cancellation of Existing Securities and Agreements**.  On the Effective Date, except as expressly provided in this Plan or other Final Orders of the Bankruptcy Court, the securities, trust indentures, membership interest certificates, warrants, options, and other instruments evidencing or securing an Interest shall be deemed cancelled without further act or action under any applicable agreement or Law, and the obligations of the Debtor with respect to any such Interests shall be discharged.

**6.4     Release of Liens**.  Except as otherwise specifically provided in or contemplated by the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, and subject to the terms and conditions of the Sale Order, (i) each holder of: (a) Secured Claims, (b) any purported Other Secured Claims and/or (c) any judgment, personal property or ad valorem tax, molder, warehouse or artisan or similar Lien Claim, regardless of whether such Claim is an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed:  (y) turn over and release to the Estate any and all property of the Debtor or Estate that secures or purportedly secures such Claim, or such Lien and/or Claim shall automatically, and without further action by the Debtor be deemed released and (z) execute such documents and instruments as the Debtor requires to evidence the holder of a Claim's release of such property or Lien, and if

14

such holder refuses to execute appropriate documents or instruments, the Debtor in its discretion, file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any holder of a Claim's rights in such property; and (ii) on the Effective Date, all right, title and interest in such property shall revert or be transferred to the Debtor's Estate free and clear of all Claims, interests, and Liens of any kind.

**6.5**    **Plan Administrator's Post-Effective Date Role**.  All rights and obligations of the Debtor under this Plan that exist or continue on or after the Effective Date shall vest in the post-confirmation Debtor, and such rights and obligations shall be solely exercisable by the Plan Administrator on and after the Effective Date.  Further, the Plan Administrator shall perform each of the following acts as soon as practicable on or after the Effective Date:

(a)    **General Powers**.  In furtherance of and consistent with the purpose of the Plan, the Plan Administrator shall (A) have the power and authority to hold, manage, sell and distribute assets of the Estate in accordance with the Plan, (B) have the power and authority to directly, indirectly, and/or derivatively, commence, prosecute and resolve, in the name of the Debtor any and all Causes of Action, (C) have the power and authority to file, prosecute and resolve objections to Disputed Claims, (D) have the power and authority to perform such other functions as are provided in the Plan (E) have the power and authority to administer the closure of the Case and (F) have the power and authority to dissolve the Debtor.  The Plan Administrator shall be responsible for all decisions and duties with respect to the Debtor and Estate.

(b)    **Claims Administration, Prosecution and Objection to Claims, and Plan Distributions**.  The Plan Administrator shall have the power and authority to prosecute and resolve objections to all Disputed Claims without further order of the Bankruptcy Court.  The Plan Administrator shall have the right, power and authority to retain and assert all defenses, rights of setoff, recoupment and counterclaims with respect to each of the foregoing.  The Plan Administrator shall also have the power and authority to hold, manage and distribute Plan distributions to the holders of Allowed Claims as provided for in Article 6.2 and consistent with applicable provisions of this Plan.

**6.6**    **Books and Records**.  Upon the Effective Date, the Debtor shall turn over its books and records to the Plan Administrator.  The Debtor's books and records may, at the sole discretion of the Plan Administrator, be abandoned or destroyed without further Bankruptcy Court order; provided that a notice of any proposed abandonment or destruction of books and records shall be issued in accordance with the applicable Bankruptcy Rules, and any objection to such proposed abandonment or destruction shall be resolved by the Bankruptcy Court.  For purposes of this section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor in and to their books and records, wherever located.

**6.7**    **Corporate Action**.  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors or comparable governing bodies of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing

15

law) of the state in which the Debtor incorporated or organized, without any requirement of further action by the interest holders or directors (or other governing body) of the Debtors

**6.8**    **Effectuating Documents and Further Transactions**.  The Debtor is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

**7.1**    **Objections to Claims**.  Unless otherwise ordered by the Bankruptcy Court, the Debtor, and, from and after the Effective Date, the Plan Administrator are entitled to object to all Claims.

**7.2**    **No Distribution Pending Allowance**.  Notwithstanding any other provision hereof to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**7.3**    **Disputed Claims**.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the Plan Administrator shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328(a), 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, **but in no event later than sixty (60) days after the Effective Date** (subject, however, to the right the Plan Administrator to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court).

