## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

In re

**TESSEMAE'S LLC,**

        Debtor

Case No. 23-10675-NVA

### THE UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 327 AUTHORIZING THE DEBTOR TO RETAIN AND EMPLOY PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS, RELATING BACK TO JUNE 8, 2023

The Acting United States Trustee for Region Four, which includes the District of Maryland, files this Objection to the Debtor's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 327 Authorizing the Debtor to Retain and Employ Professionals Used in the Ordinary Course of Business, Relating Back to June 8, 2023, and as grounds therefor states as follows:

### FACTUAL BACKGROUND

1.    Tessemae's, Inc. (the "Debtor") filed case 23-10675 on February 1, 2023 (the "Petition Date"), under Chapter 11 of the Bankruptcy Code. (*See* Doc. 1.)

2.    The Debtor filed the Debtor's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 327 Authorizing the Debtor to Retain and Employ Professionals Used in the Ordinary Course of Business, Relating Back to June 8, 2023 (the "Ordinary Course

1

Professionals Motion"), on June 15, 2023.   (*See* Doc. 153.)

3.     Included as Exhibit 1 to the Ordinary Course Professionals Motion is a proposed order (the "Proposed Order") which would, if granted by the Court as filed, authorize the employment and retention of professionals listed in an attached Exhibit A to the Proposed Order.[1]   (*See* Doc. 153-1.)

4.     Further, the Proposed Order, as filed, would authorize the Debtor to pay 100% of the fees and disbursements requested by any ordinary course professional employed under the Proposed Order, subject to fee limitations defined in the attached Appendix A, comprising of both a monthly fee limit and a total fee limit for the bankruptcy case.[2]   (*See* Doc. 153-1.)

5.     Contemporaneous with the Ordinary Course Professionals Motion, the Debtor filed an affidavit from Larry Strauss, the president of Larry Strauss ESQ CPA & Assoc., Inc. ("Strauss & Assoc."), addressing the qualifications and disinterestedness of Strauss & Assoc. in support of the authorization of employment by the Debtor (the "Strauss Declaration").   (*See* Doc. 154.)

---

[1] Exhibit A of the Proposed Order includes only one professional to be retained under the Proposed Order: "Larry Strauss & Associates, CPA."   The stated services to be provided are listed as "Year End Accounting; preparation of K-1's and related annual tax documents."   (*See* Doc. 153-1.)

[2] Exhibit A defines the "Average Monthly Cap" for Strauss & Assoc. as $25,000 and the "Total Cap for Case" as $75,000.   (*See* Doc. 153-1.)

## ARGUMENT

**A.**     **The Retention of An Accountant As A Professional in the Ordinary Course is Improper.**

Section 327 of the Bankruptcy Code states;

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, **accountants**, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).

In addition to the requirements of 11 U.S.C. §§ 330 and 331, subsequent interim and final compensation of professionals in a bankruptcy case are governed by Bankruptcy Rule 2016 and the Local Bankruptcy Rules for the District of Maryland ("Md. L.B.R."), Appendix D (as incorporated by Md. L.B.R. 2016-1).   Bankruptcy Rule 2016 sets forth the requirement: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."   (*See* Fed. R. Bankr. P. 2016(a).)   Rule 2016 further states that "The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity".   (*Id.*)   Appendix D of the Md. L.B.R. sets forth the proper format, required level of detail, descriptions of reimbursable expenses, and the required

3

"lodestar" analysis required to justify compensation of professionals, specifically including accountants.   (*See* Md. L.B.R., App. D.)   Appendix D further provides specific sample entries for certain professionals, explicitly including only attorneys and accountants.   (*See* Md. L.B.R., App. D, n. 5.)

The Debtor's Ordinary Course Professionals Motion, to include its attached Proposed Order and accompanying Exhibit A, seeks the Court's approval to employ, retain, and compensate an accountant in a manner inconsistent with the requirements of §§ 327, 328, 330, 331, Fed. R. Bankr. P. 2016, and the Md. L.B.R.

