Entered: August 10th, 2023
Signed: August 10th, 2023
**SO ORDERED**



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## Baltimore Division

| | |
|---|---|
| In re: | |
| TESSEMAE'S LLC, | CASE NO. 23-10675-NVA |
| Debtor. | CHAPTER 11 |

### MEMORANDUM ORDER MODIFYING THE AUTOMATIC STAY

In this case, a corporate debtor (Tessemae's LLC) and its guarantors had been involved in state court litigation with one of its principal creditors (Democracy Capital Corporation) for over two years. Almost immediately (less than one month) after the state court judge took the creditor's summary judgment motion under advisement, the debtor filed a chapter 11 petition, invoking the automatic stay in the bankruptcy case, and halting the state court case, including the judge's ability to decide the pending summary judgment motion. The debtor then promptly filed an adversary complaint against the creditor in the bankruptcy case, including some counts that overlap with the state court litigation, and some counts that arise only under the Bankruptcy Code.

The creditor now asks this Court for relief from the stay to allow the state court to decide the summary judgment motion, and to continue the litigation against the guarantors (who are not in bankruptcy). The creditor commits that it will not take any enforcement action against the debtor in state court if it is successful there, but will bring any judgment it may obtain against the

debtor back to the confines of this Court, for disposition in the context of the bankruptcy case. The debtor, its guarantors, and two of its other creditors oppose the stay relief request.

For the reasons discussed, and based on the papers filed, the hearing conducted, and the entire record in this case, the Court concludes that the stay should be modified.

## PROCEDURAL POSTURE

This matter is before the Court pursuant to the *Motion for Relief from Stay to Allow State Court Action to Proceed to Judgment and for Defense of Counterclaim and Related Relief* (the "Motion for Relief from Stay") filed by Democracy Capital Corporation ("Democracy"). [ECF No. 51]. In response, Tessemae's LLC ("Tessemae's" or the "Debtor") filed *Debtor's Opposition to Motion for Relief from Stay to Allow State Court Action to Proceed to Judgment and for Defense of Counterclaim and Related Relief* and a *Memorandum in Support of Debtor's Opposition to Motion for Relief from Stay to Allow State Court Action to Proceed to Judgment and for Defense of Counterclaim and Related Relief* (collectively, the "Debtor's Opposition"). [ECF Nos. 73–74]. Three other oppositions to the Motion for Relief from Stay were filed by creditors of the Debtor, namely *Tesse DIP Fund's Joinder to Debtor's Opposition to Motion for Relief from Stay to Allow State Court Action to Proceed to Judgment and for Defense of Counterclaim and Related Relief* ("Tesse DIP Fund's Opposition"), the *Joinder of Jupiter Fund LLC in Debtor's Opposition to Democracy's Capital Corporation's Motion for Relief from Automatic Stay* ("Jupiter Fund LLC's Opposition"), and *Gregory and Genevieve Vetter's Opposition to Democracy Capital Corporation's Motion for Relief from Stay and Statement in Support of Debtor's Opposition* (the "Vetters' Opposition"). [ECF Nos. 77, 79–80]. (Individually or together, the Vetters are creditors of the Debtor, but also hold ownership interests in the Debtor and act as guarantors of its debt. For convenience, the three oppositions to Democracy's Motion are referred to as the "Creditors'

2

Oppositions"). Democracy's Motion for Relief from Stay and the oppositions came for hearing before this Court on April 6, 2023 (the "Hearing"), at which the parties presented argument, documentary evidence, and witness testimony. [ECF No. 123].[1]

**BACKGROUND**

1.  <u>The State Court Action & The Adversary Proceeding</u>

For well over two years before the Debtor filed its petition commencing this bankruptcy case, Democracy, Tessemae's, and Gregory and Genevieve Vetter (the "Vetters") had been actively litigating a contentious breach of contract action in state court. That litigation arose out of a loan agreement between Democracy and the Debtor in the principal amount of $3,000,000, which was personally guaranteed by the Vetters, who are partial owners of Tessemae's. In November 2020, Democracy filed suit against the Debtor and the Vetters in the Circuit Court for Baltimore County, Maryland (the "State Court") for a confessed judgment under the loan agreement (the "State Court Action"). The Debtor and the Vetters thereafter filed a counterclaim for: (1) Breach of Contract; (2) Breach of Contract Bad Faith; (3) Defamation; and (4) Intentional Interference with Business Relationships (the "Counterclaim").

