IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>Tessemae's LLC,<br><br><br>Debtor. | (Chapter 11)<br><br>Case No. 23-10675 (NVA) |

**RESPONSE IN OPPOSITION OF SECURED CREDITOR DEMOCRACY CAPITAL CORPORATION TO MOTION OF GREGORY AND GENEVIEVE VETTER SEEKING EXTENSION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(a)**

Secured Creditor Democracy Capital Corporation ("Democracy"), by its undersigned counsel, files its Response in Opposition to the Motion Seeking Extension of the Automatic Stay under 11 U.S.C. § 362(a) (the "Motion") filed by Gregory ("Mr. Vetter") and Genevieve Vetter ("Mrs. Vetter") (collectively, the "Vetters" or "Movant") and, in support, states:

**I.    INITIAL STATEMENT**

1.   While the scope of the automatic stay of 11 U.S.C. § 362(a) is broad, its protection is limited to the actual debtor in bankruptcy. The Vetters have set forth no basis, legal or factual, for the extraordinary relief they seek to extend the automatic stay to them individually and collectively to prevent Democracy's legitimate post-judgment discovery or enforcement of any judgment entered against them in a State Court Action filed by Democracy more than three and a half years ago. And no credible argument can be made as to why extending the stay to the Vetters to prevent post-judgment discovery or execution against non-debtor assets is essential in a bankruptcy case whose success is predicated on a sale of substantially all of the assets of the Debtor led by a court-appointed, nationally-recognized investment banking firm, without any critical contributions of time or funding by the Vetters. Therefore, the Motion must be denied.

## II.  PROCEDURAL POSTURE

2.  On February 1, 2023 (the "Petition Date"), Tessemae's LLC ("Tessemae's", the "Debtor", or the "Company") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court commencing this case and invoking the protections of the automatic stay exclusively against Tessemae's and its assets[1].

3.  A mere few weeks prior to the bankruptcy filing, on January 4, 2023, Judge Truffer of the Circuit Court for Baltimore Maryland in Case No. C-03-CV-20-004048 (the "State Court Action") held a hearing on Democracy's Second Motion for Summary Judgment ("MSJ") against Tessemae's, as borrower, and Gregory and Genevieve Vetter, as guarantors, of obligations under a loan entered into with Democracy in April 2018 (the "Loan"), based on multiple Loan defaults. A copy of the Guaranty dated April 10, 2018, executed by each of the Vetters in favor of Democracy in connection with the Loan (the "Vetter Guaranty") is annexed as **Exhibit 1** to the Declaration of J.R. Schuble (the "Schuble Declaration"), which is attached hereto as **Exhibit A**. The MSJ, having been fully briefed and argued, Judge Truffer held the matter under advisement.

4.  Promptly after the bankruptcy filing, on February 22, 2023, Democracy filed a Motion for Relief from Stay to allow Judge Truffer to rule on the pending MSJ and for any findings of fact and conclusions of law to be presented to this Court before execution on any judgment of the Debtor against the estate.

---

[1] On February 6, 2023, the Debtor filed a misleading Suggestion of Bankruptcy in the State Court Action suggesting that the entire litigation, including the litigation against the Vetters, was stayed by Tessemae's filing its bankruptcy petition.

5. On August, 10, 2023, this Court issued a Memorandum Decision and Order ("Memorandum Order") stating that the automatic stay "modified to allow the state court to rule on the pending Motion for Summary Judgment and hear argument and rule on the pending Counterclaim" prohibiting Democracy from seeking enforcement of any determination against Debtor in the State Court Action without further order of this Court[2]. [*See* ECF No. 196, p. 16].

6. On September 1, 2023, the state court judge held a status conference with the parties in the State Court Action, including the Vetters and their new counsel, in which he advised he would rule as expeditiously as possible on the MSJ, without further submission by the parties, and would set next steps on the pending counterclaim as he deemed appropriate.

### III. RELEVANT FACTS

7. Mr. and Mrs. Vetter are minority owners of the Debtor. Neither Mr. Vetter nor Mrs. Vetter are debtors in any pending bankruptcy case.

