IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re:<br><br>Tessemae's LLC,<br><br>                Debtor. | (Chapter 11)<br><br>Case No. 23-10675 (NVA) |

**DEMOCRACY CAPITAL CORPORATION'S MOTION TO CONVERT
CHAPTER 11 CASE TO CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 1112(b)**

Democracy Capital Corporation ("**Democracy**"), by its undersigned counsel, files this Motion to Convert Chapter 11 Case to Chapter 7 Case Pursuant to 11 U.S.C. § 1112(b), (the "**Motion to Convert**") and, in support, states:

### I.    Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper in this Court under 28 U.S.C. § 1409(a).

2. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A) and (O).

### II.    Background

3. Tessemae's LLC ("**Debtor**," "**Tessemae's**" or the "**Company**") filed its Chapter 11 petition on February 1, 2023 (the "**Petition Date**") commencing this bankruptcy case (the "**Chapter 11 Case**"). Since that time, Debtor has paid and/or incurred more than $2.2 million in administrative expenses while consistently operating in the red, losing over $538,000 from operations in the same period. Its revenues have declined from a high of $1.6 million per month in February 2023 to a low of $461,700 in September 2023[1]. It has less than a handful of employees, all of whom work off site. Furthermore, the Debtor has outsourced all of its manufacturing capabilities to a third-party, in which

---

[1] *See* Monthly Operating Reports at ECF Nos. 140, 141, 147, 158, 184, 201, 228, and 237.

Gregory Vetter, Debtor's CEO, has an equity interest. Mr. Vetter has been involved in numerous other ventures other than Tessemae's since the Petition Date, including Alta-Tesse, LLC ("**Alta-Tesse**") (which entity purchased the salad packaging segment of Tessemae's in the year before the bankruptcy filing) as well as running a start-up/accelerator company known as Home Grown. *See* https:www.biz journals.com/Baltimore/news/2023/10/03/tessemaes-ceo-launches-home-grown-accelerator.html. Tessemae's Chief Strategies Officer, Demian Costa, has recently rejoined the Camden Partners team as an operating partner and strategic advisor. *See* https://www.camdenpartners.com/team/demian-costa.

4. On June 22, 2023, the Debtor filed a Disclosure Statement and a Plan of Reorganization (the "**Plan**") [ECF Nos. 160-161] predicated on the marketing and sale of the Company as a going concern but aborted the sale process on August 28, 2023, without producing a stalking horse or a single bidder. [*See* ECF Nos. 207-208]. This was Debor's third attempt at sale of the Company in the past three years.

5. Tessemae's has recently reset the auction for December 18, 2023 [*See* ECF No. 238][2]. However, there is no credible chance of rehabilitation of this Debtor or a justification for the expense of a Plan confirmation process, which itself may well be contested and costly[3].

6. Democracy believes a Chapter 7 trustee will not only be able to wind-down the Company more cost-efficiently but, as an independent fiduciary, will be able to review claims and investigate possible avoidance actions with an unbiased eye.

7. So far, the only target of Debtor's animus has been Democracy. Democracy is the sole defendant in an adversary proceeding seeking to disallow or subordinate its claim, despite

---

[2] While Democracy has not opposed the rescheduling of the auction, it is concerned about what assets are being sold, including whether as yet-to-be evaluated or valued potential claims and causes of action are to be included.
[3] Absent an agreement otherwise with Democracy, it is Democracy's position that it would control the Plan votes of MCDJR-Tesse, LLC, PMCDTesse, LLC, CE CID, LLC and LEC, LLC (Class 1 Secured Claims) and of Clearview Consulting, Inc. (Class 4 Secured Claim) pursuant to Subordination Agreements each entered into with Democracy as a condition of its loan to Tessemae's in 2018. *See* Proof of Claim No. 68. Democracy's Secured Claim is listed at Class 3.

the fact that other purported secured creditors (including without limitation, MCDJR-Tesse, LLC, PMCDTesse, LLC, CE CID, LLC, and Vetter Brothers Manufacturing, LLC) also appear to have claims based on loan structures providing for exit fees, the very feature of Democracy's financing that the Debtor most hotly contests. These other claims may properly be the subject of disallowance or avoidance actions for a variety of reasons but have not been the subject of objection by the Debtor of any kind[4].

