| | | |
|---|---|---|
| DEMOCRACY CAPITAL CORPORATION | * | IN THE |
| Plaintiff, | * | CIRCUIT COURT |
| v. | * | FOR |
| TESSEMAE'S LLC, et al. | * | BALTIMORE COUNTY |
| Defendants. | * | |
| | * | Case No.: C-03-CV-20-004048 |

\* \* \* \* \* \* \* \* \* \* \* \*

## OPINION

## DEMOCRACY CAPITAL'S SECOND MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS COUNTERCLAIM

On January 4, 2023, the court heard argument on Plaintiff Democracy Capital Corporation's ("DCC") Second Motion for Summary Judgment and DCC's Motion to Dismiss the Defendants' Counterclaim. The court held the Motions *sub curia* following the hearing. On February 1, 2023, before the court had ruled on DCC's Motions, Defendant Tessemae's LLC ("Tessemae's") filed a Chapter 11 Petition in Bankruptcy in the United States Bankruptcy Court for the District of Maryland. That filing stayed all proceedings in this court until August 10, 2023 when the Bankruptcy Court granted DCC relief from the automatic stay "to allow the state court to decide the summary judgment motion, and to continue the litigation against the guarantors (who are not in bankruptcy)."[1] The court held a status conference on September 1, 2023 and determined that no further briefing or argument was necessary on the Motions.  Responding to the request of the Bankruptcy Court to do so, the court rules on DCC's Second Motion for Summary Judgment and the Motion to Dismiss Defendants' Counterclaim. For the reasons that follow, the court grants the Motion for Summary Judgment in part and grants the Motion to Dismiss.

Proceedings

On November 11, 2020, Democracy Capital Corporation ("DCC") filed a Complaint against Defendants, Tessemae's LLC ("Tessemae's"), Gregory Vetter, and Genevieve Vetter (the "Vetters"). The claim arises from a substantial loan by DCC to Tessemae's on which DCC

---

[1] See *Memorandum Order Modifying the Automatic Stay*, August 10, 2023, Case No. 23-10675-NVA.

alleges that Tessemae's is in default. The loan (the "Loan") is evidenced by an April 10, 2018 "Second Amended and Restated Loan and Security Agreement" (the "Loan Agreement," DCC Exhibit 1) [2] and a "Consolidated, Amended, and Restated Promissory Note" of even date (the "Note," DCC Exhibit 2) in the amount of $3 million. Contemporaneously with the execution of the Loan Agreement, the Vetters entered into a Guaranty Agreement (the "Guaranty") as to Tessemae's obligations under the Loan Agreement and Note.

The Loan Agreement required Tessemae's to repay the debt by its maturity date of April 10, 2020. In addition to the principal repayment, Tessemae's was required to pay an "Exit Fee" of $7.5 million or, in lieu of the Exit Fee, provide a warrant backed by the Defendant's stock in that same amount.

In its initial Complaint, DCC alleged that, by letter dated February 21, 2020, it notified Tessemae's that it was in default under the Loan Agreement as a result of: Tessemae's failure to make timely payments on the Note; its failure to deliver required financial information; its failure to maintain a required debt/equity ratio; and other undefined defaults. By that notice, DCC announced the acceleration of the Loan and demanded payment of an amount in excess of $10 million.

DCC further alleged that, on March 2, 2020, Tessemae's delivered to DCC what Tessemae's represented was a properly issued warrant in lieu of the Exit Fee. On March 10, 2020, DCC rejected the instrument as not in conformity with the requirements of the Loan Agreement. On April 10, 2020, the Loan matured. DCC maintains that, to date, Tessemae's has not paid the full amount of the Loan, the amount of the accelerated demand, the Exit Fee, nor has it produced a warrant acceptable to DCC. Correspondingly, DCC alleges the Vetters have not paid any amounts under the Guaranty Agreement.

