Entered: February 16th, 2024
Signed: February 16th, 2024
**SO ORDERED**



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| In re: | |
| TESSEMAE'S LLC, | CASE NO. 23-10675-NVA |
| Debtor. | CHAPTER 11 |

**MEMORANDUM ORDER DENYING MOTION TO CONVERT [ECF NO. 240]**

Pending before the Court is a motion to convert this chapter 11 case to a case under chapter 7, filed by the one of the principal creditors (Democracy Capital Corporation) of the corporate debtor (Tessemae's LLC). The creditor argues that cause exists to convert this case because (1) the debtor has negative cash flow, cannot be rehabilitated, and continues to incur significant administrative expenses that are depleting the estate, and (2) the debtor is conflicted from investigating potential insider transactions. The debtor and two parties-in-interest (Gregory and Genevieve Vetter) oppose conversion. For the reasons discussed, and based on the papers filed, the hearing conducted, and the entire record in this case, the Court concludes that the case should not be converted.

**PROCEDURAL POSTURE**

This matter is before the Court pursuant to *Democracy Capital Corporation's Motion to Convert Chapter 11 Case to Chapter 7 Case Pursuant to 11 U.S.C. § 1112(b)* (the "Motion to

Convert") filed by Democracy Capital Corporation ("Democracy"). [ECF No. 240]. In response, Tessemae's LLC ("Tessemae's" or the "Debtor") filed *Debtor's Opposition to Democracy Capital Corporation's Motion to Convert Chapter 11 Case to Chapter 7 Case Pursuant to 11 U.S.C. § 1112(b)* and Gregory and Genevieve Vetter (the "Vetters") filed *Gregory and Genevieve Vetter's Opposition to Democracy Capital Corporation's Motion to Convert Chapter 11 Case to Chapter 7 Case Pursuant to 11 U.S.C. § 1112(b) and Support of Debtor's Opposition to Same* [ECF Nos. 244, 251].[1] Democracy's Motion to Convert and the oppositions were heard before this Court on January 31, 2024 (the "Hearing"), at which the parties presented argument, documentary evidence, and witness testimony. [ECF No. 282].

## LEGAL STANDARD

Conversion of a bankruptcy case from chapter 11 to chapter 7 is governed generally by § 1112 of the Bankruptcy Code. Under subsection (b), and subject to the limitations of subsections (b)(2) and (c),

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b). The movant bears the burden of establishing cause and must do so by a preponderance of the evidence. *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 711 (Bankr. D. Md. 2011); *In re Modanlo*, 413 B.R. 262, 271 (Bankr. D. Md. 2009); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010); *In re 4 C Sols., Inc.*, 289 B.R. 354, 364 (Bankr. C.D. Ill. 2003).

---

[1] Individually or together, the Vetters are creditors of the Debtor, but also hold ownership interests in the Debtor and act as guarantors of its debt. The opposition filed by the Vetters essentially adopts Tessemae's opposition.

"Cause is not precisely defined in the statute, but Section 1112(b)(4) contains a non-exclusive list of enumerated examples of facts that would constitute cause." *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. at 711.  If the movant demonstrates cause,

> the court must ascertain whether unusual circumstances exist to prevent conversion or dismissal. If no such unusual circumstances exist, the court must convert or dismiss.  The non-moving party is able to try to defeat a motion to convert or dismiss the bankruptcy case by showing that unusual circumstances exist to prevent dismissal or that factors specifically set out in § 1112(b)(2)(A) and (B) exist (*e.g.*, reasonable likelihood of timely confirmation, reasonable excuse for an omission by the debtor). If these exist, the opponent to the motion to convert or dismiss prevails, unless the court determines that the best interests of the estate are otherwise. And, the court must make this best interests assessment even if the opponent does not carry its burden or even make a defense.

*In re Modanlo*, 413 B.R. at 271.