**7.4**    **Estimation**.  The Debtor and Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including, without limitation, during the pendency of any contested matter, adversary proceeding or appeal relating to any objection to any Claim. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or Plan Administrator (as the case may be) may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, subject, however, to a Final Order of the Bankruptcy Court.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** **Executory Contracts; Unexpired Leases; Insurance Policies**. On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party, including without limitation all Employment Agreements, shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed, assigned or rejected pursuant to the terms of the Asset Purchase Agreement, the Sale Documents, and/or by Final Order of the Bankruptcy Court prior to the Effective Date, or (ii) is subject to separate motion to assume or reject (or terminate or modify, as the case may be) filed under sections 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

Notwithstanding the foregoing, all Insurance Policies shall remain in full force and effect unless otherwise validly terminated, and issuers of such Policies of Insurance shall remain responsible for claims in accordance with the terms and provisions of such Insurance Policies. The Insurance Policies that have expired as of the Confirmation Date (whether entered into prior or subsequent to the Petition Date) are not executory contracts subject to assumption or rejection. The issuers of Insurance Policies shall be responsible for continuing coverage obligations under such Insurance Policies, regardless of the payment status of any retrospective or other insurance premiums. To the extent that the any Insurance Policy is determined to be an executory contract, this Plan shall constitute a motion to assume the Insurance Policy and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that assumption of the Insurance Policy is in the best interest of the Debtor and its Estate, and all parties in interest in the chapter 11 case, and otherwise satisfies the provisions of the Bankruptcy Code.

Nothing contained in the Plan shall constitute or be deemed to be a waiver of any cause of action that the Debtor may hold against any Person, including, without limitation, any Issuer under any Insurance Policies of the Debtors

**8.2** **Approval of Rejection of Executory Contracts and Unexpired Leases**. Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date pursuant to the Plan.

**8.3** **Rejection Claims**. In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the post-confirmation Debtor on or before the date that is the **later of (a) the Bar Date, or (b) thirty (30) days after the Confirmation Date**. The foregoing sentence shall not, however, be applicable to any separate pre-Confirmation Date order of the Bankruptcy Court authorizing rejection of an executory contract or unexpired lease wherein a separate deadline by which rejection damages claims was established.

17

## ARTICLE IX

## EFFECTIVENESS OF THE PLAN

**9.1** **Condition Precedent to Effective Date of Plan**.  The following are conditions precedent to the confirmation of the Plan, unless waived by the Debtor:

(a) The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtor.

(b) The Confirmation Order shall have become a Final Order.

**9.2** **Effect of Nonoccurrence of Conditions to Effective Date**.  If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court upon request by the Debtor.  If the Confirmation Order is vacated pursuant to this Article 9.2, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims against the Debtor.

## ARTICLE X

## EFFECT OF CONFIRMATION

**10.1** **Release of Liens**.  As of the Effective Date, all assets of the Estate shall be free and clear of all Claims and Liens, except as provided in the Plan or the Confirmation Order.  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtor and their assets and properties.  Thereafter, except as provided otherwise in this Plan, jurisdiction of the Bankruptcy Court shall be limited to the subject matter set forth in Article XI hereof.

**10.2** **Binding Effect**.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in the Debtor and its respective successors and assigns whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**10.3** **Term of Injunctions or Stays**.  Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Cases

**10.4** **Causes of Action**.  All Causes of Action are preserved and retained by the post-confirmation Debtor and on the Effective Date shall become assets of the post-confirmation Debtor, including, but not limited to, preference and fraudulent transfer claims (if any) against the officers and directors of the Debtor.  On and after the Effective Date, the Plan Administrator will have the exclusive right to enforce any and all Causes of Action retained by the post-confirmation Debtor against any Person.  The Plan Administrator may prosecute, defend, enforce, abandon, settle or release any or all Causes of Action as it deems appropriate without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Plan

18

Administrator may, in his/her sole discretion, offset any such claim held against a Person, against any payment due such Person under the Plan; *provided*, *however*, that any claims of the Debtor arising before the Petition Date shall first be offset against Claims against the Debtor arising before the Petition Date.  All defenses and rights of avoidance of the Debtor shall be retained and may be exercised by the Plan Administrator.

**10.5    Injunction**.  On and after the Confirmation Date, all Persons and Entities who have held, hold or may hold Claims against the Debtor or Interests in the Debtor, are permanently enjoined from and after the Confirmation Date from (a) commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) against or affecting the Debtor, the Debtor's Estate, or any of the Released Parties, and (b) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan or otherwise interfere with the implementation or consummation of the Plan.