While the Debtor seeks to employ only one specific professional pursuant to the Ordinary Course Professionals Motion, the Proposed Order contemplates employment of further "Additional Ordinary Course Professionals" with only the filing of a statement pursuant to Md. L.B.R. Rule 2014, rather than a subsequent motion seeking this Court's approval and permitting its review.

Contrary to the requirements of 11 U.S.C. §§ 330 and 331, the Debtor proposes to pay professionals employed pursuant to the Proposed Order one hundred percent of their requested fees and expenses, on whatever interval the professional elects to submit invoices to the Debtor.   (*See* Doc. 153-1, pp. 3-4.)

Contrary to the requirements of 11 U.S.C. §§ 330 and 331, Fed. R. Bankr. P. 2016, the Md. L.B.R., and the *Johnson v. Georgia Highway Express, Inc.*[3]  factors, as adopted by

---

3 *Johnson v. Georgia Highway Express, Inc.*, 448 F.2d 714 (5th Cir. 1974).

the Fourth Circuit in *Barber v. Kimbrell's Inc.*[4], the Debtor proposes to pay professionals employed pursuant to the Proposed Order without disclosing the applicable *Johnson* factors, precluding meaningful review by this Court, creditors, or other interested parties.

So long as the professional (or subsequently employed "Additional Ordinary Course Professionals") stay within the monthly cap and total case cap defined in Exhibit A to the Proposed Order,[5] this Court, creditors, and other interested parties are precluded from any review of the reasonableness of the rates charge, the time expended, or the tasks performed, as required by Fed. R. Bankr. P. 2016, the Md. L.B.R. and §§ 330 and 331.

The Debtor devotes paragraphs 19-23 of the Ordinary Course Professionals Motion to the attempt to explain why the proposed professionals should not fall under § 327, Fed. R. Bankr. P. 2016, and Md. L.B.R., despite the clear and explicit inclusion of accountants in each of the aforementioned controlling guidelines for professional employment in this District.   (*See* Doc. 153, pp. 6-8.)

The Debtor asserts that an accountant employed to provide services including "Year End Accounting; preparation of K-1's and related annual tax documents" is not a professional under 11 U.S.C. § 327.   (*See* Doc. 153, pp. 6-7.)   The Debtor further cites a number of cases to support this proposition.   The United States Trustee argues that an accountant performing such functions relates directly to the financial circumstances of the

---

4 *Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir. 1978).

5 There is no justification provided as to the reason why the monthly and total-case caps are set at the values provided, other than the Debtor's arbitrary selection.

Debtor and its liquidation or reorganization, and is therefore a professional employed to assist the debtor in possession in carrying out its duties under Title 11 – exactly the type of professional contemplated by Section 327, and that none of the cases cited are on point.

The accountant retained in *In re That's Entm't Mktg. Group*, 168 B.R. 226 (N. D. Cal. 1994) was employed solely to testify as an expert witness in collateral litigation, not to perform accounting duties for the debtor.  In fact, the court in *That's Entm't Mktg. Group* specifically mentions that "accountants are commonly considered professionals under § 327."  This case, rather than supporting the Debtor's assertion that the accountant services provided here are outside the requirements of § 327, supports the opposite position.  Similarly, *In re Babcock Dairy Co.*, 70 B.R. 691 (Bankr. N.D. Ohio 1987) addresses a person of undefined profession who served solely as an expert witness in a proceeding before the District Court, and notably, whose compensation was sought pursuant to a motion under § 330 and subject to the court's review, unlike the compensation plan set out in the Proposed Order.