In December 2022, after the State Court denied Democracy's first motion for summary judgment, Democracy filed a second amended complaint in which it alleged new breaches of contract, which constitute a default under the loan agreement, that had been turned up in discovery. Contemporaneously, Democracy filed a Second Motion for Summary Judgment, which was heard in the State Court on January 4, 2023, by Judge Keith R. Truffer. Judge Truffer took the motion under advisement, and, according to representations made by Democracy, "deferred argument on the Counterclaim until after his ruling on the [Motion for Summary Judgment], which he observed

---

[1] The deadlines for a decision by a court set out in 11 U.S.C. § 362(e) do not apply here because Democracy does not seek to take action against property of the estate, as the parties noted at the Hearing.

might resolve the Counterclaim as the counts are predicated on the absence of default by [the Debtor] under the Loan Agreement." *See* Motion for Relief from Stay at ¶ 21. Less than a month later, and before Judge Truffer had ruled on the Motion for Summary Judgment, the Debtor filed its February 1, 2023, chapter 11 petition [ECF No. 1], invoking a stay of the State Court Action.

Not long after filing its chapter 11 petition, the Debtor filed an adversary proceeding against Democracy in the bankruptcy court (the "Adversary Proceeding"). In its complaint against Democracy, the Debtor: (1) seeks to determine the validity, priority, or extent of Democracy's lien pursuant to 11 U.S.C. § 506(d); (2) objects to the allowance of Democracy's claim pursuant to Bankruptcy Rule 3007; (3) seeks to avoid the incurrence of its debt as to Democracy as fraudulent pursuant to 11 U.S.C. §§ 544 and 550; (4) asks for equitable subordination of Democracy's claims pursuant to 11 U.S.C. § 510©;[2] (5) requests monetary damages from Democracy for breach of contract; and (6) alleges intentional interference with its business relations by Democracy. The Adversary Proceeding is currently pending in this Court. The parties acknowledge that the Adversary Proceeding and the State Court Action overlap substantially (although a minority of the counts alleged in the Adversary Proceeding are available only under the Bankruptcy Code and thus may be addressed only in this Court). Democracy and the Debtor dispute which court should decide the matters that either court may decide.

2.      Democracy's Motion for Relief from Stay

Democracy's Motion for Relief from Stay asks this Court to lift the stay to allow the State Court to rule on the pending Motion for Summary Judgment, and to hear argument and rule on the pending Counterclaim in the State Court Action. (Democracy also wishes to proceed against the guarantors (the Vetters) in State Court.) It is important to note that Democracy is careful to seek

---

[2] Title 11 of the United States Code is hereinafter referred to as the "Bankruptcy Code".

4

very limited relief with respect to the Debtor. Democracy does not ask that the State Court go beyond ruling on the Motion for Summary Judgment at this point. Democracy specifies that if it is permitted to proceed to that stage in the State Court, the parties should be ordered to then submit to this Court the findings and rulings of the State Court on the Motion for Summary Judgment and Counterclaim. Democracy's Motion also makes clear that it is not asking this Court to allow it to <u>enforce</u> in the State Court any judgment, finding, or determination that might be made by the State Court against Tessemae's, but that any such further enforcement would be subject to further orders of this Court. (Notably, Democracy does not suggest that it would (or could) be limited in enforcement of any judgment that might be issued by the State Court against the Vetters as guarantors.)