8. Mr. Vetter is the CEO of Tessemae's. He is not responsible for the day-to-day operations of the Company, nor does the Motion so allege. Debtor's counsel has represented to Democracy and this Court that Katie Seighman, the Chief Operating Officer, is currently running the Company. It is undisputable that the Company has outsourced its manufacturing function to SVB Food and Beverage Co., in which Mr. Vetter has a minority interest. Mr. Vetter is also the CEO and sole member of Pemberton Farms LLC, which wholly owns Alta-Tesse, LLC ("Alta-Tesse"). Alta-Tesse entered into a license agreement and a supply agreement with Tessemae's for use of certain Tessemae's marks and supply of Tessemae's salad dressing in salad dressing kits sold by Alta-Tesse. It is undisputed that Mr. Vetter signed the license

---

[2] The Court specifically noted in her Memorandum Order that the Vetters had to move separately for protection from the stay. *See* Memorandum Order at fn. 5: "To the extent that third parties seek relief to extend the protections of the automatic stay to them, the onus is on them to make that request."

agreement and supply agreement as both CEO of Tessemae's, licensor, and Alta-Tesse, licensee. Upon information and belief, Mr. Vetter is devoting significant time to entities in which he has interests other than Tessemae's, including Alta-Tesse.

9. The Motion states that Mrs. Vetter participates in the Debtor's business by managing existing relationships with brand partners and partnerships and continues to be its point of contact for positive public relations. *See* Motion at ¶ 11. However, Mrs. Vetter is neither an employee of the Company nor a consultant retained by the Court for whatever services she is providing, which are presumably those of a volunteer. In any event, it does not appear that her efforts, if any, have promoted a successful sale process or facilitated profitable operations as evidenced by monthly operating reports which continue to show that the Company is operating at a deficit. [*See* Monthly Operating Reports, ECF Nos. 201, 184, 158, 147, 141, and 140.] Mrs. Vetter's participation in Alta-Tesse remains unclear.

10. By Order that entered on April 27, 2023, Debtor retained B. Riley Securities, Inc. ("B. Riley") as its exclusive investment banker to market and sell the Company [ECF No. 133].

11. On May, 31, 2023, the Debtor filed a Motion to approve bidding procedures and scheduling an auction for the sale of substantially all of the Debtor's assets as a going concern, and for related relief [ECF No. 146]. An Order approving bidding procedures and setting a sale schedule (the "Bidding Procedures Order") entered on June 29, 2023 [ECF No. 167].

12. On August 28, 2023, Debtor filed a Line/Notice of Adjournment of Hearing on Disclosure Statement [ECF No. 207] and a Line/Notice of Adjournment of Auction and Suspension of Related Bid Deadlines [ECF No. 208]. It is apparent that the sale process has stalled at best and undisputedly been delayed despite several extensions of bid deadlines set forth in the Bidding Procedures Order. There has been no stalking horse identified or any party identified as having entered into an Asset Purchase Agreement with the Debtor in connection

with the sale process. While the Plan of Reorganization was filed by the Debtor on June 22, 2023 [ECF No. 160] along with a proposed Disclosure Statement [ECF No. 161], the proposed Plan is predicated on a sale of the Company. The Motion ignores these critical facts and does not articulate why either Mr. Vetter or Mrs. Vetter, as opposed to the investment broker retained to market and sell the Company at significant cost to the estate, is critical to any ongoing reorganization effort.

13. None of the allegations in the Motion are supported by sworn statements of either Mr. Vetter or Mrs. Vetter.

IV. **LEGAL ARGUMENT**

A. **Third-Party Stays are Rarely Granted**

14. The scope of the automatic stay is broad, but not unlimited. *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1203 (3d Cir.1991) (citing *Assoc. of St. Croix Condo., Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982)). The automatic stay is generally not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor. *Id.* at 1205 (citing *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1196–97 (6th Cir.1983)).

B. **"Unusual Circumstances" to Justify Extension of the Stay Are Not Present Here as Vetters are Independently Liable to Democracy and Are Contributing Nothing Critical to the Reorganization Effort.**

15. The applicable legal standard in granting requests for extensions of the automatic stay to non-debtors is stringent, limited to "unusual circumstances" as first articulated in *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999–1000 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) ("*A.H. Robins*"). In *A.H. Robins,* the debtor was sued by thousands of plaintiffs who allegedly sustained injury by the use of an intrauterine device known as a Dalkon Shield, which debtor manufactured. After the filing of the Chapter 11 case which

5

invoked the automatic stay to protect the debtor and its assets, plaintiffs moved to sever the debtor from their litigation and continue with their claims against the co-defendants including debtor's insurers. In affirming the district court's grant of an injunction against the non-debtor co-defendants, the Fourth Circuit observed that an example of "unusual circumstances" arises when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* at 999. However, critical to the Fourth Circuit's determination to affirm the non-debtor injunction was its finding that the underlying insurance policies were assets of the estate necessary to fund the reorganization and would be depleted in the absence of an injunction. *Id.* at 1008-09.