### III.  Legal Argument

8.  Section 1112(b)(1) of the Bankruptcy Code provides for mandatory conversion or dismissal of a Chapter 11 case to Chapter 7 upon a showing of cause:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). (emphasis added).

9.  Since the 2005 amendments to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act ("**BAPCPA**"), once cause has been demonstrated, a court **must** either dismiss or convert a Chapter 11 case. *In re Modanlo*, 413 B.R. 262, 271 (Bankr. Md. 2009); *In re Herb Philipson's Army*, 2019 WL 11031654, at *5 (Bankr. N.D.N.Y.

---

[4] For example, the promissory notes made by Debtor to MCDJR-Tesse, LLC and PMCDTesse, LLC and CE CID, LLC contain exit fees and were increased in the Fall of 2022 with a year-end maturity despite the Debtor's inability to pay these debts when due. *See* Proofs of Claim Nos. 43-1 and 44-1, and No. 74-1 (filed and executed by Gregory Vetter for creditor). The claim of Vetter Brothers Manufacturing, LLC was scheduled by the Debtor for a loan it purportedly made to Tessemae's in the Fall of 2022 in the amount of $2,081,576.00 (including an exit fee). *See* ECF No. 162, No. 2.10. It is notable that Debtor's Summary of Schedules, as of the Petition Date, list less than $3M in assets and over $53M in liabilities. *See* ECF No. 75, p.8 of 57. While these claims clearly warrant further inquiry regarding whether they are avoidable, the Debtor has instead slated them for payment under the Plan with no further disclosures or discussion in the Disclosure Statement. Likewise, Clearview Consulting, Inc. is listed to be paid as a secured creditor under the Plan even though its UCC-1 financing statement was not filed contemporaneously with the giving of value and was instead filed within days of the Petition Date, making it an obvious target for preference avoidance. *See* Proof of Claim No. 30-1 as amended by Proof of Claim No. 30-2.

Dec. 19, 2019). Movant has the burden to demonstrate "cause" by a preponderance of the evidence. *In re Modanlo*, 413 B.R. at 271; *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

10. Here, "cause" exists to convert the Debtor's Chapter 11 Case to Chapter 7 because: (a) the Debtor's negative cash flow is depleting the Debtor's estate and there is no reasonable likelihood that the Debtor is susceptible to "rehabilitation;" (b) the Debtor-in-Possession has conflicts of interest in investigating insider transactions (*e.g.,* the 2022 Alta-Tesse transaction) in the run up to the filing of the Chapter 11 Case; (c) there are no relevant activities the Debtor as Debtor-in-Possession can take that a Chapter 7 trustee cannot; and (d) the ongoing administrative burn would be lessened by conversion.

11. Cause exists under §1112(b)(4)(A) if there is both (i) substantial or continuing loss to or diminution of the estate and (ii) the absence of a reasonable likelihood of rehabilitation. *See In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 713 (Bankr. Md. 2011) and *In re Modanlo*, 413 B.R. at 271. *See also In re AdBrite Corp.,* 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). The two prongs for establishing cause to convert under §1112(b)(4)(A) are present here.

12. The first prong of §1112(b)(4)(A), refers to either "substantial" or "continuing" in the disjunctive. Accordingly, when discussing whether there is substantial or continuing loss to or diminution of the estate, "[t]here need not be a significant diminution in the estate to satisfy Section 1112(b)[1]." *In re East Coast Airways, Ltd.*, 146 B.R. 325, 336 (Bankr. E.D.N.Y. 1992); *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988) ("All that need be found is that the estate is suffering some diminution in value."); *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992). ("In the context of [a debtor living at the expense of the creditors], every dollar expended by the debtor from the [funds that are property of the estate] thereby reduces and diminishes the property

4

of the estate.") *In re AdBrite Corp.*, 290 B.R. at 215 ("Obviously, if the debtor has negative cash flow after entry of the order for relief in the chapter 11 case, [the elements of § 1112(b)(1) are] satisfied") (citation omitted).

13. Here, the large administrative costs incurred by the Debtor are materially reducing the estate with no corresponding gains from operations to offset them. This includes U.S. Trustee fees. Surely, a Chapter 7 trustee would administer the estate at less expense. Moreover, under 11 U.S.C. § 326(a), a Chapter 7 trustee may only recover fees of counsel from recovered assets, whereas, in the Chapter 11 Case, fees are coming directly out of the creditor's pockets.