DCC's first Motion for Summary Judgment on these issues was denied on December 19, 2022.[3]

On September 27, 2022, the Defendants filed a Counterclaim against DCC on claims arising out of the Loan Agreement. In the four counts of the Counterclaim, the Defendants argue that, by declaring a default on February 21, 2020, DCC: 1) failed to provide notice of and an opportunity to cure any alleged breach; 2) breached an implied duty of good faith; and 3)

---

[2] All references to exhibits in this Opinion are to the parties' exhibits attached to DCC's Second Motion for Summary Judgment and to Tessemae's Responses to that Motion.

[3] DCC's first Motion for Summary Judgment was based on an alleged breach of Tessemae's principal obligations under the Loan Agreement - to repay the Loan, the Exit Fee or supply an acceptable stock warrant.

defamed Tessemae's and 4) interfered with its business relations by notifying Tessemae's other creditors that Tessemae's was in default under the Loan Agreement.

On December 23, 2022, DCC filed a Second Amended Complaint and a Second Motion for Summary Judgment. That Motion is directed to Count I – Breach of Contract (Tessemae's) and Count II – Breach of Contract (Vetters). In that Motion, DCC argued that other events discovered after the filing of the first Motion for Summary Judgment represented additional events of default under the loan documents, entitling DCC to summary judgment. Specifically, DCC maintains that Tessemae's incurred over $13.5 billion in what it describes as "Prohibited Pre-Maturity Loans" prior to April 10, 2020 (See Pages 4 and 5 of DCC's Supplemental Memorandum, filed December 23, 2022). DCC argues that these loans represent events of default under one or more provisions of the loan documents. DCC has also alleged that undisclosed collection litigation had been initiated by third parties against Tessemae's and that Tessemae's failed to disclose the existence of this litigation to DCC. DCC concludes that this failure is an additional event of default under the loan documents.

Legal Standards

The court may grant summary judgment if it finds that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. MD. RULE 2-501(f). The court considers the record and any reasonable inferences in the light most favorable to the non-moving party. In ruling on a "motion to dismiss for the failure of the pleading to state a claim upon which relief can be granted, [if] matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2-501." [See MD. RULE 2-322(c)]. The court views DCC's Motion to Dismiss as including matters outside the pleadings and will treat it as one for summary judgment.

DCC's Claims against Tessemae's

    A. Unauthorized Loans

Section 6.6 of the Loan Agreement (DCC Ex. 1) prohibits Tessemae's from incurring any "indebtedness or liability on account of deposits or advances or for borrowed money," subject to certain specified exceptions, without first obtaining DCC's express written approval.

Section 7.1(d) of the Loan Agreement provides that an Event of Default occurs when "Borrower violates any of the negative covenants set forth in Section 6 of this Agreement."

3

DCC has produced evidence under oath, attached as Exhibits 4 - 14 to its Motion, in support of the argument that from August 21, 2019 through March 27, 2020, Tessemae's borrowed over $13.5 billion from nine different lenders in seventeen separate loan transactions. DCC maintains that it had approved none of these loans. (DCC Exhibit 13, Schuble Affidavit, ¶¶ 13-19).

### B. Undisclosed Litigation

Sections 5.8 and 5.20 of the Loan Agreement require Tessemae's to provide prompt notice to DCC of "any litigation instituted or threatened" against Tessemae's. Section 7.1(c) provides that a failure to notify DCC of pending litigation constitutes a breach of an affirmative covenant in the Loan Agreement and an Event of Default. A breach of these affirmative covenants is not subject to an opportunity to cure (See § 7.1).

In its Motion, DCC asserts under oath that Tessemae's was sued in November 2022 in nine lawsuits which were never disclosed to DCC. (DCC Exhibit 13, Schuble Affidavit, ¶¶ 11, 23). DCC argues that Tessemae's obtention of pre-maturity loans and its failure to disclose pending litigation amount to events of default under the Loan Agreement.