## DISCUSSION

Democracy argues that cause exists for converting this case under § 1112(b)(4)(A) and because Tessemae's is conflicted from pursuing potential causes of action against insiders.  Neither argument carries the day.  Quite simply, Democracy has not borne its burden to establish cause.  Democracy presented no testimony at the Hearing and its exhibits consisted largely of asking the Court to take judicial notice of documents filed in this case[2] from which the Court should draw inferences and conclusions.[3]

---

[2] These documents consist of (1) *Agreed Order (I) Approving the Sale of Substantially All of The Debtor's Assets to Panos Brands, LLC Free and Clear of Liens, Claims, Encumbrances, and Interests; (II) Authorizing Assumption and Assignment of Executory Contracts; and (III) Granting Related Relief* [ECF No. 271]; (2) *Exhibit B* to Tessemae's *Disclosure Statement to Plan of Liquidation* [ECF No. 161-4]; (3) *Global Notes and Statement of Limitations, Methodology and Disclaimer Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs* [ECF No. 75]; (4) *Proof of Claim 68-1*, filed by Democracy; (5) *Amended Line Submitting Opinion and Judgment Granting Summary Judgment in Favor of Democracy Capital Corporation and Against Tessemae's LLC and Dismissal of Tessemae's LLC's Counterclaim Against Democracy Capital Corporation in the Circuit Court for Baltimore County Litigation* [ECF No. 262]; and (6) Tessemae's amended chapter 11 plan [ECF No. 280].  Exhs. M01, M03, M04, M10, M18, M19.

[3] Following Democracy's evidentiary submission at the Hearing, Tessemae's moved for entry of judgment under Rule 52(c) of the Federal Rules of Civil Procedure, made applicable here by Rules 9014 and 7052 of the Federal Rules of

To show cause under § 1112(b)(4)(A), Democracy must show, by a preponderance of the evidence, that there is a "substantial or continuing loss to or diminution of the estate **and** the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A) (emphasis added). The first prong is written with two disjunctives, such that cause for conversion can be established by showing either a loss or a diminution, either of which is "substantial or continuing." *Id.* An inquiry under § 1112(b)(4)(A) is thus comprised of two prongs, each of which must be shown in order for a movant to prevail. *In re Sillerman*, 605 B.R. 631, 656 (Bankr. S.D.N.Y. 2019) (requiring satisfaction of "both prongs … in order to find cause under this subsection"); *In re Irasel Sand, LLC*, 569 B.R. 433, 440 (Bankr. S.D. Tex. 2017) (dismissal appropriate "if the two prongs of § 1112(b)(4)(A) are satisfied"); *In re Creech*, 538 B.R. 245, 248 (Bankr. E.D.N.C. 2015) (analysis under § 1112(b)(4)(A) "involves a two–pronged test"); *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. at 713.

In support of the first prong, Democracy argues that the monthly operating reports filed by Tessemae's show a cumulative loss of $658,721 on its "Income Statement" from February 2023 through November 2023, caused by "large administrative costs." Mot. to Convert [ECF No. 240] at 5. According to Democracy, the ongoing accumulation of administrative fees being incurred by Tessemae's in excess of funds available to pay those fees is evidence that cause exists to convert this case under § 1112(b)(4)(A).

Against this evidence, Tessemae's offered the uncontroverted testimony of Demian Costa, the former chief strategy officer of, and now a consultant to, Tessemae's, that:

(i) Tessemae's drew only $650,000 against a $1,250,000 debtor-in-possession loan;

(ii) Tessemae's had at least $477,000 in its bank account a few days before the Hearing;

---

Bankruptcy Procedure. The Court denied Tessemae's motion on the record, but acknowledged the thin evidentiary record presented by Democracy.

4

    (iii)    Tessemae's had recently received $4.5 million from the Court-approved sale of most of its assets;

    (iv)    Tessemae's had recently collected $550,000 in accounts receivable from one of its customers; and,

    (v)    Tessemae's has disputed and intends to object to all asserted claims that include exit fees, not just Democracy's claim.

Tessemae's also argues that the "large administrative costs" Democracy complains of are due in significant part to Democracy having objected to nearly every request for relief made by Tessemae's in this case.[4]

On this record, the Court finds that Democracy has failed to show, by a preponderance of the evidence, that cause for conversion exists under the first prong of § 1112(b)(4)(A). "To determine whether there is a continuing loss to or diminution of the estate, a court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financial statements." *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). The evidence does not show that there is a "substantial or continuing loss to or diminution of the estate." To the contrary, the evidence shows gains to the estate, primarily as a result of the sale that netted $4.5 million. These sale proceeds far exceed the cumulative administrative expenses that are the target of Democracy's argument, a critical fact that Democracy completely ignores.[5] The evidence also

---

[4] Tessemae's also argued that "unusual circumstances" exist that preclude the Court from converting this case. The "unusual circumstances" exception to conversion or dismissal in § 1112(b)(2) does not apply where the cause argument is based on subsection (b)(4)(A). 11 U.S.C. § 1112(b)(2)(B); *Andover Covered Bridge, LLC*, 553 B.R. 162, 176-177 (1st Cir. BAP. 2016); *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 63 (B.A.P. 6th Cir. 2013); *In re Ford Steel, LLC*, 629 B.R. 871, 883 (Bankr. S.D. Tex. 2021); *In re Horned Dorset Primavera, Inc.*, 606 B.R. 117, 156 (Bankr. D.P.R. 2019); *In re Brutsche*, 476 B.R. 298, 306 (Bankr. D.N.M. 2012); *In re Visicon S'holders Tr.*, 478 B.R. 292, 316 (Bankr. S.D. Ohio 2012); *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. at 713.