## ARTICLE XI

## RETENTION OF JURISDICTION

**11.1    Jurisdiction of Bankruptcy Court**.    The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)    To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any Cause of Action and any proceeding to prosecute a Cause of Action (subject to 28 U.S.C. §§ 157 and 1334);

(c)    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    To consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(g)     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     To hear and determine all applications under sections 328, 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by Professionals prior to and following the Confirmation Date;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, Sale, Asset Purchase Agreement, Sale Documents, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Sale;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l)     To recover all assets of the Debtor's property of the Estate, wherever located;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

20

(n)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code

(o)    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(p)    To enter a final decree closing the Case.

## ARTICLE XII

## CRAMDOWN RESERVATION

**12.1   Nonconsensual Confirmation**.  If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

**13.1   Substantial Consummation**.  On the later to occur of the closing of the Sale and the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be "substantially consummated" as contemplated under sections 1101 and 1127(b) of the Bankruptcy Code.

**13.2   Exculpation**.  Neither the Debtor and Debtor's attorneys, the Plan Administrator, nor any of the Plan Administrator's respective past and current members, officers, directors, employees, advisors, attorneys, Professionals or agents, (collectively, "Exculpation Parties") who served during the period after the Petition Date shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission occurring after the Petition Date in connection with, related to, or arising out of the Case, including, without limitation, negotiations regarding or concerning the Sale, Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Nothing herein shall constitute a waiver of any Cause of Action against an Exculpation Party for any act or omission occurring or arising prior to the Petition Date unless otherwise released in accordance with this Plan.

**13.3   Post-Effective Date Fees and Expenses of Professionals**.  The Plan Administrator may employ in the ordinary course of business and not subject to the approval of the Bankruptcy Court, attorneys and other professional persons after the Effective Date in

21

connection with the implementation and consummation of the Plan, the claims reconciliation process, prosecution of the Causes of Action and any other matters as to which such professional persons may be retained. The post-confirmation Debtor shall, in the ordinary course of business and not subject to the approval of the Bankruptcy Court, pay the reasonable fees and expenses, incurred after the Effective Date, of the Plan Administrator and the professional persons employed by the Plan Administrator pursuant to Article 13.4. Such fees and expenses shall be paid within ten (10) Business Days after submission of a detailed invoice therefore to the Plan Administrator. If the Plan Administrator disputes the reasonableness of any such invoice, the Plan Administrator shall timely pay the undisputed portion of such invoice, and the Plan Administrator or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice. All fees and expenses of the Plan Administrator and professional persons employed by the Plan Administrator after the Effective Date that are (x) not disputed by the Plan Administrator, or (y) if disputed by the Plan Administrator, determined to be reasonable by the Bankruptcy Court; shall be deemed to be an Article 2.1 Allowed Administrative Expense Claim.

**13.4** **Payment of Statutory Fees**. On the Effective Date, and thereafter as may be required, the Debtor or post-confirmation Debtor shall pay out all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**13.5** **Modification of Plan**. The Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, *provided* that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

**13.6** **Revocation or Withdrawal of Plan**. The Debtor shall have the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Debtor makes such a determination, the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtors.

**13.7** **Management of the Debtor After the Effective Date.**

(a) **Appointment of the Plan Administrator**. On the Effective Date, the directors and officers of the Debtor shall be deemed to have resigned their respective offices and the Plan Administrator as selected by the Debtor shall take exclusive control of the post-confirmation Debtor and shall also act as the representative of the post-confirmation Debtor on and after the Effective Date. The Plan Administrator shall be empowered to (i) effect all actions

22

and execute all agreements, instruments and other documents necessary to perform the post-confirmation Debtor's duties under the Plan; (ii)  object to Claims and prosecute Causes of Action; (iii) make all distributions contemplated in the Plan, (iv) employ professionals to represent it with respect to its responsibilities under the Plan and (v) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan.  No bond or other indemnity shall be required of the Plan Administrator. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Plan Administrator on or after the Effective Date (including without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorneys' fees and other professional fees and expenses) made by the Plan Administrator shall be paid in Cash in accordance with Article 13.4 of the Plan.