The Debtor argues that *In re Madison Mgmt. Group, Inc.*, 1337 B.R. 275 (Bankr. N.D. Ill. 1992) also supports their position.  That case however involved an accountant who was employed directly by the debtor and appointed as a director and president of the debtor before the petition was filed.   The other professionals at issue in this decision, while accountants, were also direct in-house employees of the debtor who were hired pre-petition.  This case has no bearing on determining whether accountants, other than those

directly employed in-house by the Debtor prior to the petition date, fall under the requirements of § 327.

In the cited case of *In re D'Lites of Am., Inc.*, 108 B.R. 298 (Bankr. D. Conn.), a number of people were employed to replace in-house employees of the debtor, including members of its accounting division, who departed during the course of the bankruptcy proceeding.   In the instant case, the Debtor is not seeking to hire new accountants to replace in-house employees who have left the Debtor's employ during the pendency of the bankruptcy case, but rather to employ an outside accounting firm to assist it with its duties under Title 11.   This case is not relevant.

Debtor further holds up a number of additional cases in purported support of their claim, but none of the cases deal with retaining an accountant of any type.   *In re Sieling Assocs. Ltd. P'ship*, 128 B.R. 721 (Bankr. E.D. Va. 1991) addresses the retention of an "environmental toxicology consultant".   *In re Riker Indus., Inc.*, 122 B.R. 964 (Bankr. N.D. Ohio 1990) addresses fees for services consisting of "management and consulting services for companies faced with financial difficulties," services similar to those to be provided by AMP in the instant case, for whom the Debtor properly sought prior Court permission to employ in accordance with § 327.   *In re Fretheim*, 102 B.R. 298 (Bankr. D. Conn. 1989) addresses the retention of a land surveyor.   *In re Pacific Forest Indus., Inc.*, 95 B.R. 740 (Bankr. C.D. Cal. 1989) addresses the ordinary course payment of a "business' administrative expenses (such as current post petition wages and trade debt)," and indeed

specifically hypothesizes that while a professional person such a "plumber" may be paid in due course "without further scrutiny", those professionals involved in the actual reorganization should be "carefully scrutinized" and their "dealings be open to the public, that they maintain the distance from the debtor that is not possible for an employee, and that they not drain the debtor of the capital that it needs to fund its organization."   The accountants in the instant case are far more analogous to the attorney contemplated in *In re Pacific Forest Indus.* than the plumber the court references as its example of a professional person outside the confines of § 327.   Debtor lastly cites *In re Johns-Manville Corp.*, 60 B.R. 612 (Bankr. S.D.N.Y. 1989), which states that non-attorney lobbyists may be employed in the ordinary course of business, but the case is completely silent concerning the employment of accountants.   This case is not relevant.

Despite citing 30 years of non-relevant precedent, paragraph 19 of the Ordinary Course Professionals Motion fails to identify a single case in which the debtor was permitted to employ a non-in-house accountant, other than as an expert witness in collateral litigation.

In paragraph 21 of the Ordinary Course Professionals Motion, the Debtor does identify certain cases, in a period ranging from 7 to 21 years ago, wherein debtors were permitted to retain accountants in this district under the "ordinary course" theory.   The fact that the United States Trustee did not object to such retention at those times does not

prevent him from exercising his discretion to object to retention of accountants in the ordinary case in this instance.

Paragraph 22 of the Ordinary Course Professionals Motion states that "certain of the Ordinary Course Professionals may hold prepetition claims against the debtor." This makes it clear that even if the single professional named in Exhibit A to the Proposed Order does not hold an interest adverse to the estate,[6] the Proposed Order, as filed, allows the Debtor to subsequently employ professionals who do hold pre-petition claims or other adverse interests and who therefore are not disinterested persons. If the Debtor did not intend to, subsequent to the granting of the instant motion, employ additional professionals, it would have been far quicker and easier to simply file a motion pursuant to § 327 to employ Strauss & Assoc. The only benefit afforded to the Debtor by the decision to pursue employment under "ordinary course" theory is to open the door to further professionals while avoiding the scrutiny of properly seeking such employment under § 327. The existence of professionals who are not disinterested persons because they have not abandoned their prepetition claims further supports this concern. Debtor disclosed on their Statement of Financial Affairs that Clearview Group was one of the accountants and bookkeepers who maintained the debtor's books and records for at least the two-year period prior to the Petition Date. (*See* Doc. 76, p. 20.) Debtor scheduled an outstanding secured debt to Clearview Group in the amount of $914,476. (*See* Doc. 75, p. 20.)