Democracy argues that it has satisfied the three-factor test set out by the Fourth Circuit in *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992), *as amended* (May 27, 1992). Focusing on the specific factors adopted in *Robbins*, Democracy argues that: (1) all of the issues in the State Court Action are predicated on state law causes of action that do not require the special expertise of the bankruptcy court; (2) the pending Motion for Summary Judgment was fully briefed and argued before the State Court in January 2023 and is ready for decision, and the State Court is the only court with jurisdiction over all of the parties; and (3) enforcement of any judgment against the Debtor and its assets would be limited to further order of this Court in the bankruptcy case, and thus that the bankruptcy estate would not be dissipated or disturbed without involvement of the bankruptcy court.

Democracy maintains that a finding of "default" by the Debtor would elevate the "debt" owed by the Debtor from the original loan amount of $3,000,000 to the approximate sum of $13,000,000, which would include an "exit fee" in the amount of $7,500,000.00 and accrued

interest, which may be assessed only upon default. (The existence of default would also limit the Debtor's ability to issue warrants.) At the Hearing before this Court, Democracy argued that because whether a default existed under the loan agreement on the maturity date is an issue pending under the Motion for Summary Judgment, allowing the State Court to decide it would narrow the litigation field and establish a base claim for Democracy in this bankruptcy case. As counsel succinctly put it, "default equals debt." Counsel further argued that Democracy would be prejudiced if the State Court is not permitted to rule on the pending motion after the time and expense spent litigating the matters to near judgment in that court.

3. The Debtor's Opposition

In response to the Motion for Relief from Stay, the Debtor concentrates on its need for bankruptcy protection as it focuses on its new business model within chapter 11 and eventual sale of the business.[3] The Debtor urges that the bankruptcy court is the proper forum for the resolution of the issues between parties. It disagrees with the import of the procedural posture of the State Court Action and emphasizes that Democracy's first summary judgment motion was denied and that the parties have not conducted any significant discovery.

The Debtor also cites *Robbins*, and stresses that Democracy neglected to consider and address the overarching issue in *Robbins*—namely, that it requires the Court to "balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied.'" *In re Robbins*, 964 F.2d at 345. The Debtor maintains that the prejudice to the bankruptcy estate and other creditors from modification of the stay would exceed any conceivable prejudice Democracy would suffer by being compelled to resolve its claims in this Court. In so arguing, the Debtor points to the causes of action asserted

---

[3] An auction has been scheduled for August 2023.

6

in its Adversary Proceeding against Democracy that are unique to bankruptcy law and can only be determined by this Court.[4] The Debtor summarily asserts that modification of the stay would force it to litigate with Democracy in both the State Court Action and in the Adversary Proceeding and would create serious risks of conflicting outcomes that would make the proceedings virtually unmanageable.

Debtor's counsel argued at the Hearing that Democracy failed to make a *prima facie* case for relief from the stay and did not produce evidence of harm. Counsel further argued that Democracy tries to narrow what this Court can do in its core proceedings and to "weaponize" a state court's decision. The Debtor maintains that modification of the stay would give Democracy a strategic and inappropriate advantage in this bankruptcy case, that Democracy's claim should be disallowed under Bankruptcy Code § 506(d) and Bankruptcy Rule 3007, and that any claim held by Democracy should be equitably subordinated to the claims of the Debtor's other lenders under § 510(c).

    4.  <u>The Creditors' Oppositions</u>

The Creditors' Oppositions incorporate all of the factual and legal arguments made by the Debtor and similarly argue that consideration of the *Robbins* factors supports denial of stay relief.

Tesse DIP Fund's Opposition stresses the risks of conflicting and inconsistent rulings, and the possibility that the Debtor would be forced to litigate with Democracy in both the State Court Action and in bankruptcy court. It argues that the issues present in the Adversary Proceeding as well as those raised in the State Court Action are within this Court's core jurisdiction, and that the

---

[4] Of the counts asserted in the Adversary Proceeding against Democracy, several counts make reference to the Bankruptcy Code and Bankruptcy Rules. The remaining counts mirror disputes pending in the State Court Action. Some of these Code provisions referred to in the Adversary Proceeding actually require application of non-bankruptcy law (state law in this case). Accordingly, it is misleading to take at face value that these counts are available only in bankruptcy court, and that disposition of matters now before the State Court would not move the needle in the Adversary Proceeding.