16. By contrast here, any judgments that enter in the State Court Action will be against the Debtor as borrower under the Loan and the Vetters as guarantors under the Vetter Guaranty and not as a result of any " identity of interest" between Tessemae's and the Vetters, and will have no impact on the success of the sale-driven reorganization to which the Vetters are contributing nothing of value.

17. The Motion largely predicates Mr. Vetter's entitlement to a stay extension on his right to absolute indemnification by the Debtor in the event a judgment enters against him. While Mr. Vetter is a manager and officer of the Company, he is not entitled to indemnification under the Second Amended and Restated Operating Agreement of Tessemae's LLC, effective as of September 18, 2015 (the "Operating Agreement"). A complete copy of the Operating Agreement is attached to the Schuble Declaration as **Exhibit 2**. The indemnification provision of the Operating Agreement only applies to managers and officers in their capacity as such. *See*

Operating Agreement[3], ¶ 18. By contrast, Mr. Vetter's liability to Democracy is predicated on his obligations to Democracy under the independent, absolute and unconditional Vetter Guaranty. Mr. Vetter expressly waived all rights to contribution and indemnification when he executed the Guaranty. *See* Vetter Guaranty, ¶ 7.5.

18. The Motion also seeks to extend the stay to Mrs. Vetter based on her purported rights of indemnification or contribution against the Debtor. Because Mrs. Vetter is not an indemnified party under the Operating Agreement, she is not entitled to indemnification as she claims. She is, however, indisputably a guarantor of Tessemae's obligations to Democracy pursuant to the independent, absolute and unconditional Vetter Guaranty. Pursuant to the express terms of the Vetter Guaranty, Mrs. Vetter has waived all claims for contribution or indemnification. *See* Vetter Guaranty, ¶ 7.5. Moreover, no assertion has been made that Mrs. Vetter is contributing funds necessary to the reorganization of Tessemae's. This case is therefore factually distinguishable from *In re Cornus Montessori, LLC*, 2003 WL 1521530 (Bankr. E.D. VA. Apr. 16, 2021) cited by the Vetters in their Motion in support of a stay extension, because Mrs. Vetter, as a non-debtor spouse, has neither contributed funds to the reorganization effort nor is she essential to the sale process.

C. **Pursuit of the Vetters as Guarantors Will Not Affect the Administration of the Bankruptcy Case or Undermine the Bankruptcy Court's Judgment.**

19. Furthermore, Democracy's pursuit of post-judgment remedies in the event a judgment enters in the State Court Action against the Vetter guarantors will have little, if any,

---

[3] Furthermore, while the Operating Agreement is not listed in the Debtor's Schedules as an executory contract, it contains material, unperformed obligations on the part of the Company and Mr. Vetter, thereby satisfying the "Countryman" definition of executory contracts adopted in the Fourth Circuit. *See In re Jundanian*, 2012 WL 1098544, at *6 (Bankr. MD. Mar. 30, 2012). Thus, the Operating Agreement appears to be an executory contract within the scope of Section 365 of the Bankruptcy Code. Since the Company is being marketed for sale to third-parties as a going concern, it is unlikely that the Operating Agreement would be assumed by a prospective third-party buyer but rather would be rejected on sale of the Company by the Debtor, along with any underlying indemnification obligations.

impact on the administration of the bankruptcy case and the bankruptcy estate as the Vetters claim in support of their Motion[4]. There is no credible argument that there may be inconsistent results in the State Court Action and in this Court, or that the bankruptcy court's jurisdiction will be impaired. The facts are to the contrary. The Section 362 stay has been modified by this Court expressly to allow the state court to rule on the MSJ against the Debtor and the Vetters simultaneously. In accordance with the Memorandum Order, a ruling will issue as to both Debtor and the Vetters at the same time and findings of fact and conclusions of law will be submitted to this Court for application in the pending adversary proceeding against Democracy, in this Court's discretion. Thus, the Memorandum Order itself insulates this Court from inconsistent results and promotes judicial economy in furtherance of its jurisdiction. *See* Memorandum Order at pp. 12-13. The Memorandum Order is now final and non-appealable.

20. Movants cite *In re Brier Creek Corp. Ctr. Assocs., Ltd.,* 486 B.R. 681 (Bankr. E.D.N.C. 2013) ("*Brier Creek*"), as further support for extending the stay to the Vetters. *Brier Creek* involved the denial of a stay pending appeal from a bankruptcy court's decision to grant a three-month stay of arbitration against a guarantor of bank debt owed by the debtor. The decision was predicated on the court finding that the guarantor arbitration would likely hinder debtor's ability to obtain a refinancing that was necessary to the reorganization efforts, following the Fourth Circuit's reasoning for stay extensions in *A.H. Robins*. *Id.* at 692. The *Brier Creek* court observed that the Fourth Circuit has applied the *A.H. Robins* rationale consistently in its review of stay extension requests, notably in *Credit Alliance Corp v. Williams*, 851 F. 2d 119 (4th Cir.