14. Case law and commentary are clear that the concept of "rehabilitation" under § 1112(b)(4)(A) is not synonymous with reorganization. Rehabilitation refers to the debtor's ability to restore the viability of a business. *Loop Corp. v. United States Tr.,* 379 F. 3d. 511, 516 (8th Cir. 2004); *See also, In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. at 714-15 (Observing that "[c]ourts have held that rehabilitation is not synonymous with reorganization and the determination is not whether a debtor can confirm a plan, but whether the debtor has sufficient business prospects"); *In re Herb Philipson's Army*, 2019 WL 11031654, at *7 (Bankr. N.D.N.Y. Dec. 19, 2019) ("rehabilitation is a different and much more demanding standard than reorganization"); *In re AdBrite Corp.*, 290 B.R. at 216 (rehabilitation "signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met"); *In re Kanterman*, 88 B.R. at 29; ("Rehabilitation ... implies the re-establishment of a sound financial basis ... Reorganization, on the other hand, can involve simple liquidation and distribution of assets"); *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992) ("[r]ehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include a complete liquidation"); Collier on Bankruptcy, ¶ 1112.04[6][a][ii]

(16th ed. 2015) (Rehabilitation means to establish a business. Whereas confirmation of a plan could include a liquidation, rehabilitation does not include liquidation).

15. The Debtor cannot be "put back in good condition" nor is it able to "re-establish a sound financial basis" because there is little business left to rehabilitate that would "establish[] a cash flow from which current obligations can be met." *See In re Gonic Realty Tr.*, 909 F.2d 624, 627 (1st Cir. 1990) ("[W]ith no business left to reorganize, Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business"). The Debtor's sadly reduced business has surely been a key factor in its inability to effectuate sale.

16. The fact that a debtor has filed a Chapter 11 plan does not change the analysis on "rehabilitation." Even if the Debtor's cash distribution Plan was considered a legitimate Chapter 11 liquidation plan, conversion of this Chapter 11 Case to Chapter 7 would still be warranted. Although "[a] chapter 11 liquidation plan is permissible even though its basic premise is not to rehabilitate the bankrupt entity, … courts … have converted or dismissed chapter 11 cases" based on sustained negative cash flow, amounting to continuing losses. *In re BH S & B Holdings, LLC*, 439 B.R. 342, 348 (Bankr. S.D.N.Y. 2010) (collected cases finding no likelihood of rehabilitation existed due to the debtor's continuing losses and intention to liquidate). The best interest of all creditors is served by converting this case to a Chapter 7; rather than dismissing the Chapter 11 case where there is no potential recovery for the creditors. *See generally, Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Windows, Inc.),* 14 F.3d 240 (4th Cir. 1994).

17. Furthermore, a number of courts have found "cause" to convert or dismiss where the debtor in possession has a conflict of interest in properly investigating and pursuing potential avoidable transfers. *See, e.g., In re Picacho Hills Util. Co., Inc.*, 518 B.R. 75, 81-82 (Bankr. D.N.M. 2014) (converting the Chapter 11 case to Chapter 7 and holding that "a Chapter 7 trustee

6

should be installed to investigate the suspect transfers, unburdened by any conflict of interest," where the court was not convinced that the debtor was capable of pursuing estate causes of action in a professional and unbiased manner); *In re Brutsche*, 476 B.R. 298, 309 (Bankr. D.N.M. 2012) (finding "cause" under § 1112(b) where the court had "little doubt about whether [d]ebtor would adequately investigate [...] and pursue potential [fraudulent transfer] claims against his spouse"); *In re Fisher*, 07-61338-11, 2008 WL 1775123, at *12 (Bankr. D. Mont. Apr. 15, 2008) (remarking that conversion was appropriate because "a Chapter 7 trustee would [...] no doubt, investigate [d]ebtors' alleged fraudulent conveyances ..."). Here, the Debtor's failure to object to any claim other than Democracy's and the Debtor's lack of bias and refusal to investigate possible causes of action against insiders is blatant and warrants the appointment of an independent fiduciary.