Tessemae's Response

### A. Unauthorized Loans

Tessemae's does not contest the fact that it obtained additional loans after executing the Loan Agreement. Tessemae's has raised as a defense the equitable concepts of waiver and estoppel.[4] It maintains that the DCC was fully aware of Tessemae's intention to obtain additional funding and acquiesced in Tessemae's borrowing. Tessemae's argues that DCC, in so doing, has waived these covenants or is otherwise estopped from now asserting their breach.

"Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right and may result from an express agreement or be inferred from circumstances." *Hovnanian Land Inv. Group, LLC v. Annapolis Towne Ctr. at Parole, LLC,* 421 Md. 94, 122, (2011), citing *Food Fair Stores, Inc. v. Blumberg,* 234 Md. 521, 531 (1964). Estoppel precludes a party " 'from asserting rights which might perhaps have otherwise existed ... against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires

---

[4] Tessemae's has also asserted that DCC's conduct amounted to a breach of a duty of good faith, implicit in every contract.

4

some corresponding right, either of property, of contract, or of remedy,' " *Heartwood 88, Inc. v. Montgomery Cnty.*, 156 Md. App. 333, 369, (2004), citations omitted.

The defenses of waiver and estoppel are by their nature factually driven and their resolution is generally a question of fact for a jury, *Hovnanian Land Inv. Group, LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122–24 (2011). Proof of these defenses will require that Tessemae's produce evidence to show that DCC, by word or deed, intended to waive compliance with the affected sections of the Loan Agreement.

Tessemae's asserts that, as a result of discussions between the parties during the period August 2019 through January 2020, DCC was fully aware that Tessemae's was in the process of borrowing additional funds. It suggests that one of the stated purposes for that borrowing was to "pay off" the DCC debt.

In support of its position, Tessemae's points to certain text messages and emails (Tessemae's Exhibits 1D, 1E and 2B) in which the parties exchanged information as to Tessemae's borrowing plans. An affidavit from Tessemae's CEO Gregory Vetter (Tessemae's Exhibit 1) places the communications in context and explains the more cryptic references in the texts. With one exception[5], there is nothing within the record to demonstrate that Tessemae's ever formally advised DCC of the new loans or obtained written consent for the specific loans which DCC has identified as defaults under the loan documents.

DCC maintains that it never discussed the "Prohibited Loans" with Tessemae's. (DCC Exhibit 13, Schuble affidavit, ¶¶ 13-14; DCC Exhibit 14, Plack affidavit, ¶¶ 5-11).

While the record is thin on this point,[6] a fair reading of the communications cited by Tessemae's suggests that there was at least some understanding on the part of DCC (through one of its shareholders, Jim Plack[7]) of Tessemae's intentions and its efforts to borrow funds to cover operating expenses and, at least in part, to apply those funds against the debt to DCC. Mr. Plack's texts and emails appear to acknowledge these efforts and, in Tessemae's view, operated as oral approval of the loans.

---

[5] DCC concedes that in August 2019, it consented to Tessemae's request for approval of a "short term bridge note" from "certain existing lenders" in the amount of $220,000.
[6] While the factual record produced by Tessemae's in its Opposition is slender, it must be recognized that little or no discovery has taken place at this stage of the litigation.
[7] Mr. Plack appears in the discussions between Tessemae's and DCC on these issues and is central to Tessemae's claims of notice to DCC. DCC identifies Mr. Plack as one of "the only persons with authority to communicate with Tessemae's concerning the Democracy Loan." (Exhibit 13, Schuble affidavit, ¶ 11).