[5] The Court notes that the parties have offered competing arguments, supported by competing case law, on whether administrative expenses should be included in the calculation to determine whether there is a loss to or diminution of the estate. *Compare In re TMT Procurement Corp.*, 534 B.R. 912, 920 (Bankr. S.D. Tex. 2015) ("mere accrual of professional fees does not constitute a continuing loss to the estate"), *with In re Gateway Access Sols., Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) (finding "substantial and continuing diminution of the estate" due in part to "extensive administrative costs from professional fees that are accumulating as the case lingers in Chapter 11").

shows that Tessemae's has a positive monthly cash-flow and has significantly increased its cash balance during this case, from $42,364 on the petition date to over $400,000 as of January 26, 2024, and is engaged in further collection efforts.

Further, the record of this case reflects that Democracy is at least partly responsible for the large amount of legal fees Tessemae's has expended. Democracy opposed efforts by Tessemae's to obtain post-petition financing, use cash collateral, pay certain pre-petition claims, obtain approval of a cash management system, assume leases or executory contracts, employ a routine professional (an investment banker), and approve bidding procedures and schedule an auction. [ECF Nos. 21, 44, 94, 95, 96, 97, 98, 105, 152]. No other creditor or party-in-interest has opposed Tessemae's efforts. While Democracy is entitled to assert its rights in this case as it deems appropriate, it appears to this Court that one reason the administrative expenses are so high is Democracy's "implacable opposition to every attempt to reorganize undertaken by the debtor." *In re LBH Assocs. Ltd. P'ship*, 109 B.R. 157, 158 (Bankr. D. Md. 1989) (finding a creditor did not have "clean hands" to object to professional fees "which its own conduct has materially increased").

Democracy's second argument that cause exists to warrant conversion of this case is that Tessemae's "has conflicts of interest in investigating insider transactions," has failed "to object to any claim other than Democracy's," and has refused "to investigate possible causes of action against insiders." Mot. to Covert [EF No. 240] at 4, 7. Democracy maintains that the individuals in control of the decision-making at Tessemae's are hopelessly conflicted because current or former directors of Tessemae's are owners or are affiliated with some of the secured creditor entities in this case. The only evidence Democracy offers to support these additional arguments

---

Neither party has identified any controlling case law on this issue and this Court need not decide which argument prevails given that the sale proceeds significantly exceed the accumulated administrative expenses.

is that the record of this case shows that Tessemae's has only objected to one of the seventy-seven (77) proofs of claim – Democracy's.

In contrast, Tessemae's directs the Court to its amended Schedule D and its amended chapter 11 plan, in which, Tessemae's points out, it has disputed every claim that includes exit fees and that it "intends to object to, or otherwise commence proceedings to disallow or avoid, the portion of the claims in Class 1 and Class 2 consisting of 'exit fees' under their respective loan documents." [ECF Nos. 162, 280].[6] Mr. Costa's uncontroverted testimony on this point is consistent. Moreover, Tessemae's notes that under the amended chapter 11 plan, the plan administrator – Aurora Management Partners Inc., a court-approved investment banker – will have the independent authority to investigate and prosecute any causes of action after plan confirmation. Tessemae's also notes that Democracy made no demand on Tessemae's to allow it to prosecute any avoidance actions in light of Tessemae's purported conflicts, nor has it sought leave of court to prosecute such actions or to have a third party fiduciary do so.

On this evidence, the Court cannot find cause for conversion based on Democracy's allegations of conflicts of interest. The record reflects that creditors similarly situated to Democracy (i.e., those with claims that include exit fees) will be similarly treated (i.e., Tessemae's will dispute their claims). The record also reflects that, post-confirmation, the plan administrator – whose identity Democracy will have the right to address – will have the right to investigate and pursue any insider transactions. To the extent there are any conflicts of interest, notwithstanding the absence of any evidence thereof, those conflicts can be ameliorated with the appointment of a plan administrator.