(b)    Indemnification of the Plan Administrator.  The Plan Administrator and the Plan Administrator's agents, attorneys and professionals shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Plan Administrator, except those acts arising out of its or their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Plan Administrator, except for any actions or inactions involving willful misconduct or gross negligence. Any indemnification claims of the Plan Administrator (and the other parties entitled to indemnification under this Article 14(b) shall be satisfied first from assets of the post-confirmation Estates.  The Plan Administrator shall be entitled to rely, in good faith, on the advice of its retained professionals.

(c)    Removal of the Plan Administrator. The Plan Administrator may only be removed by order of the Bankruptcy Court, for cause, including: (i) fraud, gross negligence or willful misconduct in connection with the affairs of the post-confirmation Debtor; (ii) physical or mental disability that substantially prevents the Plan Administrator from performing the duties as Plan Administrator of the post-confirmation Debtor; (iii) breach of fiduciary duty; or (iv) failure, in good faith judgment of the post-confirmation Debtor, to reasonably perform the duties as Plan Administrator hereunder.

(d)    Resignation of the Plan Administrator. The Plan Administrator may resign by giving **not less than thirty (30) days' prior written notice** thereof to Cole Schotz P.C., Attn: Gary H. Leibowitz, Esquire; any counsel to the post-confirmation Debtor and Plan Administrator; and the United States Trustee. Such resignation shall become effective on the later to occur of (i) the date specified in such notice, and (ii) the selection of a Successor Plan Administrator and the acceptance by such Successor Plan Administrator of such appointment.

(e)    Appointment of Successor Plan Administrator. In the event of the death, resignation or removal of the Plan Administrator, counsel for the post-confirmation Debtor shall appoint a successor to the Plan Administrator or any subsequent Successor Plan Administrator ("Successor Plan Administrator"). Notice of any Successor Plan Administrator shall be filed with the Bankruptcy Court and provided to all creditors. Any Successor Plan Administrator appointed hereunder shall execute an instrument accepting such appointment.

23

(f)    <u>Turnover of Documents</u>. Upon the resignation or removal of the Plan Administrator, the Plan Administrator shall promptly: (a) execute and deliver, by the effective date of resignation or removal, all such documents, instruments, and other writings as may be required to effect the termination of the Plan Administrator's capacity under the Plan; (b) deliver to the Successor Plan Administrator all documents, instruments, books, records and other writings relating to the post-confirmation Debtor as may be in the possession or under control of the Plan Administrator; and (c) otherwise assist and cooperate in effecting the assumption of the rights, powers, duties and obligations under the Plan by the Successor Plan Administrator.

**13.8    <u>Dissolution of the Debtor</u>**. The Confirmation Order shall provide that the Plan Administrator is authorized to execute a certificate of dissolution (or its equivalent) with the secretary of state or similar official of each jurisdiction of incorporation of the Debtor pursuant to applicable non-bankruptcy law at any time on or after the Effective Date at the sole discretion of the Plan Administrator. All applicable regulatory or governmental agencies shall take all steps necessary to allow and affect the prompt dissolution of the Debtor as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates.

**13.9    <u>Courts of Competent Jurisdiction</u>**. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.10    <u>Severability</u>**. If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.11    <u>Governing Law</u>**. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflicts of law thereof.

**13.12    <u>Exhibits</u>**. All exhibits, schedules, addendum or other others annexed to the Plan are deemed incorporated into and are a part of the Plan as if set forth in full herein.

24

**13.13    Successors and Assigns**.  All the rights, benefits and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person.

**13.14    Section 1125 of the Bankruptcy Code**.  The Debtor has, and upon Confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and (b) the Debtor (and its officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals), have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under the Plan, and are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

**13.15    Section 1146 Exemption**.  To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtor, the post-confirmation Debtor, the Purchaser, or the Plan Administrator,  shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

**13.16    Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**13.17    Notices**.  All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by e-mail transmission, when received and telephonically confirmed, addressed as follows:

If to Debtor:

> Mr. Demian Costa
> demian@tessemaes.com
>
> and
>
> Gary H. Leibowitz, Esquire
> Cole Schotz P.C.
> 300 E. Lombard Street, Suite 1111
> Baltimore, MD 21202

65577/0001-45560221v4

Telephone: (410) 528-2971
gleibowitz@coleschotz.com

Dated:  June 22, 2023                        Respectfully submitted,

                                    **TESSEMAE'S LLC**


                                    By:  *_/s/ Gregory L. Vetter_*
                                    Name:  Gregory L. Vetter
                                    Title: Chief Executive Officer