---

6 Per the Strauss Declaration. (*See* Doc. 154.)

Debtor argues in paragraph 23 that the proper employment and compensation of professionals in accordance with §§ 327, 330, and 331 "might" prevent some of the Debtor's pre-petition professionals from continuing to work with the Debtor.   The Debtor did not identify any pre-petition professionals who declined to work with the Debtor subject to the aforementioned Code provisions.   The speculative assumption, without evidence or support, that the Code may possibly inconvenience the Debtor is insufficient justification to set aside the applicable Code provisions.   Insofar as the professionals contemplated by the Debtor for future employment hold un-abandoned pre-petition claims (especially in the amount owed to Clearview Group), such professionals would be disqualified from employment failing the requirement to be disinterested persons in any event, and the inability to secure their future services is irrelevant.

**B.      The Debtor Has Failed to Meet Its Burden Justifying Employment be Authorized on a *Nunc Pro Tunc* Basis.**

The Debtor filed its Ordinary Course Professionals Motion on June 15, 2023, yet seeks therein authorization to retain and pay professionals "relating back to June 8, 2023," a date seven days prior its filing.

The Debtor made similar requests to employ professionals effective as of a date prior to the filing of motions to employ with regards to Aurora Management Partners, Inc. ("AMP") and B. Riley Securities, Inc. ("B. Riley").   (*See* Docs. 54 and 85, respectively).

Although the Debtor has changed the language for their requested relief in the Ordinary Course Professionals Motion from "*nunc pro tunc*" to "relating back," the substance of the relief requested is the same: granting employment as of a date prior to the filing of the motion seeking authorization for such employment.  (*Compare* Doc. 54 *and* Doc. 85 *with* Doc. 153.)

With regard to both AMP and B. Riley, the Court granted employment, but only relating back to the date each respective motion to employ was filed.  (*See* Docs. 93 and 133, respectively.)

The Fourth Circuit has not promulgated an opinion on the authority of a bankruptcy court to approve a professional's employment retroactively.  Several circuits have, and have articulated various standards for doing so.  *In re Congressional Hotel Corp.*, No. 11-26732-PM, 2012 WL 1144421, at *4 (Bankr. D. Md. Apr. 4, 2012) (Which in turn cites to authority within each circuit enumerating the respective standard therein: "*In re Jarvis*, 53 F.3d 416 (1st Cir. 1995) ("extraordinary circumstances"); *In re Keren Limited Partnership*, 189 F.3d 86 (2d Cir. 1999) ("extraordinary circumstances"); *In re Arkansas*, 798 F.2d 645 (3d Cir. 1986) and *F/S Airlease II, Inc.*, 844 F.2d 99 (3d Cir. 1988), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988) ("extraordinary circumstances"); *In re Singson*, 41 F.3d 316 (7th Cir. 1994) ("excusable neglect"); *In re Atkins*, 69 F.3d 970 (9th Cir. 1995) ("exceptional circumstances"); *In re Albrecht*, 233 F.3d 1258 (10th Cir. 2000) ("extraordinary circumstances").)

11

The First, Second, Third, and Tenth Circuits all use the "extraordinary circumstances" standard, the Ninth Circuit uses a similar "exceptional circumstances" standard,[7] while the Seventh Circuit uses the more lenient "excusable neglect" standard.

Within the Fourth Circuit, the United States District Court for the District of Maryland has considered the issue under all three standards, but declined to adopt one over the others. *Binswanger Companies v. Merry-Go-Round Enterprises, Inc.* 258 B.R. 608 (D. Md. 2001).