Adversary Proceeding would resolve all of the issues with respect to Democracy's claims. At the Hearing, counsel for Tesse DIP Fund argued that Democracy's State Court Action is essentially a breach of contract action, which can be handled by a bankruptcy court, whereas the Adversary Proceeding involves core bankruptcy claims, and that there is no reason to go back to the State Court when "all items can be dealt with here in this case."

The Vetters' Opposition[5] argues that the Adversary Proceeding "expands" the issues between the parties beyond the State Court Action and state law causes of action, and that modifying the stay would necessitate litigation in two separate forums with the potential for conflicting results and added expense for all parties. The Vetters maintain that the estate cannot be protected by limiting enforcement in this Court because of the likelihood of conflicting results.

Jupiter Fund's Opposition advances five arguments in opposition to relief from the stay: that the State Court Action would not result in a complete resolution of Democracy's issues; that this Court has more specialized experience than the State Court to adjudicate claim and lien issues which fall within the core jurisdiction of the bankruptcy court; that retaining control over the State Court Action is the only way for this Court to ensure resolution of the issues between the parties (and the State Court Action is not trial ready); that the interests of Democracy should not be placed ahead of the interests of other creditors; and that Democracy would not be prejudiced by the denial of the Motion for Relief from Stay in part because it can litigate its position in the Adversary Proceeding. At the Hearing, counsel for Jupiter Fund emphasized that the critical path for the case is the sale of the Debtor within chapter 11, and that this focus cannot be lost or the process

---

[5] The Vetters' Opposition contests the validity of the service of the Motion for Relief from the Stay as it pertains to the Vetters. Additionally, the Vetters respond to Democracy's request that the Court clarify that the Debtor's automatic stay does not extend to the Vetters. The Vetters argue that the stay does (or should) extend to them. To be clear, the Court declines to clarify or otherwise advise herein whether the Debtor's stay extends to or should extend to the Vetters. To the extent that third parties seek relief extending the protections of the automatic stay to them, the onus is on them to make that request in this Court.

derailed.[6] Counsel described the Motion for Summary Judgment as "a second bite at the apple" and contended that litigation of the State Court Action would hijack the bankruptcy case, which involves other meaningfully-sized creditors of the Debtor.

## LEGAL STANDARD

Pursuant to § 362(d)(1) of the Bankruptcy Code, the Court may grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The determination as to whether the stay should be lifted is within the discretion of this Court and may be overturned on appeal only for abuse of discretion. *In re Robbins*, 964 F.2d at 345. Because "cause" is not defined in the Bankruptcy Code, the Court must determine what constitutes cause on a case-by-case basis. *Id*. To do this, the Court is tasked with balancing the competing interests of and prejudice to the parties. *Id*. at 345. As the parties seeking relief from the stay, Democracy bears the initial burden of showing that cause exists to modify the stay. Only if Democracy is able to make this initial showing of cause does the burden then shift to the party opposing the relief from stay. *In re Enron Corp.*, 306 B.R. 465 (Bankr. S.D.N.Y. 2004). Once Democracy fulfills its initial burden of showing that "cause" exists, the ultimate burden shifts to the Debtor to demonstrate why the stay should remain in place. *In re Busch*, 294 B.R. 137 (B.A.P. 10th Cir. 2003).

In *Robbins*, the Fourth Circuit considered the factors governing stay relief in a case where, as here, the movant is seeking to lift the stay to continue litigation in a non-bankruptcy forum. The court stated that the following test governs whether "cause" exists to lift the automatic stay in cases like this:

---

[6] No party clarified whether litigation over the Democracy claim would impact the sale process differently if the litigation proceeded in the State Court. The closest anyone came to explaining this was to suggest that investors may be more familiar with the processes in this Court.