---

[4] It is also notable that any amount Democracy recovers under the Vetter Guaranty will result in a corresponding decrease in their claims against the estate. Thus, for example, any indemnification claim Mr. Vetter arguably may have as a result of losses he sustains under the Guaranty will have no negative impact on the estate but will result in a mere netting out of claims against the estate or swapping out a portion of the Democracy claim for any indemnification claim allowed Mr. Vetter in the bankruptcy case.

1988) and *Winters v. George Mason Bank*, 94 F.3d 130 (4th Cir. 1996), in which requests for stay extension were denied against non-debtors because the pending litigation would not impair the respective debtor's ability to reorganize or undermine the court's jurisdiction. *Id.* at 690-691. Likewise, there is no evidence here that allowing Democracy to exercise its post-judgment remedies will impair the case or undermine this Court's jurisdiction.

21. In short, having waited to file its Motion until after the Memorandum Order became final and non-applicable, the Vetters cannot forestall a decision in the State Court Action but are reduced to trying to prevent Democracy from exercising its legitimate post-judgment rights against the non-debtor Vetters in the event judgment enters against them. Post-judgment discovery, which will be paid for by the Vetters and not the estate, can only benefit the bankruptcy estate and its creditors in the event assets have been diverted by the Vetters from Tessemae's. Furthermore, post-judgment execution by Democracy is specifically prohibited against estate assets by the Memorandum Order and so any judgment recovery would be limited to assets of the Vetters who have not offered to contribute anything of monetary value to the reorganization effort. Thus, under the facts here, there is no credible argument that Democracy's exercise of its post-judgment discovery and execution remedies will have any detrimental impact on the administration of this bankruptcy case or the bankruptcy estate.

22. However, if the benefits of the stay are extended to the non-debtor Vetters who are contributing neither capital nor essential efforts towards reorganization, the only party adversely affected and impermissibly prejudiced by this extraordinary, unwarranted relief would be Democracy, which has already suffered a three and a half year delay in exercising its rights and remedies under the defaulted Vetter Guaranty.

## IV. CONCLUSION

For the reasons set forth in this Response, Democracy Capital Corporation respectfully requests that Movants' Motion be DENIED.

DATED: September 15, 2023        OFFIT KURMAN, P.A.

By: /s/ Joyce A. Kuhns
JOYCE A. KUHNS, Esq. (03979)
1954 Greenspring Drive, Suite 605
Timonium, Maryland 21093
Telephone: (410) 209-6463
Facsimile: (410) 209-6400
Email: jkuhns@offitkurman.com

Attorneys for Secured Creditor
Democracy Capital Corporation

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 15, 2023, I reviewed the Court's CM/ECF system and it reports that an electronic copy of this Response in Opposition of Secured Creditor Democracy Capital Corporation to Motion of Gregory and Genevieve Vetter Seeking   Extension of the Automatic Stay Under 11 U.S.C. § 362(a) will be served electronically by the Court's CM/ECF system on the following:

| | |
|---|---|
| J. Dan Ford, Assistant U.S. Trustee<br>Office of the United States Trustee<br>101 West Lombard Street, Suite 2625<br>Baltimore, MD 21201<br>j.dan.ford@usdoj.gov | Hugh M. Bernstein, Assistant U.S. Trustee<br>Office of the United States Trustee<br>101 West Lombard Street, Suite 2625<br>Baltimore, MD 21201<br>hugh.m.bernstein@usdoj.gov |
| Kimberly A. Manuelides, Esq.<br>Sagal, Filbert, Quasney & Betten, P.A.<br>600 Washington Avenue Suite 300<br>Towson, Maryland 21204<br>kmanuelides@sagallaw.com | Gary Leibowitz, Irving Walker, and HC Jones, III<br>Cole Schotz, P.C.<br>300 East Lombard Street<br>Baltimore, Maryland 21202<br>gleibowitz@coleschotz.com |
| C. Kevin Kobbe, Esquire<br>DLA Piper LLP (US)<br>6225 Smith Avenue<br>Baltimore, Maryland 21209<br>kevin.kobbe@us.dlapiper.com | Lawrence A. Katz<br>Hirschler Fleischer<br>1676 International Drive, Suite 1350<br>Tysons, VA 22102-0000<br>lkatz@hirschlerlaw.com |
| Richard L. Costella<br>Tydings & Rosenberg LLP<br>One E. Pratt Street, Suite 901<br>Baltimore, MD 21202<br>rcostella@tydings.com | Catherine Keller Hopkin, Esquire<br>YVS Law, LLC<br>185 Admiral Cochrane Drive, Suite 130<br>Annapolis, Maryland 21401<br>chopkin@yvslaw.com |
| Alison D. Bauer abauer@foleyhoag.com<br>JiunWen Bob Teoh jteoh@foleyhoag.com<br>FOLEY HOAG LLP<br>1301 Avenue of the Americas, 25th Floor<br>New York, NY 10019 | Monique D. Almy, Esquire<br>Crowell & Moring, LLP<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC 20004<br>malmy@crowell.com |
| Robert A. Gaumont rgaumont@gfrlaw.com<br>Bryan M. Mull bmull@gfrlaw.com<br>Sudipta Das sdas@gfrlaw.com<br>Gordon Feinblatt, LLC<br>1001 Fleet Street, Suite 700<br>Baltimore, Maryland 21202 | Craig B. Leavers, Esq. Craig@LeaversLaw.com<br>The Law Offices of Craig B. Leavers, LLC<br>P.O. Box 306<br>Cockeysville, Maryland 21030 |