18. Democracy notes that Section 1112(b)(2) provides that:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies **unusual circumstances** establishing that converting or dismissing the case is not in the best interests of creditors and the estate …

11 U.S.C. § 1112(b)(2). (emphasis added). However, if the basis for "cause," as here, is under Section 1112(b)(4)(A) (substantial or continuing loss to or diminution of the estate and absence of reasonable likelihood of rehabilitation), a court may not apply the "unusual circumstances" test to block conversion. *See* 11 U.S.C. § 1112(b)(2)(B); *Andover Covered Bridges, LLC v. Harrington, United States Tr. (In re Andover Covered Bridges, LLC)*, 553 B.R. 162, 176-7 (1st Cir. BAP. 2016). In addition, no unusual circumstances exist establishing that converting the case is not in the best interests of creditors and the estate. "Unusual circumstances" have been construed to mean "conditions that are not common in Chapter 11 cases." *Andover Covered Bridges,* 553 B.R. at 176-77 (citation omitted); *In re Orbit Petroleum, Inc.,* 395 B.R. 145, 148 (Bankr. D.N.M. 2008). The Debtor does not assert this Chapter 11 Case requires a

7

unique or special Chapter 11 solution such as resolution of future claimant issues or the need for channeling injunction, third-party releases, or liquidating or litigation trusts. Liquidation is not an unusual circumstance. *See In re Glob. Emergency Res., LLC*, 563 B.R. 76, 83 (Bankr. S.D. Ga. 2016).

19. In short, whether another sale generates proceeds or not, creditors would be better served going forward in a Chapter 7 proceeding, as opposed to in a Chapter 11 Plan process, since a neutral trustee is needed to evaluate all claims and all potential sources of recovery and to make distributions (from a sale or otherwise) according to the Bankruptcy Code, without giving special consideration to insiders and creditors "friendly" to insiders, as in this case.

### IV. Reliance on Authorities

20. Democracy relies on the authorities cited in this Motion to Convert in lieu of filing a separate Memorandum of Law.

WHEREFORE, Democracy Capital Corporation requests that the Court enter an order: (i) granting its Motion to Convert; (ii) converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iii) and granting such other relief as may be just.

Dated: November 17, 2023　　　　　　　　OFFIT KURMAN, P.A.

/s/ Joyce A. Kuhns
JOYCE A. KUHNS, Esq. (03979)
1954 Greenspring Drive, Suite 605
Timonium, Maryland 21093
Telephone: (410) 209-6463
Facsimile: (410) 209-6400
Email: jkuhns@offitkurman.com

*Counsel for Democracy Capital Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 17, 2023, I reviewed the Court's CM/ECF system and it reports that an electronic copy of Democracy Capital Corporation's Motion to Convert Chapter 11 Case to Chapter 7 Case Pursuant to 11 U.S.C. § 1112(b) will be served electronically by the Court's CM/ECF system on the following:

| | |
|---|---|
| Hugh M. Bernstein, Assistant U.S. Trustee<br>Office of the United States Trustee<br>101 West Lombard Street, Suite 2625<br>Baltimore, MD 21201<br>hugh.m.bernstein@usdoj.gov | Gary Leibowitz, Irving Walker, and HC Jones, III<br>Cole Schotz, P.C.<br>300 East Lombard Street<br>Baltimore, Maryland 21202<br>gleibowitz@coleschotz.com |
| Kimberly A. Manuelides, Esq.<br>Sagal, Filbert, Quasney & Betten, P.A.<br>600 Washington Avenue Suite 300<br>Towson, Maryland 21204<br>kmanuelides@sagallaw.com | Lawrence A. Katz<br>Hirschler Fleischer<br>1676 International Drive, Suite 1350<br>Tysons, VA 22102-0000<br>lkatz@hirschlerlaw.com |
| C. Kevin Kobbe, Esquire<br>DLA Piper LLP (US)<br>6225 Smith Avenue<br>Baltimore, Maryland 21209<br>kevin.kobbe@us.dlapiper.com | Catherine Keller Hopkin, Esquire<br>YVS Law, LLC<br>185 Admiral Cochrane Drive, Suite 130<br>Annapolis, Maryland 21401<br>chopkin@yvslaw.com |
| Richard L. Costella<br>Tydings & Rosenberg LLP<br>One E. Pratt Street, Suite 901<br>Baltimore, MD 21202<br>rcostella@tydings.com | Monique D. Almy, Esquire<br>Crowell & Moring, LLP<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC 20004<br>malmy@crowell.com |
| Alison D. Bauer abauer@foleyhoag.com<br>JiunWen Bob Teoh jteoh@foleyhoag.com<br>FOLEY HOAG LLP<br>1301 Avenue of the Americas, 25th Floor<br>New York, NY 10019 | Craig B. Leavers, Esq. Craig@LeaversLaw.com<br>The Law Offices of Craig B. Leavers, LLC<br>P.O. Box 306<br>Cockeysville, Maryland 21030 |
| Robert A. Gaumont rgaumont@gfrlaw.com<br>Bryan M. Mull bmull@gfrlaw.com<br>Sudipta Das sdas@gfrlaw.com<br>Gordon Feinblatt, LLC<br>1001 Fleet Street, Suite 700<br>Baltimore, Maryland 21202 | |