Based on the record presented, the court finds that there is a genuine dispute of material fact as to whether DCC's knowledge of and failure to object to Tessemae's borrowing amounted to a waiver or estoppel of DCC's ability to enforce a breach of the Loan Agreement.[8]

B. Undisclosed Litigation

Tessemae's has not denied in any of its filings that it has been sued on other loans and that it did not inform DCC of this litigation.[9] The fact of this breach appears uncontested on this record. Irrespective of the merits of its other arguments, Tessemae's had an affirmative obligation to promptly advise DCC of litigation which was threatened or filed against it. As a breach of an affirmative covenant under the Loan Agreement, there was no opportunity to cure a failure to give the required notice [See §7.1(c)]. Tessemae's was sued and served in at least nine lawsuits in November 2022. In the absence of any evidence to the contrary, Tessemae's has conceded that it never advised DCC of these lawsuits.

The court finds that there is no genuine dispute of material fact that Tessemae's breached Sections 5.8 and 5.20 of the Loan Agreement by failing to disclose the litigation filed against it in November 2022. That breach constitutes an event of default under the Loan Agreement (See § 7.1).

For the above reasons, the court finds that there is no genuine dispute of material fact as to Tessemae's breach of contract under §§ 5.8 and 5.20 of the Loan Agreement and that the Plaintiff is entitled to judgment as a matter of law as to Count I.

<u>Claims against the Vetters</u>

DCC also seeks summary judgment against the Vetters based on their execution of a Guaranty Agreement dated April 10, 2018 ( DCC Exhibit 3).

DCC alleges in Count II of the Second Amended Complaint that, by the terms of the Guaranty Agreement, the debtors were obligated to "unconditionally and irrevocably guarantee to [DCC] the full and punctual payment of all past, present and future indebtedness, liability and obligations of Tessemae's to [DCC] … in connection with the Loan." The obvious predicate for the Vetters' liability is that Tessemae's has not paid the Loan, that demand has

---

[8] Closely connected to this issue is whether, on this record, the Loan Agreement's integration clause and the requirement of written modification were waived by DCC. As with the prior analysis of waiver, the court finds that there is a genuine dispute of material fact precluding summary judgment on these points.
[9] Tessemae's offers but a single sentence in response to this issue. "If Tessemae's had fully complied as of April 2020, it would have no obligations vis-à-vis Democracy Capital with respect to lawsuits filed in late 2022." (Tessemae's Opposition, p.19). The fact that Tessemae's may have complied with certain obligations under the Loan Agreement does not absolve it of other breaches.

6

been made on the Vetters for payment pursuant to the Guaranty and that the Vetters have failed to pay as agreed.

In order for the court to grant summary judgment, these facts must be submitted under affidavit. See MD. RULE 2-501(a). It is the movant's burden to produce sufficient facts under oath to demonstrate that there is no genuine dispute of material fact and an entitlement to summary judgment.

DCC's Motion recites that the "Vetters have not paid anything to Democracy." (DCC Motion, ¶ 52). Mr. Schuble's Affidavit states that Tessemae's has not made any payments on the Loan (DCC Exhibit 13, ¶ 26). The court has scoured the evidentiary record submitted by the parties and has been unable to find any statement, under oath, to support the allegation that the Vetters have not paid any amounts on the Loan, despite demand on them to do so. In the absence of such evidence, the court will deny the Motion at this time as to the Vetters. In fairness to the Plaintiff, the court is willing to reconsider the issue if an appropriate affidavit is submitted in support of its Motion.

DCC's Second Motion for Summary Judgment as to Count II will be denied.

<u>DCC's Motion to Dismiss Defendants' Counterclaim</u>

On October 24, 2022, DCC moved to dismiss the Defendants' Counterclaim on the basis that all four of its counts fail to state a claim upon which relief can be granted. While the Counterclaim is framed in a manner asserting affirmative claims, it is at its essence a defensive maneuver. The thrust of the Counterclaim is directed at DCC's initial February 21, 2020 Notice of Default and the breaches detailed in that notice. None of the claims asserted in the Counterclaim impact or serve to excuse Tessemae's failure to provide the required notice of pending litigation under Sections 5.8 and 5.20 of the Loan Agreement.