---

[6] Tessemae's amended Schedule D was admitted without objection as an exhibit marked "R03" at the Hearing; for ease of reference, the Court has used the associated ECF number.

Accordingly, the Court concludes that no cause exists to convert this case under the first prong of § 1112(b)(4)(A). Because Democracy has not satisfied the first prong, an analysis of the second prong of § 1112(b)(4)(A) – whether Democracy has shown an "absence of a reasonable likelihood of rehabilitation" (11 U.S.C. § 1112(b)(4)(A)) – is not necessary.[7]

The statute does not require the Court to analyze whether conversion is in the "best interests" of creditors if the Court finds, as it does here, that "cause" for conversion does not exist. Nonetheless, the Court thinks it warrants at least noting that conversion does not appear to be in the best interests of Tessemae's creditors. At this stage of the case, work remains to be done to collect accounts receivable, liquidate remaining equipment, and pursue litigation of claims. As a general proposition, transitioning a case from one in which a debtor-in-possession is in charge, to one in which a new trustee is brought in, will involve certain re-education, reinvention, and overlap.

> Converting the case—and no movant seeks dismissal—would put in place a Chapter 7 trustee who, no matter how skilled, would need to learn the case, evaluate and retain professionals, and determine how best to manage the demands of Debtors' sophisticated and litigious creditors. It would surely take months for a Chapter 7 trustee and his or her professionals to get up to speed and even begin to be able to litigate or negotiate disputes that the incumbent Debtor team has mastered and is seeking to resolve.

---

[7] There is no controlling case law in this Circuit discussing the meaning of "rehabilitation" under the second prong of § 1112(b)(4)(A). Courts appear to have concluded that a chapter 11 plan of liquidation does not satisfy the rehabilitation prong. *See, e.g.*, *In re Creekside Sr. Apartments, L.P.*, 489 B.R. at 61 ("rehabilitation signifies something more" than reorganization or liquidation); *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) ("Because the debtors here intended to liquidate their assets rather than restore their business operations, they had no reasonable likelihood of rehabilitation."); *Andover Covered Bridge, LLC*, 553 B.R. at 175 ("While it is true that a reorganization may include a liquidating plan, rehabilitation for purposes of § 1112(b) does not include liquidation."); *In re Paterno*, 511 B.R. 62, 68 (Bankr. M.D.N.C. 2014) ("[R]ehabilitation is understood as referring to the debtor's ability to restore the viability of its business. Where a debtor proposes a plan of pure liquidation, there is no likelihood of rehabilitation.") (cleaned up); *In re BH S & B Holdings, LLC*, 439 B.R. at 347 ("As to the second prong, the Debtors' intention to liquidate (rather than rehabilitate), demonstrates that there is no likelihood of rehabilitation."); *In re Westgate Properties, Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010) (rehabilitation "does not necessarily denote reorganization, which could involve liquidation. Instead, rehabilitation signifies something more…"); *In re AdBrite Corp.*, 290 B.R. at 216 ("With respect to the second prong of § 1112(b)(1), rehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include an orderly or complete liquidation.").

> Changing horses midstream in this manner would be inefficient, costly, slow, and contrary to the estates' interests in timely and cost-effective resolution.

*In re MatlinPatterson Glob. Opportunities Partners II L.P.*, 644 B.R. 418, 438 (Bankr. S.D.N.Y. 2022).

In addition, the work to be done in Tessemae's requires someone with specialized knowledge to maximize results for creditors. Mr. Costa testified at length about the particularized knowledge of the food industry, the personal relationships, and specialized software, which will be required to collect accounts receivable and to liquidate the remaining equipment in this case. The best interests of creditors are unlikely to be served by switching the experienced persons in control of these tasks to a neophyte chapter 7 trustee.

## CONCLUSION

After considering the evidence and argument presented by the parties, the Court finds that Democracy has not met its evidentiary burden to establish cause for converting this case.

Wherefore, based upon the foregoing, it is, by the United States Bankruptcy Court for the District of Maryland, at Baltimore, hereby

ORDERED, that Democracy Capital Corporation's Motion to Convert is DENIED.

cc: Debtor's Counsel – Gary H. Leibowitz, Esq.
US Trustee – Hugh M. Bernstein
Movant's Counsel – Joyce A. Kuhns
All Creditors

**END OF MEMORANDUM ORDER**