In *Congressional Hotel*, citing *Merry-Go-Round Enterprises*, the court summarized the three standards as follows:

> Several circuit courts are cautious in permitting retroactive appointment, requiring some sort of extraordinary circumstances. The Ninth Circuit requires 'professionals seeking retroactive approval [to] satisfy two requirements: they must (1) satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that their services benefitted the bankrupt estate in a significant manner.' *Atkins*, 69 F.3d at 974. The First Circuit requires, beyond the statutory requirements for any appointment, 'that the delay in seeking court approval resulted from extraordinary circumstances,' which do not include, for example, 'tardiness occasioned merely by oversight.' *Jarvis*, 53 F.3d at 418.... The Seventh Circuit has adopted a more lenient test of 'excusable neglect.' *In re Singson*, 41 F.3d 316 (7th Cir.1994).

*Congressional Hotel*, 2012 WL 1144421, at *4–5 (Bankr. D. Md. Apr. 4, 2012) (citing *Merry-Go-Round Enterprises*, 258 B.R. at 612-613).

---

7 The Ninth Circuit standard includes a supplementary two-part test: (1) professionals must satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that their services benefitted the bankruptcy estate in a significant manner. *Atkins*, 69 F.3d at 974.

Much like the professionals in both *Congressional Hotel* and *Merry-Go-Round Enterprises*, the Debtor cannot meet the standard for employment *nunc pro tunc* under any of the standards used by the various Circuit Courts.   This Court, in *Congressional Hotel* emphasized "before it is not [the professional's] application, but Debtors' Application: Debtors alone had standing to file the Application."   *Id.* at 5.

In precisely the same manner as the debtor in *Congressional Hotel*, the Debtor here has "not articulated any extraordinary circumstances or any reason whatsoever justifying retroactive approval."   *Id*.   In another marked similarity with *Congressional Hotel*, Debtor's counsel did not overlook the filing of its own employment application on the Petition Date.   The Debtor was certainly aware of the requirement of timely application for the employment of professionals, particularly given the United States Trustee's filed objection on similar grounds to the employment of AMP (*see* Doc. 70), and informal discussions with the Debtor on the same issues with regard to the employment of B. Riley. In the matter of both AMP and B. Riley, the Debtor elected to withdraw its request for *nunc pro tunc* employment rather than file any explanation as to why *nunc pro tunc* employment was justified.

The Ordinary Course Professionals Motion is completely silent on the subject of the *nunc pro tunc* employment date (or "relating back" to a date predating the Ordinary Course Professionals Motion), with only four exceptions: (i) the title of the filing, (ii) a repeat of the title of the filing in the opening paragraph, (iii) a single mention, without comment or

justification, in the sentence identifying the relief requested, and (iv) a repetition of the relief requested in the concluding sentence of the motion.   (*See* Doc. 153, pp. 1, 3, 9.)

At no part of the "Basis for Relief Requested" is the subject of the *nunc pro tunc* (or "relating back" to a date predating the Ordinary Course Professionals Motion) authorization addressed.   There is no justification provided for such relief, and as such the Ordinary Course Professionals Motion cannot possibly meet even the most lenient of standards required to grant such relief.

## CONCLUSION

For the reasons stated above, the Court should deny the Debtor's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 327 Authorizing the Debtor to Retain and Employ Professionals Used in the Ordinary Course of Business, Relating Back to June 8, 2023.   If the Court does elect to grant the Ordinary Course Professionals Motion, either at this time or in response to a future amended application, the Court should authorize the retroactive employment of such identified professionals only so far as the date the original Ordinary Course Professionals Motion was filed, June 15, 2023, or, in the event of subsequent Additional Ordinary Course Professionals are retained, to the date wherein a supplemental list of ordinary course professionals is filed which identifies such Additional Ordinary Course Professionals.