> The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*In re Robbins*, 964 F.2d at 345 (cleaned up); *In re Lee*, 461 F. App'x 227, 232–33 (4th Cir. 2012).

*Robbins* also provides legislative context for Congress's intentions with respect to the application of the automatic stay to litigation pending at the time of a bankruptcy filing, and quoted from the Senate Report accompanying the Bankruptcy Reform Act of 1978, which stated that:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

*In re Robbins*, 964 F.2d 342 at 345.

## ANALYSIS

1. <u>The *Robbins* Factors</u>

For Democracy to prevail on its Motion for Relief from Stay, it must show that cause exists to grant relief from the stay. Cause in this case will be determined by balancing the competing interest of and prejudice to the parties, as considered in the context of the three *Robbins* factors. For the reasons that follow, the Court finds that Democracy has met its burden and that each of the *Robbins* factors weighs in favor of lifting the stay.

*The State Court Action Involves Only Issues of State Law*

Turning to the first *Robbins* factor, the Court must consider whether the issues in the pending litigation involve only state law such that the expertise of the bankruptcy court is

10

unnecessary. The State Court Action involves two causes of action for breach of contract under Maryland state law, and the Counterclaim involves two claims for breach of contract and two tort claims, presumably also governed by Maryland state law. A ruling on the Motion for Summary Judgment would either resolve or narrow the issues of liability and amount of the Democracy claims. Undoubtedly, bankruptcy courts have the expertise and ability to consider breach of contract actions, but the question under *Robbins* is whether its expertise is *necessary*. Here, the expertise of the bankruptcy court is *not necessary* to decide the solely state law claims set forth in the State Court Action, which are the subject of the Motion for Summary Judgment. *See, e.g., In re Wolsonovich*, 2020 WL 5607738, at *3 (Bankr. D.S.C. Apr. 1, 2020) (finding first *Robbins* factor weighed in favor of stay relief where the issues pending in state court involved breach of contract and tort, involved a third-party defendant, and the state court was familiar with the issues pending in the action); *In re Xinergy Ltd.*, 2015 WL 3643418, at *3 (Bankr. W.D. Va. June 11, 2015) ("Where there are no issues in any claims that require bankruptcy expertise, [the first *Robbins*] factor weighs in favor of the party seeking relief."); *see also In re McPherson*, 630 B.R. 160, 165 (Bankr. D. Md. 2021) (modifying the automatic stay to permit prepetition "non-core" state law breach of contract claims to be arbitrated pursuant to an arbitration agreement). Additionally, it is not readily apparent to the Court that a determination by the State Court on the issues in the Motion for Summary Judgment would interfere with this Court's subsequent analysis of the core bankruptcy claims asserted in the Adversary Proceeding.

Because the Court's expertise is not necessary to determine the issues set forth in the pending Motion for Summary Judgment (or the Counterclaim), the first *Robbins* factor weighs in favor of modifying the stay.

*Modifying the Stay Will Promote Judicial Economy*

Under the second *Robbins* factor, the Court must determine whether modification of the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court. The State Court Action was filed over two years ago, and was heavily litigated by the parties who were represented by sophisticated corporate and trial counsel. The Motion for Summary Judgment was briefed and argued by the parties and is ripe for decision by Judge Truffer. It cannot be disputed that all parties—as well as the State Court—have expended significant time and resources on litigating the issues in the pending Motion for Summary Judgment, which are factually related to the claims asserted in the Counterclaim. Although the matter is not ready for trial, the matter is ready for decision on the pending motion, and Democracy's request is specifically limited to permitting the State Court to rule on the pending Motion for Summary Judgment (and to hear argument and rule on the pending Counterclaim, if it remains viable in Judge Truffer's view). Litigating issues that are ripe for decision in the State Court for a second time in this bankruptcy court would cause a hardship to Democracy and would be duplicative of the work already done by the parties and the State Court. *See In re Lee*, 461 F. App'x at 232–33 (where state court litigation had been ongoing for over two years, "[l]ifting the stay thus promoted judicial economy; the bankruptcy court's order permitted the conclusion of an adjudication . . . in lieu of relitigation of those same issues in bankruptcy court."); *In re Wolsonovich*, 2020 WL 5607738, at *4 ("The interests of judicial economy and efficiency are best-served by liquidating claims before the court that knows the parties and the factual and legal issues and can schedule final hearings in short order.") (cleaned up); *In re Rizzo*, 603 B.R. 550, 554 (Bankr. D.S.C. 2019) (finding that granting stay relief favored judicial economy where state court case had been pending