I FURTHER CERTIFY that on September 15, 2023, a copy of this Response in Opposition of Secured Creditor Democracy Capital Corporation to Motion of Gregory and Genevieve Vetter Seeking   Extension of the Automatic Stay Under 11 U.S.C. § 362(a) was served via First-Class mail, postage prepaid, on the parties listed on the attached service list.

I CERTIFY the foregoing statements are made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**SERVICE LIST**

| | |
|---|---|
| GP Stamas Family Trust<br>8 Waterbury Court<br>Baltimore, MD 21212 | CE CID LLC<br>2410 Evergreen Road<br>Gambrills, MD 21054 |
| LEC LLC<br>845 E. Heartstrong St.<br>Superior, CO 80027 | Jupiter Fund LLC<br>102 W. Pennsylvania, Suite 100<br>Towson, MD 21204 |
| Peter R. McDermott<br>1 Pond Dr.<br>Englewood, CO 80113 | Robert F. McDermott<br>4455 South Holly Street<br>Cherry Hills Village, CO 80111 |
| Clearview Group<br>Attn: Brian Davis<br>11155 Red Run Blvd., Suite 410<br>Owings Mills, MD 21117 | Vetter Brothers Manufacturing, LLC<br>Attn: Brian Vetter<br>595 Owensville Road<br>West River, MD 20775 |
| K2 Trust, LLC<br>5244 N. 37th Place<br>Paradise Valley, AZ 85253 | Fleet Street Club III L.P.<br>11770 US Highway 1, Suite 503<br>Palm Beach Gardens, FL 33408 |
| Benjamin H. Griswold IV<br>901 S. Bond St., Suite 400<br>Baltimore, MD 21231 | David Charles Moran<br>375 W. Royal Flamingo Dr.<br>Sarasota, FL 34236 |
| AIS Portfolio Services, LLC, Ally Bank Dept.<br>4515 N Santa Fe Ave. Dept. APS<br>Oklahoma City, OK 73118 | Tenacious Adventures, Attn: Kipp Lasseter<br>5244 N. 37th Place<br>Paradise Valley, AZ 85253 |
| M&C Irrevocable Trust<br>5973 West Cielo Grande<br>Glendale, AZ 85301 | C&J Irrevocable Trust<br>5973 West Cielo Grande<br>Glendale, AZ 85301 |
| Deborah Grove Living Trust<br>Attn: Deborah M. Grove<br>5936 Elmer Derr Rd.<br>Frederick, MD 21703 | Scott Carmel<br>110 Venetian Way<br>Dildo Island<br>Miami Beach, FL 33139 |
| Christina Pagano<br>14 Lost Run Trail<br>Zionsville, IN 46077 | Brown, Goldstein & Levy, LLP<br>120 E. Baltimore Street, Suite 2500<br>Baltimore, MD 21202 |
| Altus Receivables Management, Trust Account<br>2400 Veterans Memorial Blvd.<br>Kenner, LA 70062 | Falling Green Capital LLC<br>3718 Falling Green Way<br>Mount Airy, MD 21771 |
| Donald McDonald<br>2180 Royal Oaks Dr.<br>Rockledge, FL 32955 | John Ege<br>100 St. Paul St., Suite 800<br>Denver, CO 80206 |

Date: September 15, 2023         /s/ Joyce A. Kuhns
                                 Joyce A. Kuhns, Esq. (03979)