I FURTHER CERTIFY that on November 17, 2023, a copy of these Motions was served via First-Class mail, postage prepaid, on the parties listed on the service list below:

| | |
|---|---|
| GP Stamas Family Trust<br>8 Waterbury Court<br>Baltimore, MD 21212 | CE CID LLC<br>2410 Evergreen Road<br>Gambrills, MD 21054 |
| LEC LLC<br>845 E. Heartstrong St.<br>Superior, CO 80027 | Jupiter Fund LLC<br>102 W. Pennsylvania, Suite 100<br>Towson, MD 21204 |

| | |
|---|---|
| Peter R. McDermott<br>1 Pond Dr.<br>Englewood, CO 80113 | Robert F. McDermott<br>4455 South Holly Street<br>Cherry Hills Village, CO 80111 |
| Clearview Group<br>Attn: Brian Davis<br>11155 Red Run Blvd., Suite 410<br>Owings Mills, MD 21117 | Vetter Brothers Manufacturing, LLC<br>Attn: Brian Vetter<br>595 Owensville Road<br>West River, MD 20775 |
| K2 Trust, LLC<br>5244 N. 37th Place<br>Paradise Valley, AZ 85253 | Fleet Street Club III L.P.<br>11770 US Highway 1, Suite 503<br>Palm Beach Gardens, FL 33408 |
| Benjamin H. Griswold IV<br>901 S. Bond St., Suite 400<br>Baltimore, MD 21231 | David Charles Moran<br>375 W. Royal Flamingo Dr.<br>Sarasota, FL 34236 |
| AIS Portfolio Services, LLC, Ally Bank Dept<br>4515 N Santa Fe Ave. Dept. APS<br>Oklahoma City, OK 73118 | Tenacious Adventures, Attn: Kipp Lasseter<br>5244 N. 37th Place<br>Paradise Valley, AZ 85253 |
| M&C Irrevocable Trust<br>5973 West Cielo Grande<br>Glendale, AZ 85301 | C&J Irrevocable Trust<br>5973 West Cielo Grande<br>Glendale, AZ 85301 |
| Deborah Grove Living Trust<br>Attn: Deborah M. Grove<br>5936 Elmer Derr Rd.<br>Frederick, MD 21703 | Scott Carmel<br>110 Venetian Way<br>Dildo Island<br>Miami Beach, FL 33139 |
| Christina Pagano<br>14 Lost Run Trail<br>Zionsville, IN 46077 | Brown, Goldstein & Levy, LLP<br>120 E. Baltimore Street, Suite 2500<br>Baltimore, MD 21202 |
| Altus Receivables Management, Trust Account<br>2400 Veterans Memorial Blvd.<br>Kenner, LA 70062 | Falling Green Capital LLC<br>3718 Falling Green Way<br>Mount Airy, MD 21771 |
| Donald McDonald<br>2180 Royal Oaks Dr.<br>Rockledge, FL 32955 | John Ege<br>100 St. Paul St., Suite 800<br>Denver, CO 80206 |

I CERTIFY the foregoing statements are made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: November 17, 2023                                         /s/ Joyce A. Kuhns
                                                                                Joyce A. Kuhns, Esq.