Having found Tessemae's in breach of Sections 5.8 and 5.20 of the Loan Agreement, the court finds that Defendants' Counterclaim fails to state a claim upon which relief can be granted. The court will grant DCC's Motion to Dismiss Defendants' Counterclaim without leave to amend.

7

Damages

DCC seeks damages pursuant to the Promissory Note, as follows:

- The Exit Fee of $7.5 million; § 1.5; and
- Pre-judgment interest at a rate of $3,125. per diem from the date of default.[10]

As explained above, the court has determined that Tessemae's default first occurred following the filing of the first collection lawsuit against it and Tessemae's failure to notify DCC of that litigation. The first such lawsuit was filed on November 11, 2023 (C-03-CV-22-004598; See Schuble affidavit, DCC Exhibit 13, ¶ 11). The Loan Agreement required Tessemae's to "promptly" advise DCC of such litigation. The term "promptly" is not defined in the Loan Agreement, and based on the context of the document, the court will imply a reasonable term of 10 days within which Tessemae's was required to advise DCC of the lawsuit. So applied, the court determines that the date of default was November 21, 2022.

With these determinations, the court calculates prejudgment interest from the date of default to the date of judgment as 386 days (November 21, 2022 - December 11, 2023) X $3.125 interest per diem = $1,206,250. As a result of the court's grant of summary judgment, the court will enter judgment in favor of DCC and against Tessemae's in an amount of $8,706,250.

Conclusion

For the above reasons, the Plaintiff's Second Motion for Summary Judgment is GRANTED as to Count I and DENIED as to Count II of the Second Amended Complaint. The Plaintiff's Motion to Dismiss Tessemae's Counterclaim is GRANTED without leave to amend. A separate order effecting these rulings and the court's judgment will be filed contemporaneously with this Opinion.

.

December 11, 2023
_____
Date

_____
Judge Keith R. Truffer

---

[10] In the event of default, Section 1.2 of the Note provides for an interest rate of 15% per annum on all unpaid amounts, calculated as: .15/360 = .0004166 X 7.5 million = 3,125 X number days in default.

Entered: Clerk, Circuit Court for Baltimore County, MD
December 11, 2023

E-SERVED Baltimore County Circuit Court 12/11/2023 3:22 PM System SystemEnvelope:14776172
Case 23-10675   Doc 262-1   Filed 01/02/24   Page 9 of 8

E-FILED; Baltimore County Circuit Court
Docket: 12/11/2023 3:22 PM; Submission: 12/11/2023 3:22 PM
Envelope: 14776172

| | | |
|---|---|---|
| DEMOCRACY CAPITAL CORPORATION | * | IN THE |
| Plaintiff, | * | CIRCUIT COURT |
| v. | * | FOR |
| TESSEMAE'S LLC, et al. | * | BALTIMORE COUNTY |
| Defendants. | * | |
| | * | Case No.: C-03-CV-20-004048 |

\* \* \* \* \* \* \* \* \* \* \* \*

## JUDGMENT

For the reasons stated in the court's Opinion, filed contemporaneously with this Judgment, on Plaintiff Democracy Capital Corporation's Second Motion for Summary Judgment and Motion to Dismiss Counterclaim, the Plaintiff's Second Motion for Summary Judgment is GRANTED as to Count I and DENIED as to Count II of the Second Amended Complaint. The Plaintiff's Motion to Dismiss Tessemae's Counterclaim is GRANTED without leave to amend.

As a result of these rulings, judgment is entered this **11th day of December, 2023** in favor of Plaintiff Democracy Capital Corporation and against Defendant Tessemae's LLC only in an amount of $8,706,250. As this judgment is not entered as to all claims against all parties, it is not to be considered a final judgment, See MD. RULE 2-602(a).

.

_____
Judge Keith R. Truffer

Entered: Clerk, Circuit Court for
Baltimore County, MD
December 11, 2023