14

## **Local Rule 9013-2 and 9013-6 Statements**

Pursuant to Local Bankruptcy Rule 9013-2, the U.S. Trustee states that he is not filing a separate memorandum of law in support of this motion and relies solely on the grounds and authorities set forth herein.

Pursuant to Local Rule 9013-6, the United States Trustee consents to entry of a final order or judgment in this matter by a bankruptcy judge.

Respectfully submitted,

John P. Fitzgerald, III
Acting United States Trustee, Region 4

Date: June 29, 2023          By: _/s/   J. Dan Ford_
                                              J. Dan Ford, Fed. Bar No. 21290
                                              United States Department of Justice
                                              101 W. Lombard Street, Suite 2625
                                              Baltimore, MD 21201
                                              (410) 962-4300
                                              Fax: (410) 962-3537
                                              E-mail: j.dan.ford@usdoj.gov

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 29, 2023, a copy of the foregoing document was mailed, first class, postage prepaid, to:

Ally Bank, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

Aurora Management Partners Inc.
112 South Tyron St.
Ste 1770
Charlotte, NC 28284

B. Riley Securities, Inc.
11100 Santa Monica Blvd., Suite 800
Los Angeles, CA 90025

Alison D. Bauer
Foley Hoag LLP
1301 Avenue of the Americas, 25th Floor
New York, NY 10019

Jiun-Wen Bob Teoh
Foley Hoag LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019

I HEREBY FURTHER CERTIFY, that according to the Court CM/ECF system, a copy of the foregoing document was also served electronically upon:

- **Monique Desiree Almy**    malmy@crowell.com, cbest@crowell.com, malmy@ecf.axosfs.com, monique-almy-7127@ecf.pacerpro.com
- **Alison D. Bauer**    abauer@foleyhoag.com, hallis@foleyhoag.com
- **Hugh M. (UST) Bernstein**    hugh.m.bernstein@usdoj.gov
- **Richard L. Costella**    rcostella@tydings.com, jmurphy@tydings.com
- **Sudipta Das**    sdas@gfrlaw.com
- **Mark Dimenna**    mark.dimenna@offitkurman.com

16

- **James Daniel (UST) Ford**    j.dan.ford@usdoj.gov
- **Robert A. Gaumont**    rgaumont@gfrlaw.com, sdikes@gfrlaw.com
- **Catherine Keller Hopkin**    chopkin@yvslaw.com, pgomez@yvslaw.com, kreese@yvslaw.com, yvslawcmecf@gmail.com, hopkincr39990@notify.bestcase.com, schroppjr39990@notify.bestcase.com
- **Harry Conrad Jones**    HJones@coleschotz.com, bankruptcy@coleschotz.com, pratkowiak@coleschotz.com
- **Lawrence A. Katz**    lkatz@hirschlerlaw.com, llewis@hirschlerlaw.com, aklena@hirschlerlaw.com
- **C. Kevin Kobbe**    kevin.kobbe@us.dlapiper.com, docketing-baltimore-0421@ecf.pacerpro.com
- **Joyce A. Kuhns**    jkuhns@offitkurman.com
- **Craig B. Leavers**    craig@leaverslaw.com, leavers45@gmail.com
- **Gary H. Leibowitz**    gleibowitz@coleschotz.com, pratkowiak@coleschotz.com, bankruptcy@coleschotz.com, lmorton@coleschotz.com
- **Kimberly A. Manuelides**    kmanuelides@mcneeslaw.com
- **Bryan Mull**    bmull@gfrlaw.com
- **Jiun Wen Teoh**    jteoh@foleyhoag.com
- **US Trustee - Baltimore**    USTPRegion04.BA.ECF@USDOJ.GOV
- **Irving Edward Walker**    iwalker@coleschotz.com, jdonaghy@coleschotz.com, pratkowiak@coleschotz.com

*/s/ J. Dan Ford*
J. Dan Ford