for nearly a year and where discovery was underway); *In re Frankel*, 2013 WL 312872, at *5 (Bankr. D. Md. Jan. 25, 2013) (finding judicial economy would be served by allowing state-court litigation, which had been pending for years, to conclude rather than starting litigation anew in bankruptcy court); *In re Xinergy Ltd.*, 2015 WL 3643418, at *3–4 ("When a movant is seeking relief to continue pending litigation, the burden on the debtor and the estate is much less if relief is granted because both the individual seeking relief and the debtor have already poured resources in prosecuting and defending against the underlying claims.") (cleaned up).

Significantly, the State Court is the only forum with jurisdiction over the Vetters, as non-debtor co-defendants and counter-claimants in the State Court Action. Any decisions by this Court on the State Court breach of contract and tort claims, therefore, would potentially divest Democracy of the opportunity to litigate its companion claims against the Vetters, and would carry a greater risk of fragmented litigation. *See id.* at *4 ("lifting the automatic stay will foster judicial economy by allowing the adjudication of liability and the liquidation of claims to occur among all defendants in a single forum.").

Modification of the stay would promote judicial economy and prevent the relitigation in this Court of matters already argued and briefed in the Motion for Summary Judgment. The second *Robbins* factor weighs in favor of modifying the stay.

*The Bankruptcy Estate Can be Protected by the
Requirement that Democracy Seek Enforcement in this Court*

Lastly, the third *Robbins* factor requires this Court to determine whether the estate can be protected by a requirement that Democracy seek enforcement of any judgment only through this Court, in the context of this bankruptcy case. Indeed, as has been pointed out, Democracy has so limited its request. Democracy seeks only permission for the State Court to rule on the pending Motion for Summary Judgment and to hear argument and rule on the Counterclaim and defenses.

It specifies that enforcement of any judgment from the State Court Action would occur in the context of this bankruptcy case, subject to further orders of this Court. In the circumstances of this case, it appears the estate can be protected by the type of order sought by Democracy which allows the State Court to determine liability and damages but requires Democracy to seek enforcement of any judgment through the bankruptcy court's claim process. *See, e.g., In re Lee*, 461 F. App'x at 232–33 (finding debtor was afforded adequate protection in the bankruptcy proceeding by limited relief sought and debtor's ability to seek subsequent relief through appeal in state court); *compare In re Mitchell*, 546 B.R. 339, 348 (Bankr. D.S.C. 2016) (finding third *Robbins* factor weighs against stay relief because "[e]nforcement of any judgment through the bankruptcy court is not an issue because Movants do not seek to enforce a judgment against [the Debtor] or this estate."). The third *Robbins* factor also weighs in favor of modification of the stay.

*Balance of Prejudice and Hardships*

The Debtor accuses Democracy of ignoring completely what the Debtor deems to be the most important part of the *Robbins* test—namely, the balance of prejudice and hardships to the parties. The Debtor argues that Democracy has presented no evidence that it will be harmed if it is not permitted to return to the State Court for disposition of matters pending there (and that costs and legal fees are not enough). Conversely, the Debtor maintains that it will suffer hardships if it cannot consolidate all litigation in this Court.

The Debtor has not convinced the Court that it will suffer harm if the State Court is permitted to decide a matter that is already teed-up for decision there, or that the risk of conflict and confusion is so great that the Debtor will be prejudiced. The Debtor's argument that appeals in the State Court Action may delay matters to the disadvantage of the ongoing chapter 11 case is unavailing. The federal system also has appeals.

No one weighing in on the Debtor's side has offered much more in the way of rationale, other than arguing that creditor parties somehow supposedly have more access in this Court, and that the commercial creditor community is more comfortable in this Court.

On the other hand, Democracy has at least pointed to the prejudice it believes it will suffer by not having jurisdiction over all parties in this Court, and the deleterious effect on it of having to start over in another forum. The balance of harms tips modestly in Democracy's favor.

2. The *Sonnax* Case

The Court would be remiss if it did not acknowledge that, in addition to the Fourth Circuit's *Robbins* test, the Debtor and creditors urge the Court to consider *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2nd Cir. 1990), in which the Second Circuit states twelve factors to consider when determining whether to allow matters to be decided by non-bankruptcy courts. The factors set forth by *In re Sonnax* are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id*. at 1286. The Court has considered the similarities among and overlap of the factors identified by *Robbins* and *Sonnax*, and believes that the relevant *Sonnax* factors have been considered in the determination of whether cause exists to lift the stay in this case. *See, e.g., In re SunEdison, Inc.*,

557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) ("Not all of the [*Sonnax*] factors are relevant in every case, and the Court need not assign equal weight to each factor.").[7]

## CONCLUSION

After considering and weighing the factors stated in the *Robbins* case, and attempting to balance the potential prejudice to the parties, the Court finds that Democracy has shown it is entitled to relief from the stay to allow the State Court to rule on the pending Motion for Summary Judgment and hear argument and rule on the pending Counterclaim and any defenses thereto in the State Court Action.

Wherefore, based upon the foregoing, it is, by the United States Bankruptcy Court for the District of Maryland, at Baltimore, hereby

ORDERED, that the automatic stay of 11 U.S.C. § 362(a) is modified to allow the State Court to rule on the pending Motion for Summary Judgment and hear argument and rule on the pending Counterclaim and any defenses thereto in the State Court Action; and it is

ORDERED, that the parties shall promptly file in this bankruptcy case the findings and rulings of the State Court in the State Court Action on the pending Motion for Summary Judgment and Counterclaim; and it is

ORDERED, that Democracy may only seek enforcement of any judgment, finding, or determination of the State Court in the State Court Action that is against Tessemae's from the estate in this bankruptcy case, subject to further orders of this Court.

---

[7] The Creditors' Oppositions appear to argue that modification of the stay would prejudice interests of "other creditors", invoking one of the *Sonnax* factors. Although chapter 11 is "designed to facilitate a timely, cost-effective resolution of all claims asserted against a debtor" and "deters gamesmanship and competition among creditors," *In re McPherson*, 630 B.R. at 166, "[t]he fact that the litigation may dilute the ultimate return to other creditors does not constitute legal prejudice to the rights of such creditors." *In re Wolsonovich*, 2020 WL 5607738, at *5.

cc:    Tessemae's LLC
714 South Wolfe Street
P.O Box No. 38438
Baltimore, MD 21231-7522

Gary H. Leibowitz, Esq.
Irving E. Walker, Esq.
HC Jones, III, Esq.
Cole Schotz P.C.
300 East Lombard Street, Suite 1111
Baltimore, MD 21202

Hugh M. Bernstein
J. Daniel Ford, Jr.
Office of the United States Trustee
101 West Lombard Street, Suite 2625
Baltimore, MD 21201

Richard L. Costella
Tydings & Rosenberg LLP
One E. Pratt Street, Suite 901
Baltimore, MD 21202
Counsel for MCDJRTESSE, LLC and PMCDTESSE, LLC

Lawrence A. Katz
Hirschler Fleischer
1676 International Drive, Suite 1350
Tysons, VA 22102-0000
Counsel for Michael McDevitt

C. Kevin Kobbe
DLA Piper LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209-3600
Counsel for Jupiter Fund LLC

Joyce A. Kuhns
Offit Kurman, P.A.
300 E. Lombard Street, 20th Floor
Baltimore, MD 21202
Counsel for Movant Democracy Capital Corporation

**END OF ORDER**